UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No.: 1:10-CV-00318-RDB |
| THIS DOCUMENT RELATES TO:<br>All Actions | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE NATIONAL TITANIUM DIOXIDE COMPANY LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION**

Defendant The National Titanium Dioxide Company Limited (d/b/a/ Cristal) ("Cristal"), appearing specially for purposes of this Motion only and despite its contention that it has not been properly served in this matter, respectfully submits this memorandum of points and authorities in support of its motion to dismiss under Fed. R. Civ. P. 12(b)(5)[1] for insufficient service of process and Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Plaintiffs concede that Cristal is a foreign corporation domiciled in the Kingdom of Saudi Arabia. Nevertheless, Plaintiffs assert that they perfected service on Cristal by leaving a summons in the Baltimore office of CT Corporation ("CT Corp") – a summons that was only accepted because it was addressed to Millennium Inorganic Chemicals, Inc. ("Millennium"), a Cristal subsidiary, for which CT Corp serves as registered Maryland agent. To serve Cristal

---

[1] In the alternative, if the claim is not dismissed, service should be quashed. *See, e.g., Contract Materials Processing, Inc. v. KataLeuna GmbH Catalysts,* 303 F. Supp. 2d 612, 615 (D. Md. 2003) (treating motion to dismiss based on insufficient service as a motion to quash service).

properly in this manner, Plaintiffs must demonstrate that Millennium is either (1) an authorized agent for service purposes or (2) the alter ego of Cristal. Plaintiffs cannot establish either and addressing a summons so that CT Corp would accept it will not suffice.

Furthermore, Plaintiffs' conclusory allegations to the contrary fail to meet the minimum legal basis necessary for this Court to assert personal jurisdiction over Cristal. The Supreme Court's decisions in *Twombly* and *Iqbal* require facts to support Plaintiffs' contentions that Millennium's presence and activities in Maryland justify haling its Saudi-based parent to a court half-way around the world. Therefore, assuming proper service, Plaintiffs' failure to do so requires Cristal's dismissal from this action.

**PRELIMINARY STATEMENT**

**I.    PROCEDURAL POSTURE OF PLAINTIFFS' EFFORTS TO BRING CRISTAL INTO THIS ACTION**

On February 9, 2010, Plaintiff Haley Paint Company ("Haley") filed a complaint against Cristal and four other defendants. Two days later, Isaac Industries, Inc. ("Isaac") filed an almost identical complaint against the same defendants. Both complaints allege a price fixing conspiracy of titanium dioxide in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Haley Complaint ¶¶ 1, 2, 4; Isaac Complaint ¶¶ 1, 2, 4.) Plaintiffs later filed a consolidated complaint and served it on all Defendants except Cristal ("Consolidated Complaint").

Despite repeated and different strategies, Plaintiffs have failed to serve Cristal properly under Fed. R. Civ. P. 4. On February 17, 2010, the Clerk of the Court refused to issue a summons for Cristal in both the Haley and Isaac matters. The summonses that the Plaintiffs submitted instructed service upon Cristal at "Corporate Headquarters, Future Tower 9th and 10th Floors, Al-Amanah Al- Jaadeed St., Jeddah – West Bagdadeyaah District Kingdom of Saudi Arabia." The dockets show that each summons to Cristal was returned unexecuted. (10-00318,

D.I. 9; 10-00323, D.I. 14.) Undeterred, on February 19, 2010, Plaintiffs wrote a letter to the Clerk certifying that Plaintiffs intended to issue a summons to Cristal. (10-00318, D.I. 10; 10-00323, D.I. 17.) Consequently, on February 22, 2010, the Clerk issued a summons to Cristal, instructing service upon "The Corporation Trust Incorporated [sic], 351 West Camden Street, Baltimore, Maryland, 21201." (10-00318, D.I. 11; 10-00323, D.I. 19.) Plaintiffs did not serve this summons; instead, they prevailed on the Clerk again and a summons was issued to Cristal for service in Saudi Arabia on April 5, 2010. (10-00318, D.I 49; 10-00323, D.I. 55.)

On April 22, 2010, Plaintiffs again sent a letter to the Court regarding service on Cristal. (10-00318, D.I. 63.) In their letter, Plaintiffs claimed that they were attempting direct service on Cristal in Saudi Arabia, but would also like to "effect service on Cristal through its U.S. agent." (*Id.*) On April 23, 2010, the Clerk reissued the summons and addressed it to Cristal, "c/o Millennium Inorganic Chemicals, Inc." for service upon "Resident Agent, The Corporation Trust Incorporation [sic], 351 West Camden Street, Baltimore, Maryland, 21201-7912." (*Id.*, D.I. 64.) Because this summons was addressed to Cristal, and not Millennium, Millennium's registered agent, CT Corp, refused to accept service. Once again, the summons was returned unexecuted. Thereafter on April 27, 2010, Plaintiffs again wrote a letter requesting that the Clerk issue yet another summons to Cristal. (*Id.*, D.I. 75.) On April 28, 2010, the Clerk reissued the summons to Cristal for the fifth time, this time to "Millennium Inorganic Chemicals, Inc, As agent and alter ego for The National Titanium Dioxide Company, Ltd. (d/b/a/ Cristal) c/o The CT Corporation, 351 West Camden Street, Baltimore, Maryland, 21201-7912." (*Id.*, D.I. 77.) Because the summons was addressed to Millennium, CT Corp accepted service and Plaintiffs filed an executed copy of the summons on April 29, 2010. (*Id.*, D.I. 78.)

Plaintiffs assert that they properly served Cristal because CT Corp accepted this latest summons. Plaintiff's wordsmithing of the summons, however, does not change the reality that Millennium and Cristal are separate distinct entities and that Millennium is not the alter ego of Cristal or its agent for service purposes.

**II.      BACKGROUND ON CRISTAL AND MILLENNIUM**

Millennium and Cristal are two distinct and separate legal entities.  Millennium is not an agent of Cristal and is not authorized to accept service of process on Cristal's behalf.  (Declaration of John E. Hall ("Hall Decl.") ¶ 9 (Exhibit A hereto).)

Millennium is a producer of titanium dioxide in the United States.  (Consolidated Complaint ¶¶ 12.)  Titanium dioxide is a white pigment that is used in a wide range of applications.  (*Id*. ¶¶ 33-34.)  Millennium markets and sells a variety of titanium dioxide products to its customers, which are mainly manufacturers of coatings, paper and plastics.  (*Id*. ¶ 34.)

In 1996, three specialty chemical businesses spun off from Hanson PLC to form Millennium.  (Hall Decl. ¶ 3.)  Millennium has continued its distinct business operations in the titanium dioxide market even when other entities owned it.  In 2004, the Lyondell Chemical Company acquired Millennium and all its assets.  (*Id*.)  Millennium had no connection whatsoever to Cristal until Cristal purchased Millennium from Lyondell as in 2007, nearly five years into the alleged conspiracy period.  (*Id*.)  When Cristal acquired Millennium, it did not just buy a collection of assets.  It purchased a distinct legal entity with a fully functioning and separate business.  (*Id*.)

Millennium is a Delaware corporation, with its principal place of business in Hunt Valley, Maryland, whereas Cristal is a Saudi company with its principal place of business is in Jeddah – West Bagdadeyaah, District, Kingdom of Saudi Arabia. (Consolidated Complaint ¶¶ 12, 13.)  As a distinct corporate entity, Millennium has its own articles of incorporation and by-laws.  (Hall Decl. ¶ 4.)

Millennium also maintains its own assets, including the plants used to manufacture its products. (*Id.* ¶ 6.)  Millennium accounts for its own business and keeps corporate records, bank accounts, payroll, and financial plans separate from those maintained by Cristal for its business.  (*Id*.)  Millennium reports separately to federal and state authorities, and Millennium files its own federal, state and local taxes.  (*Id*. ¶ 7.)

Finally, Millennium has its own employees, who report to senior management of Millennium. (*Id.* ¶ 8.) Millennium also maintains its office and pays its own utility bills and other expenses. (*Id.* ¶ 7.)

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO SERVE CRISTAL

Proper service is a threshold prerequisite to bringing a putative defendant into a civil action. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97 (1987). In *Omni*, the Supreme Court held that:

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied . . . . Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons.

*Id.* at 104.

Plaintiffs bear the burden of proving that service was proper. *Maid to Perfection Global, Inc. v. Ensor,* Civil Action No. RDB-09-cv-0958, 2010 U.S. Dist. LEXIS 30251, at *3 (D. Md. March 26, 2010). In considering a motion to dismiss pursuant to Rule 12(b)(5), a Court must look to matters outside the complaint. *E.g. Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Where service of process is not proper, the Court should dismiss the action. *Id.*; Fed. R. Civ. P. 12(b)(5).

#### A. Plaintiffs Can Only Serve Cristal By Satisfying Rule 4(h)(1)

Rule 4(h), Federal Rules of Civil Procedure, governs Plaintiffs' service of Cristal in this matter. Although Plaintiffs represented to the Clerk that they embarked on an effort to serve Cristal directly, there is no indication that service has occurred; nor is there any evidence that Plaintiff have attempted service under an internationally agreed means of service. Thus, Rule 4(h)(2) is inapplicable here.

That leaves Rule 4(h)(l), which permits service in a manner authorized under the law of the state in which this Court sits – Maryland – or by delivering a copy of the complaint and summons with an agent of Cristal. Under both federal and Maryland law, "service on a subsidiary does not constitute service on the parent . . . unless they are so intertwined that the subsidiary may be deemed an alter ego or agent." *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003) (federal law); *Akzona, Inc. v. E.I. DuPont de Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) (federal law - "[w]hether a subsidiary is the agent of the parent involves a determination that the separate corporate identities of the subsidiary and parent are a fiction and that the subsidiary is, in fact, being operated as a department of the parent") (applying the same standards as Maryland); *accord Glass v. Volkswagen of Am., Inc.*, 172 F. Supp. 2d 743, 743 (D. Md. 2001) ("For jurisdictional (as well as other) purposes, a subsidiary corporation is not an agent of its parent unless the facts concerning their relationship warrant piercing the veil between the two.") As discussed below, Millennium is a separate corporate entity and is neither an agent nor the alter ego of Cristal.

### B.     Millennium Is Neither An Agent Nor The Alter Ego Of Cristal

Plaintiffs have not and cannot present facts that would justify disregarding the corporate separateness between Cristal and Millennium here.[2]   Under Maryland law, a court should not pierce the corporate veil where the subsidiary has "some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (applying Maryland law) (quoting *Harris v. Arlen Properties, Inc.*, 260 A.2d 22, 29 (Md. 1969)). In this analysis, courts examine factors such as whether the parent and subsidiary keep separate books and records, use separate accounting procedures, and hold separate directors' meetings. *Id.*

---

[2] The proper framework in analyzing service of a subsidiary on behalf of a parent is the determination of whether the Court should pierce the corporate veil. This is essentially the same analysis as the test otherwise employed by the Court to determine agency. *Glass,* 172 F. Supp. 2d at 743; *Newman v. Motorola, Inc.,* 125 F. Supp. 2d 717, 722-723 (D. Md. 2000) ("[I]n Maryland, the determination of agency and test for piercing the corporate veil are essentially the same.")

Courts focus on determining whether the subsidiary operates as a separate entity and not merely a "department of the parent." *Akzona*, 607 F. Supp. at 237. Merely owning the stock of the subsidiary is insufficient. *Id.* at 63 (quoting *Vitro Elec. v. Milgray Elec., Inc*., 258 A.2d 749, 751 (Md. 1969) ("[A] foreign corporation is not construed as doing business within a state merely because of its ownership of all of the shares of stock of another corporation doing business in the state.")).

This framework is intended to limit plaintiffs' ability to pierce the corporate veil and Maryland generally is more restrictive than other jurisdictions in this regard. *Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc*., 299 F. Supp. 2d 505, 514 (D. Md. 2004). For example, in *Mylan Labs,* the Fourth Circuit refused to pierce the corporate veil for purposes of personal jurisdiction[3] between a parent, Akzo N.V. ("Akzo") and its third-tier subsidiary Pharmaceutical Basics, Inc. ("PBI"). *Mylan,* 2 F.3d at 59, 63. Akzo was a Dutch corporation with its principal place of business in the Netherlands whereas PBI was a Delaware corporation with its principal place of business in Illinois. *Id.* at 59. Plaintiff did not show that Akzo had direct contacts with Maryland, but instead argued that there was a principal-agent relationship, in part, "because (1) as PBI's parent corporation, Akzo controlled significant business activities of PBI in Maryland, warranting attribution of those activities to Akzo; (2) Akzo indirectly owns all the outstanding common stock of PBI, through its direct stock ownership of Akzo Pharma . . . ." *Id.* at 61. Additionally, plaintiffs argued that Akzo and PBI had shared an employee at the time the action commenced. *Id.* at 62. Nevertheless, the court in *Mylan* found that the plaintiffs had failed to meet their burden under the agency test. This is, in part, because, the court found that: (1) PBI was merely a subsidiary of Akzo; (2) the two entities had separate corporate functions; and (3) PBI maintained its own books and records, had formed

---

[3] The alter ego analysis is identical under both the sufficiency of process and the personal jurisdiction contexts. *See e.g., Glass*, 172 F. Supp. 2d at 743 (applying *Mylan Lab's* test for piercing the corporate veil in a personal jurisdiction matter to a motion arguing insufficient service of process.)

its own contractual relationships with debtors and creditors, and had its own manufacturing facilities, personnel, and managing executives. *See id.* at 62-63.

In *Akzona, Inc.,* the court refused to pierce the corporate veil for purposes of service of process. 607 F. Supp. at 237-40. The case involved a challenge to certain patents held by foreign manufacturers of aramid fibers. *Id.* at 229. Much like the issue before this Court, Plaintiff attempted to serve a foreign corporation, Akzo, by serving the registered agent of its subsidiary, Akzona, in Delaware. *Id.* at 236. Plaintiffs argued that the subsidiary corporation was an agent of the parent, in part, because: "(1) Akzo's 100% ownership of . . . Akzona; (2) some overlap between the board of directors and Akzo and those of . . . Akzona; (3) references to . . . Akzona as a[] division[] of Akzo in the Akzo annual report; . . . (5) the requirement that Akzo approve capital expenditures by Enka and Akzona of amounts exceeding $850,000." *Id.* at 237. Nevertheless, the court held that the plaintiffs had failed to meet their burden, *inter alia*, because Akzona and another subsidiary were "significant operating corporations which maintain separate books, observe corporate formalities and possess assets of several hundred million dollars each." *Id.* at 238. Further, the court found that the Plaintiffs "ha[d] not established that Akzo interferes in the day-to-day operations of its subsidiaries." *Id.*

The separateness that was dispositive in *Mylan* and *Akzona* likewise exists here with respect to Millennium and Cristal. Millennium maintains its own corporate records, bank accounts, payroll, and financial plans independent of Cristal. (Hall Decl. ¶ 6.) Millennium pays federal, state and local taxes on its own behalf. (*Id.* ¶ 7.) It operates its own business and has a separate reason for existence, namely, to market and sell titanium dioxide throughout the United States. (*Id.* ¶ 3.) The company has its own employees, who report to senior management at Millennium. (*Id.* ¶ 8.) Millennium owns its own manufacturing plants and holds its own assets. (*Id.* ¶ 6.)

Under similar circumstances, Maryland courts time and again have refused to pierce the corporate veil over foreign parent corporations. *See, e.g., Stillman v. Camden Marine Corp.,* No. Civ.A. CCB-02-2474, 2004 U.S. Dist. LEXIS 1320, at *6 (D. Md. Feb. 2, 2004) (refusing to

pierce the corporate veil over out-of-state parent even though parent may have managed some financial transactions involving subsidiary, encouraged subsidiary to use certain brands, and had an employee involved in subsidiary's business); *Estate of Dorothy Thomson v. Toyota Motor Corp.*, Civ. No. JFM-08-2467, 2009 U.S. Dist. LEXIS 52144, at *6-10 (D. Md. June 12, 2009) (refusing to pierce the corporate veil where the companies had common officers, but the parent did not exert day to day control over its subsidiary); *Rheumatology Nurses Soc'y, Inc. v. Phoenix Group Holdings, LLC,* Civ. No. CCB-08-1675, 2009 U.S. Dist. LEXIS 7804, at *10-11 (D. Md. Jan. 8, 2009) (refusing to pierce the veil where plaintiffs alleged that parent officers were frequently involved in the administration of the subsidiary); *Fleetwood v. B.C.E., Inc*., Civ. No. DKC 2003-2125, 2004 U.S. Dist. LEXIS 7403, at *16 (D. Md. April 28, 2004) (refusing to pierce the corporate veil of out-of-state parent company that maintained separate business records, bank accounts, and board of directors meetings from subsidiary with subsidiary managing its own facilities, personnel, and executives).  Courts rarely pierce the corporate veil and Plaintiffs have failed to meet this high standard.  Therefore, Plaintiffs have not served Cristal, and this Court should dismiss Cristal from this action under Rule 12 (b)(5).

## II.  PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO ASSERT PERSONAL JURISDICTION OVER CRISTAL

Assuming Plaintiffs properly served Cristal by serving Millennium, the Court nonetheless should dismiss Cristal from this case because Plaintiffs have failed to present facts sufficient to establish this Court's personal jurisdiction over Cristal.  Under Rule 12(b)(2), Federal Rules of Civil Procedure, when the Court decides personal jurisdiction on the pleadings, the plaintiff has the burden to make a *prima facie* case supporting personal jurisdiction.  *Mylan,* 2 F.3d at 60; *see also Palnik v. Westlake Entm't, Inc.*, 344 Fed. App'x 249, 251 (6th Cir. 2009).  To establish personal jurisdiction over Cristal here, Plaintiffs must present facts satisfying the Maryland long-arm statute, MD. CODE ANN., CTS. & JUD. PROC. § 6-103 (LexisNexis 2010) and the Due Process Clause of the Fourteenth Amendment.  *Newman*, 125 F. Supp. 2d at 722 (citing *Mylan*, 2 F.3d at 61).  Because Maryland's long-arm statute is co-extensive with the scope of jurisdiction

9

permitted by the due process clause of the Fourteenth Amendment, the statutory and constitutional inquiries essentially merge. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003) (applying Maryland law). Courts use a two-part test to determine if the exercise of personal jurisdiction is permissible: (1) the defendant must have "purposefully established 'minimum contacts' in the state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation omitted); and (2) the exercise of jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Other than generally alleging that Cristal sells product into the United States (Consolidated Complaint ¶ 13), Plaintiffs make no attempt to allege specific facts about Cristal's purported business activities. Plaintiffs also generally allege that "Millennium has acted as the U.S. agent and alter ego for Cristal," and put forth the following naked assertions in support:

> (1) Cristal's direct and controlling ownership interest in Millennium, (2) Millennium's role as the primary U.S. importer and distributor of Cristal's products, (3) Cristal's exercise of control over Millennium's marketing, purchasing, pricing, management, and/or operating policies, (4) Cristal's role in approving Millennium's significant business decisions, and (5) the overlapping functions and operations of Cristal and Millennium.

(Consolidated Complaint ¶ 14.)

These allegations are insufficient to establish personal jurisdiction over Cristal because: (1) they fail to meet the standard the Supreme Court set forth *Twombly* and *Iqbal* and (2) they are insufficient on their face to warrant piercing Millennium's the corporate veil to reach Cristal.

### A. Plaintiffs' Allegations Fail To Meet The Standard Set Forth In *Twombly* And *Iqbal*

Although a complaint need not contain detailed factual allegations, a Plaintiff must provide the grounds for its entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must show a plausible right to relief.

*Id.* at 570. Further, courts may take as true only those facts that are well-pled, that is, facts that are plausible, non-conclusory and non speculative. *Id*. A complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). Thus, courts considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth[;][w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

In determining whether a plaintiff has made a *prima facie* case of personal jurisdiction, courts have applied the *Twombly* and *Iqbal* to a complaint's allegations and disregarded those allegations related to personal jurisdiction that lack specificity. For example, in *Palnik*, a singer, Palnik, brought an action for copyright infringement against the producers and distributors of a movie. 344 Fed. App'x at 252. In affirming the district court's Rule 12(b)(2) dismissal of the two movie-producer defendants, the Sixth Circuit instructed that when "a court decides a motion to dismiss for lack of personal jurisdiction . . . the complaint must have established with reasonable particularity those specific facts that support jurisdiction." *Id.* at 251 (citing *Twombly*, 550 U.S. at 567) (internal quotations omitted). The Court then applied the *Twombly* standard "to Palnik's allegations, and only Palnik's allegations" to determine whether he had made a *prima facie* case. *Id*. The court found that the complaint's allegations regarding the defendant's distribution of a movie throughout the forum state were unclear and without "reasonably particular facts," and thus affirmed the dismissal for lack of personal jurisdiction. *Id.* at 252-53. Other circuits have similarly applied the *Twombly* standards to Rule 12(b)(2) motions. *See, e.g., Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (holding that "our review of the district court's dismissal [for lack of personal jurisdiction] is *de novo*,

taking as true all well-pled (that is, plausible, non-conclusory, and non-speculative, see [*Twombly*, 550 U.S. at 554]) facts alleged in plaintiffs' complaint"). Thus, this Court should apply the *Twombly/Iqbal* standard to which allegations it must accept as true in determining whether Plaintiffs have made a *prima facie* case for personal jurisdiction over Cristal.

But, even before *Twombly,* courts routinely dismissed complaints for lack of personal jurisdiction where a complaint only offers conclusory and limited facts about the relationship between a subsidiary and parent. For example, *In re Am. Honda Motors Co., Inc. Dealerships Relations Litigation*, this Court dismissed a complaint as to a parent corporation, even where all inferences were drawn in favor of the plaintiffs, because the complaint offered "only limited factual allegations related to this assertion" that a subsidiary was the alter ego of the parent. 941 F. Supp. 528, 551 (D. Md. 1996). The case involved RICO and fraud charges against car manufacturers. *Id.* at 534. The foreign parent corporations moved to dismiss, in part, for insufficient facts warranting piercing the corporate veil between the parent and subsidiary. The Court found that "[the] allegations [in the complaint] that the various Honda entities use consolidated financial statements and have interlocking directorates, taken as true, would be insufficient to justify piercing the corporate veil." *Id.* at 551-52. The court emphasized that there was "no suggestion that American Honda was incorporated for fraudulent purpose . . . not adequately capitalized, or that any other factor would justify disregarding the corporate separateness of the Honda defendants on equitable grounds." *Id*.

Likewise, in *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44 (1st Cir. 1993), the First Circuit affirmed the dismissal of a complaint as to a corporate parent defendant where the parent and subsidiary were two separate corporations and the complaint offered only "naked[] assert[ions]" that the subsidiary was the alter ego of the parent. *Id.* at 48 (noting that complaint

"alleges no facts that, if proved, would even arguably permit a court to impose liability . . . under the alter ego theory").

Similarly, Plaintiffs' allegations are vague, speculative, and conclusory and do not pass muster under *Twombly* and *Iqbal*. First, Plaintiffs' sole assertion regarding Cristal's direct business activities is the general statement that Cristal sells product in the United States. (Consolidated Complaint ¶ 13.) Plaintiffs fail to substantiate this assertion with any facts. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. Here, Plaintiffs merely label Cristal a manufacturer and seller of titanium dioxide in the United States, without stating enough details to raise the "right to relief above the speculative level." *Id.* Therefore, under *Twombly/Iqbal*, the Court should disregard this assertion.

In addition, Plaintiffs' allegation that Millennium is the agent/alter ego of Cristal is insufficient under *Twombly/Iqbal* standard. First, in claiming that Cristal can exercise "control over Millennium's marketing, purchasing, pricing, management, and/or operating policies" (Consolidated Complaint ¶14), Plaintiffs merely state their argument in a conclusory fashion and allege no facts or specifics that provide any basis to infer control over these operations. Second, to the extent Plaintiffs suggest that Cristal has a "role" in Millennium's significant business decisions, their bald assertion cannot give rise to a plausible inference of the alter ego relationship. The assertion fails to point even to what Cristal's role is or how that role is implemented. Such conclusory allegations are not entitled to the presumption of truth. *See Iqbal*, 129 S. Ct. at 1951 ("the conclusory nature of respondent's allegations . . . disentitles them to the presumption of truth"). Third, Plaintiffs also state that Cristal and Millennium have "overlapping functions," but again fail to specify the functions or how they overlap. Thus,

Plaintiffs offer nothing other than "'naked assertion[s]'devoid of 'further factual enhancement[]'" to support their critical claim of agency/alter ego against Cristal. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 557). Accordingly, the Court should disregard these allegations. In the end, Plaintiffs lack a single *Twombly*-worthy allegation supporting their assertion that this Court has personal jurisdiction over Cristal.

### B.   Plaintiffs Have Failed To Properly Plead Facts To Establish Personal Jurisdiction Over Cristal

Even if the Court were to conclude that Plaintiffs' allegations related to personal jurisdiction over Cristal satisfy the *Twombly/Iqbal* standard, they are still insufficient to form a basis for personal jurisdiction.

#### 1.   Paragraph 13 Cannot Serve As A Basis for Personal Jurisdiction

Plaintiff's generic allegation in Paragraph 13 of the Consolidated Complaint that Cristal sells directly or indirectly into the U.S. cannot form a basis for personal jurisdiction. Courts have held that a foreign entity's selling product directly or indirectly into a forum—even multiple times—is insufficient to support jurisdiction if, as here, "'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Burger King*, 471 U.S. at 475, n. 18 (citing *Int'l Shoe*, 326 U.S. at 318).

In *Sweezy v. Specialized Bicycle Components, Inc.*, the defendant, a Taiwanese corporation, manufactured bicycle components that were sold in the U.S., including some sales in North Carolina, where the plaintiff was injured on a bicycle containing the defendant's parts. 3:08-CV-00268, 2009 U.S. Dist. LEXIS 15845, at *2-3 (W.D.N.C., Feb. 12, 2009). The plaintiff brought a personal injury claim against the defendant in North Carolina. *Id.* The court held that merely selling the product in the stream of commerce in the U.S., even with the expectation that consumers in North Carolina may purchase them, without additional conduct directing sales towards that state was insufficient to establish personal jurisdiction. *See id.* at *10-11 (holding

that the "stream of commerce" theory is not broad enough to establish personal jurisdiction without conduct going beyond the mere sale of sale of equipment); *see also Merck & Co. v. Barr Laboratories, Inc.* 179 F. Supp. 2d 368, 375 (D. Del. 2002) (holding that a pharmaceutical company that sold products in Delaware, had a license to sell products the state, an account manager for sales in the state, and a wholly owned subsidiary in the state, was still not subject to personal jurisdiction in Delaware).

Moreover, Plaintiffs' allegation here encompasses the entire United States; there is no allegation regarding sales just to Maryland.  This is significant because Plaintiffs assert venue only under 28 U.S.C. § 1391 (b) and (c) and **not** under Section 12 of the Clayton Act, 15 U.S.C. § 22.  Consequently, Plaintiffs cannot invoke Section 12's nationwide jurisdiction.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. Of Emergency Med.,* 428 F.3d 408, 424-25 (2d Cir. 2005).  Thus, any alleged sales outside Maryland by Cristal are immaterial to determining whether personal jurisdiction exists over Cristal in this district.  *United Cutlery Corp. v.  NFZ, Inc.*, Civ. No. CCB-03-1723, 2003 U.S. Dist. LEXIS 21664, at * 13-14 (D. Md. Dec. 1, 2003) (holding that a sale in Georgia was immaterial to the issue of whether Maryland had personal jurisdiction over the non-resident defendant); *see also Holllingsworth & Vose Co. v. Connor*, 764 A.2d 318, 330-31 (Md. Ct. Spec. App. 2000) (holding that the distribution of defendant's product to Kentucky and New Jersey was irrelevant, even when the defendant's product was ultimately purchased by consumers in Maryland).  Accordingly, without more, Plaintiffs assertions regarding Cristal's purported contact with the United States are insufficient to establish personal jurisdiction.

> **2.     Plaintiffs Have Failed To Properly Plead Facts To Justify Piercing Millennium's Corporate Veil To Reach Cristal**

Assuming that Plaintiffs are asserting personal jurisdiction over Cristal based on an agency/alter ego relationship, to do so they must demonstrate that the relationship between

Millennium and Cristal that warrants piercing Millennium's corporate veil to reach Cristal. *See Estate of Dorothy Thomson*, 2009 U.S. Dist. LEXIS 52144, at *6-10 (applying the veil piercing test to a personal jurisdiction claim based on an agency/alter ego theory); *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 198 F. Supp. 2d 687, 697-98 (D. Md. 2002) (same). Plaintiffs must meet a strict standard in Maryland, which is "generally more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil." *Rheumatology Nurses*, 2009 U.S. Dist. LEXIS 7804, at *7.

Each assertion Plaintiffs make in this regard is either irrelevant or insufficient for the analysis. In addition, this Court has decided previously that these allegations — taken together — do not warrant piercing the corporate veil.

First, simply asserting that Cristal is a controlling owner of Millennium in no way justifies piercing the corporate veil; even if the assertion is true, under Maryland law, it does not establish an agency relationship. *Mylan*, 2 F.3d at 63 (quoting *Vitro Elec. v. Milgray Elec., Inc*., 258 A.2d 749, 751 (Md. 1969) ("[A] foreign corporation is not construed as doing business within a state merely because of its ownership of all of the shares of stock of another corporation doing business in the state."). Second, claiming that Millennium role is the "primary importer and distributor" of titanium dioxide also does not diminish the fact that, as discussed *supra*, Millennium has a distinct corporate function, which Courts have cited as a factor in deciding against piercing the corporate veil. *Newman,* 125 F. Supp. 2d at 723 (stating the court will examine whether "there is an independent reason for existence of the company" in its analysis of piercing the corporate veil).

Third, under Maryland law, Plaintiffs' allegations that Cristal's "exercise of control" over parts of Millennium's business and approval of significant Millennium business decisions are insufficient to warrant piercing the corporate veil. *See, e.g., Rheumatology Nurses*, 2009 U.S.

Dist. LEXIS 7804, at *10-11 (refusing to pierce the veil where plaintiffs alleged that parent officers were frequently involved in the administration of the subsidiary); *Newman,* 125 F. Supp. 2d at 723 (refusing to pierce the corporate veil despite claims in an SEC registration statement that the parent would "control [the subsidiary's] management and affairs, including decisions about acquisitions and dispositions, changes to our capital structure" and other decisions.) Finally, any purported "overlapping functions" between Millennium and Cristal does not change the fact that Millennium is a distinct and separate legal entity from Cristal. *E.g., Honda*, 941 F. Supp. at 551-52 ("[C]onsolidated financial statements and . . . interlocking directorates [are] insufficient to justify piercing the corporate veil.").

Courts analyzing a complaint containing all of these allegations have still held that piercing the corporation veil is not justified. For example, in *Newman*, this Court refused to pierce the veil of a corporate subsidiary for purposes of personal jurisdiction even though: (1) the subsidiary in Maryland was wholly owned by its parent; (2) both parent and subsidiary were telephone service providers; (3) the subsidiary maintained consolidated financial statements and tax returns with its parent; (3) the parent had the power to appoint a majority of the board of directors of the subsidiary in Maryland; (4) the subsidiary shared directors and officers with the parent, and (5) the subsidiary stated in a government filing that the parent "will control our management and affairs, including decisions about acquisitions and dispositions, changes to our capital structure and other decisions." 125 F. Supp. 2d at 720-23 (internal quotations omitted). Even these allegations, which are more detailed and robust than those in the Consolidated Complaint here, were insufficient to overcome the high hurdle in the State of Maryland for piercing the corporate veil.

As the Consolidated Complaint alleges insufficient grounds for imposing alter ego liability, there is no basis for asserting personal jurisdiction over Cristal. Accordingly, this Court must dismiss Cristal from the Plaintiffs' Consolidated Complaint.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order dismissing the claims against Defendant Cristal for insufficient service of process under Fed. R. Civ. P. 12(b)(5) and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Pursuant to Local Rule 105(6), Cristal also respectfully requests a hearing on its Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction.

Dated: June 18, 2010                     Respectfully submitted,

                                         HOWREY LLP


                                         By:_____/s/_____
                                                Richard A. Ripley

                                         Richard A. Ripley (MDBN 465531)
                                         ripleyr@howrey.com
                                         Dimitri J. Nionakis
                                         NionakisD@howrey.com
                                         HOWREY LLP
                                         1299 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20004
                                         Telephone: (202) 783-0800
                                         Facsimile: (202) 383-6610

                                         *Attorneys for Defendant*

                                         THE NATIONAL TITANIUM DIOXIDE COMPANY
                                         LIMITED