UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION § § § § THIS DOCUMENT RELATES TO: § § All Actions § | § Master Docket No.: 1:10-cv-00318-RDB |

**[PROPOSED] STIPULATION AND ORDER REGARDING
THE IDENTIFICATION AND PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION**

**WHEREAS**, Plaintiffs Haley Paint Company and Isaac Industries, Inc. on behalf of themselves and all others similarly situated, and Defendants E.I. du Pont de Nemours and Company, Huntsman International LLC, Kronos Worldwide, Inc., and Millennium Inorganic Chemicals, Inc. are parties in the above-styled action.

**WHEREAS**, the parties recognize that certain documents and electronically stored information ("ESI") are relevant to the parties' claims and defenses in these actions and the parties have engaged in discussions regarding the identification and production of such documents and ESI.

**WHEREAS**, the parties recognize that the case is in its early stages and that each respective party has unique technology and systems that may result in the need for particularized protocols for the processing and production of ESI and documents.

**WHEREAS**, the parties incorporate by reference the Stipulated [Proposed] Protective Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material submitted to the Court simultaneously with this document and recognize that nothing

herein is meant to supersede or amend the terms of the Stipulated [Proposed] Protective Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material.

**WHEREAS**, the parties acknowledge that Defendant Millennium Inorganic Chemicals, Inc. ("Millennium"), has agreed with Plaintiffs to produce documents pursuant to a separate Stipulation and Order Regarding the Production of Documents and Electronically Stored Information by Inspection (the "Production by Inspection Stipulation"), which terms shall apply with respect to Millennium's production of documents. The terms of this Stipulation and Order shall apply to Millennium on any issue upon which the Production by Inspection Stipulation is silent.

WHEREAS, the parties acknowledge that any Defendant may apply the terms of the Production of Inspection Stipulation to its production of documents upon agreement with Plaintiffs.

Upon the submissions of the parties, including their stipulation to the terms of this order, and for good cause shown, IT IS HEREBY ORDERED ADJUDGED AND DECREED that:

1. The production of responsive, non-privileged documents and ESI in this case shall be governed as set forth in this Order.

2. The parties agree that this Order will outline the general protocols related to ESI and that, when applicable, the parties will meet and confer on individualized circumstances concerning the protocols for processing and production of ESI.

3. **Identification Protocol.**

   **A.     Custodians**

Subject to 3(B) below, the parties agree that they will meet and confer to identify the custodians whose ESI will be searched for responsiveness to document requests, subject to the responding party's objections to document requests.

i. Within 14 days of service of Initial Disclosures, each party will provide a list of document custodians from whom it proposes to collect potentially responsive documents. Counsel for the parties will meet and confer within seven days of receipt of the proposed document custodian lists. During this meet and confer, each party will (i) explain how it identified the individuals on its list; (ii) provide general information about the current and prior positions, roles and responsibilities of each of those individuals at the company; and (iii) discuss any additional document custodians not previously identified by the producing party.

ii. After the parties have agreed upon the custodians from whom potentially responsive documents and ESI will be collected, a party may not seek from the opposing party any additional document custodians without good cause, i.e., without clear evidence that the addition of such custodian will result in necessary and non-duplicative discovery, except upon agreement by the opposing party or, absent agreement, upon order of the Court.

B.   **Search Terms**

The parties agree to discuss the use of agreed-upon search terms as a means of limiting the volume of documents and ESI to be reviewed for responsiveness to any discovery request propounded by any other party.  If any Defendant decides to apply search terms to identify ESI to be reviewed for responsiveness to discovery requests propounded by Plaintiffs, such Defendant shall use search terms agreed-upon with Plaintiffs and apply such search terms to the

ESI of agreed-upon custodians. If any Plaintiff decides to apply search terms to identify ESI to be reviewed for responsiveness to discovery requests propounded by Defendants, such Plaintiff shall use search terms agreed-upon with Defendants and apply such search terms to the ESI of agreed-upon custodians. Any parties that agree upon the use of search terms will meet and confer to discuss a search protocol. However, each party retains the option to review individually their documents and ESI for responsiveness to discovery requests if it chooses not to employ search terms. Once the search terms are agreed-upon by the parties, or ordered by the Court, and the search terms have been applied to identify potentially relevant documents and ESI, the search terms will not be modified, even in the event of Plaintiffs filing amended complaints and/or the addition of putative class members.

### C.    Document Requests

Subject to the parties' agreement, or Court Order, regarding the scope of Plaintiffs' or Defendants' document requests, any agreed-upon search terms shall be used to identify ESI that will be reviewed for responsiveness to Plaintiffs' or Defendants' discovery requests, and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing parties' discovery requests and to any agreements reached in the parties' meet-and-confer process.

With respect to ESI, and for those of Plaintiffs' or Defendants' Document Requests that the parties have agreed (or the Court has ordered) will be addressed by using search terms, (i) a party's obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by reviewing documents that are captured by using the agreed-upon search terms to be applied to ESI from agreed-upon custodians; and (ii) a party shall have no obligation to produce any documents, except as otherwise agreed to in

writing by the parties, that are not either (a) captured by one or more of the agreed-upon search terms to be applied to ESI to agreed-upon custodians and identified as non-privileged and responsive to a specific propounded discovery request or (b) otherwise identified by the producing party as non-privileged and responsive to a specific propounded discovery request.

With respect to ESI, the fact that a document is captured by application of agreed-upon search terms to the ESI from agreed-upon custodians does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. Propounded discovery requests shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached by the parties.

4. **Production Protocol**.

Except as required by the Production by Inspection Stipulation entered between Millennium and Plaintiffs, responsive, non-privileged documents and ESI shall be produced as follows:

    A. **Production Format -- TIFF Images with Accompanying Searchable Text and Metadata Fields**

        i. **Image Production Standard**

Paper documents and ESI will be produced as single page TIFF images with corresponding load files, in either a generic delimited format or other agreed-upon format, with accurate document page breaks. Each TIFF image will be labeled with a Bates number on the corresponding page.

        ii. **Extracted Text or Optical Character Recognition ("OCR") Text**

To the extent practicable, each individual document based on an electronic file shall be accompanied by a corresponding text file with text that is extracted from the

electronic file, not generated as an OCR file from the .TIFF image(s). These text files will be broken up by document, not by page, meaning each document, regardless of number of pages, will have 1 text file. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [e.g., .wav and .jpeg] would not produce any corresponding text files). Each extracted text file will be named according to the first Bates number of the corresponding electronic document.

The extracted text shall also conform to the Unicode standard.

### iii. Metadata Fields

Metadata will be limited to metadata that is ordinarily visible to and relied upon by the user reviewing the documents. Parties should not initially produce metadata that is not ordinarily visible with the exception of blind copies ("BCC's") to an email. No party will have any obligation to manually generate information to populate these fields.

Special considerations for certain user-created files such as image files (e.g., TIF, JPG, and GIF files): Image files should be produced as electronically Bates-numbered single-page TIFF images and corresponding metadata. Image files may not contain searchable content available for production, but to the extent available, the searchable content of such image files will be extracted into a fielded database file (metadata fields outlined below) that will also be produced. This metadata file shall also conform to the Unicode standard.

The following corresponding metadata fields, to the extent applicable to a produced electronic document, will be included in a searchable fielded data file:

- *Beginning/Ending Document numbers
- *Beginning/Ending Attachment ranges
- Document Type
- Sent Date/Time – Create date of native files

- Author
- Recipient
- CC
- BCC
- Subject/Title
- Custodian
- FileName
- Last Modified Date/Time
- *Full Text (Re-OCR'd text if redactions were made)

*\* If redacted emails and/or documents are produced, only these fields of information will be included in the load file.*

### iv. Redaction of Images

If the parties redact images on grounds of privilege, work product, and/or privacy, these redactions will be listed on a Privilege Log. In the event a document is redacted, the redaction will be marked by either a black box or the term "Redacted." The extracted text described above will not be delivered for that document and in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible.

### v. Foreign Language Documents

The parties agree that the producing party shall not bear the cost of translating foreign language documents that are not privileged and responsive to a party's request. Requesting parties shall bear the burden of any costs associated with the translation of foreign language documents.

### B. Selective Native File Productions

**i.** Separate from the Production by Inspection Stipulation entered between Millennium (and any other Defendant) and Plaintiffs, no requesting party may

request or seek to compel the production of ESI as "native" electronic files[1] on a wholesale basis.

        **C.**    Subsequent to the production of ESI in image format, a requesting party may request for good cause from a producing party that certain native electronic files be produced because the imaged files are difficult to read or potentially relevant information is not viewable in the imaged files. The requesting party shall provide a list of Bates numbers of the imaged files sought to be produced in native file format. The producing party reserves, without prejudice, all objections to any such request but shall comply with any reasonable request upon a showing of good cause by the requesting party.

        **i.**    Native files shall be produced with the file name of the native file(s) prefixed with its corresponding Bates number. To the extent that the native files are used in any pretrial motion or proceeding, the TIFF'd and Bates-numbered copies of such native files shall be used. If the files were never produced as TIFF images because of file type, the file will be referred to as their assigned Bates-number during processing (Bates-number of the exception slipsheet).

        **D.**    **De-duplication of Productions**

        **i.**    The parties will use reasonable, good faith efforts to avoid the production of duplicate documents and ESI.[2]

---

[1] For the purposes of this Order, "native" files refer to the electronic files in the same format (*e.g.*, Microsoft Word) in which they were originally collected from custodians or other sources.

[2] In general, de-duplication is based on the calculation of a value (*e.g.*, MD5, SHA256) based on the content of each file. These values are then compared across the population and duplicates are removed from the review and production process as appropriate within each party's processes.

  **ii.** The parties shall meet and confer to disclose and discuss the methodology and technologies being employed by each party to de-duplicate review of potentially responsive ESI and documents in accordance with this Order. The parties may de-duplicate identical ESI vertically (*i.e.*, by custodian) and horizontally (*i.e.*, globally across custodians).

 **E.** **Near De-duplication**

  **i.** The parties agree that the use of near-de-duplication protocols can reduce the cost of the review and production of ESI.

  **ii.** Parties are not required to use near-de-duplication protocols, but, if they choose to do so, the producing party shall disclose to the receiving party the near-de-duping protocol intended to be used prior to employing such protocol.

  **iii.** Within three days of being notified of the near-de-duping protocol a producing party wishes to use, a receiving party shall have the right to object to the use of such protocol.

  **iv.** If a receiving party objects to the proposed use of a near-de-duping protocol, the parties will then meet and confer regarding the near-de-duping protocol, and if the parties are unable to agree about the use of the near-de-duping protocol within five days of submission of the receiving party's objection(s), the parties will submit the matter to the Court.

5. **Privilege Logs**.

The parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming. To limit the cost of a privilege review and make document production more efficient, the parties may, but are not required to, use the

protocols described in 5(A) and (B) with respect to handling responsive documents that may include privileged information.

To the extent documents are not identified and logged pursuant to 5(A) or (B), yet contain privileged materials or information, the parties agree to provide privilege logs in accordance with the provisions of Fed. R. Civ. P. 26(b)(5), except that the parties have agreed that the privilege logs shall not include post-litigation attorney/client privilege or work product.

### A.    In-House Counsel

The parties may use the following protocol to isolate and log ESI involving in-house counsel, provided that each party (1) takes reasonable efforts to ensure that automatically-generated language in in-house counsel communications (such as disclaimers automatically inserted as email footers) will not cause the filter to screen communications on the basis that the search terms listed at 5(A)(ii) appear only in the automatically-generated language, and (2) discloses in advance to the receiving party the efforts to be used, including disclosing any additional search terms to be applied in order to identify in-house counsel communications containing automatically-generated language that includes one or more of the terms listed at 5(A)(ii):

> **i.** Parties wishing to use the protocol will disclose to each other the names and full business titles of in-house counsel employed by the parties during the relevant time period.
>
> **ii.** The parties will agree to specific search terms that will include at least the following terms that will be applied to ESI in which one or more names of a

party's in-house counsel appears anywhere in the document, including associated metadata, to isolate potentially privileged communications:

- "defense strategy"
- "joint defense"
- "work product"
- "work-product"
- attorney near5 client
- advice near3 (counsel or lawyer* or attorney*)
- affidavit*

    **iii.**    A log of the documents resulting from the electronic privilege search will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronic documents, and the producing party shall provide such logs to the receiving party(ies):

- Author
- Subject/Title
- Sender
- Recipient
- CC
- BCC
- Sent Date/Time

    **iv.**    With respect to the Subject/Title field, the parties may substitute a description of the communication where the content of these fields may reveal privileged information. The producing party shall identify each instance in which it has modified the content of the Subject/Title field.

    **v.**    The documents identified from the above-described search need not be reviewed before being logged and withheld from production, or at any time thereafter except as required by 5(A)(vi).

    **vi.**    Should a receiving party in good faith have reason to believe a particular entry on the metadata-generated log does not reflect a privileged document,

the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

### B. Outside Counsel

The parties may use the following protocol to isolate and log ESI involving outside counsel:

  **i.** Each party may search the text of electronic documents and any associated metadata fields for names of outside counsel who were retained by the party to provide legal services during the relevant time period.

  **ii.** The parties will not be required to disclose the names of outside counsel to be included in the search, except to the extent any of the names appear in the log for those documents captured by the search.

  **iii.** The documents resulting from the above-described search shall be logged in the same manner as described in section 5(A)(iii)-(iv), and such logs shall be provided by the producing party to the receiving party(ies).

  **iv.** The documents identified from the above-described search need not be reviewed before being logged and withheld from production, or at any time thereafter except as required by 5(B)(v).

  **v.** Should a party in good faith have reason to believe a particular entry on the metadata-generated privilege log does not reflect a privileged document, the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

6. **Inadvertent or Unintentional Disclosure of Documents and ESI Subject to Claims of Privilege.**

The provisions of paragraphs 11 and 12 of the Stipulated [Proposed] Protective Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material are expressly incorporated herein pursuant to Fed. R. Evid. 502(d) and 502(e). The inadvertent or unintentional disclosure by a producing party of documents or information, including but not limited to ESI, subject to a claim of privilege, including, but not limited to, the attorney-client privilege or work product doctrine (an "Inadvertently Produced Privileged Document"), regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of privilege in this or any other case.

7. **Preservation of Rights and Privileges.**

Nothing contained in this Order shall affect the right, if any, of any party or witness to make any other type of objection, claim, or other response to discovery requests, including, without limitation, interrogatories, requests for admissions, requests for production of documents or questions at a deposition. Nor shall this Order be construed as a waiver by any party of any legally cognizable privilege to withhold any information protected by such privilege, or of any right which any party may have to assert such privilege at any stage of this litigation.

| | |
|---|---|
| Dated: May __, 2011 | GOLD BENNETT CERA & SIDENER LLP |

By: _____
    Solomon B. Cera

Solomon B. Cera (admitted *pro hac vice*)
scera@gbcslaw.com
C. Andrew Dirksen (admitted *pro hac vice*)
adirksen@gbcslaw.com
GOLD BENNETT CERA AND SIDENER LLP
595 Market St ., Ste. 2300
San Francisco, CA 94105
Telephone:  (415) 777-2230
Facsimile:  (415) 777-5189

| | |
|---|---|
| Dated: May __, 2011 | LIEFF, CABRASER,<br>   HEIMANN & BERNSTEIN, LLP |

By: _____
    Joseph R. Saveri

Joseph R. Saveri (admitted *pro hac vice*)
jsaveri@lchb.com
Eric B. Fastiff (admitted *pro hac vice*)
efastiff@lchb.com
Daniel M. Hutchinson
dhutchinson@lchb.com
Embarcadero Center West
275 Battery Street, Suite 2900
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

        Steven E. Fineman (admitted *pro hac vice*)
        sfineman@lchb.com
        Daniel E. Seltz (admitted *pro hac vice*)
        dseltz@lchb.com
        250 Hudson Street, 8th Floor
        New York, NY 10013-1413
        Telephone: (212) 355-9500
        Facsimile: (212) 355-9592

        *Attorneys for Plaintiffs and the Proposed Class*

Dated: May __, 2011        CROWELL & MORING LLP


        By:_____
           Kent A. Gardiner

        Kent A. Gardiner (admitted *pro hac vice*)
        kgardiner@crowell.com
        Jeffrey Blumenfeld (admitted *pro hac vice*)
        jblumenfeld@crowell.com
        Shari Ross Lahlou (admitted *pro hac vice*)
        slahlou@crowell.com
        Ryan C Tisch (admitted *pro hac vice*)
        rtisch@crowell.com
        CROWELL & MORING LLP
        1001 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2595
        Telephone: (202) 624-2500
        Facsimile: (202) 628-5116

        *Attorneys for Defendant E.I. du Pont de Nemours and Company*

Dated: May __, 2011                         HAYNES AND BOONE LLP


                                            By: _____
                                                Richard A. Ripley

                                            Richard A. Ripley (27683)
                                            richard.ripley@haynesboone.com
                                            1615 L. St. NW Ste 800
                                            Washington DC 20036
                                            Telephone: (202) 654-4500
                                            Facsimile: (202) 654-4501
                                            *Attorneys for Defendant Millennium Inorganic Chemicals, Inc.*

Dated: May __, 2011                         VINSON & ELKINS LLP


                                            By: _____
                                                James A. Reeder, Jr.

                                            James A. Reeder, Jr. (admitted *pro hac vice*)
                                            jreeder@velaw.com
                                            David T Harvin (admitted *pro hac vice*)
                                            dharvin@velaw.com
                                            VINSON & ELKINS LLP
                                            First City Tower
                                            1001 Fannin Street, Suite 2500
                                            Houston, TX 77002-6760
                                            Telephone: (713) 758-2222
                                            Facsimile: (713) 758-2346

                                            *Attorneys for Defendant Huntsman International LLC*

Dated: May __, 2011                    LOCKE, LORD, BISSELL & LIDDELL LLP


By:_____
    Paul E. Coggins

Paul E. Coggins
pcoggins@lockelord.com
Kiprian E. Mendrygal
kmendrygal@lockelord.com
Kelly R. Vickers
kvickers@lockelord.com
LOCKE, LORD, BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*Attorneys for Defendant Kronos Worldwide Inc.*



IT IS SO ORDERED.




_____
Richard D. Bennett
United States District Judge

Dated: May ___, 2011.

        Respectfully submitted,

_____
Paul E. Coggins
  pcoggins@lockelord.com
Kiprian E. Mendrygal
  kmendrygal@lockelord.com
Kelly R. Vickers
  kvickers@lockelord.com
LOCKE, LORD, BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

ATTORNEYS FOR KRONOS
WORLDWIDE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the ___ day if May, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants. I further certify that a true and correct copy of this document was sent via U.S. first-class mail, postage paid, to all non-CM/ECF participants.

_____
Paul E. Coggins

**[PROPOSED] STIPULATION AND ORDER REGARDING THE PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION**     **Page 18**

DAL 2010944v.1