IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| HALEY PAINT COMPANY, *ET AL.* | * |
| PLAINTIFFS, | * |
| V. | *    CIVIL ACTION NO.: RDB-10-0318 |
| E.I. DUPONT DE NEMOURS & CO., *ET AL.* | * |
| DEFENDANTS. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Pending before this Court is Plaintiffs' Haley Paint Company and Isaac Industries, Inc. ("Plaintiffs) Motion to Vacate Prior Order and Requesting Permission to Take Jurisdictional Discovery (ECF No. 222). Previously, this Court granted the Defendant The National Titanium Dioxide Company Ltd. d/b/a Cristal's ("Cristal") motion to dismiss on the ground that it could not exercise personal jurisdiction over the Saudi Arabian company. Plaintiffs essentially seek, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to have this Court reconsider its prior ruling in light of "documents recently produced" that were not available to the Plaintiffs when this Court first considered Cristal's motion to dismiss. This Court has reviewed the record, as well as the pleadings and exhibits, and the parties have agreed that no hearing is necessary.[1] *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Plaintiffs' motion (ECF No. 222) is DENIED.

---

[1] This Court has adopted a practice of holding monthly teleconferences in this case to discuss outstanding issues and discovery related matters. *See, e.g.*, Letter Orders, ECF Nos. 204, 220, 236, and 258. The parties agreed that no hearing is necessary on one of these calls.

1

**PROCEDURAL HISTORY**

This class action lawsuit alleges price fixing and cartel practices in the multi-billion dollar titanium dioxide industry in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs have filed this class action on behalf of themselves and on behalf of a class consisting of all persons and entities that purchased Titanium Dioxide in the United States directly from one or more named Defendants between March 1, 2002, and the present.

Putative defendant Cristal is a foreign corporation domiciled in the Kingdom of Saudi Arabia. During the class period, Cristal manufactured and sold titanium dioxide to purchasers in the U.S. and elsewhere, directly or through affiliates and subsidiaries, including Defendant Millennium Inorganic Chemicals, Inc. ("Millennium"). Millennium is a Delaware corporation with its principal place of business in Maryland. Millennium manufactures titanium dioxide, and markets and sells titanium dioxide products to its customers. The Plaintiffs' Consolidated Amended Complaint, ECF No. 51, alleges that "Millennium has acted as the U.S. agent and alter ego for Cristal. Cristal has exerted considerable control over the activities and operations of Millennium such that the two entities are essentially one." *Id.* ¶ 14. On this basis, Plaintiffs sought to establish this Court's personal jurisdiction over Cristal.

However, almost one year ago, this Court granted putative Defendant Cristal's motion to dismiss after concluding that personal jurisdiction was lacking. Specifically, this Court held that Cristal did not have the requisite "minimum contacts" with the State of Maryland, and that because Cristal did not exert "considerable control" over its subsidiary Millennium, the jurisdictional contacts of Millennium could not therefore be imputed to

Cristal. *Haley Paint Co. v. E.I. DuPont De Nemours and Co.*, 775 F. Supp. 2d 790, 799-800 (D. Md. 2011). Moreover, this Court determined that jurisdictional discovery was not warranted because "jurisdictional discovery 'cannot simply be a fishing expedition, and absent allegations . . . that would provide a basis for piercing the corporate veil, plaintiffs are not entitled to such discovery." *Id.* at 801 (quoting *Glass v. Volkswagen of Am., Inc.*, 172 F. Supp. 2d 743, 744 (D. Md. 2001)).

The Plaintiffs did not move this Court to reconsider its prior ruling, and did not pursue an interlocutory appeal—instead the Plaintiffs and the remaining Defendants[2] proceeded to discovery. Discovery has largely been completed, and the Plaintiffs now argue that in light of recently discovered evidence supporting their initial contention that Millennium is the alter ego of Cristal, this Court should vacate its prior order and allow jurisdictional discovery.

## STANDARD OF REVIEW

Plaintiffs have filed their motion to vacate expressly pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. To support a motion under Rule 60(b), the moving party must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Hale v. Belton Assoc., Inc.*, 305 F. App'x 987, 988 (4th Cir. 2009) (quoting *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). "Rule 60(b) provides extraordinary relief and may only be invoked under 'exceptional circumstances.'" *Mines v. United States*, No. WMN-10-520, 2010 WL 1741375, at

---

[2] Two days prior to dismissing Cristal on jurisdictional grounds, this Court denied the other Defendants' motion to dismiss, holding that the Plaintiffs had adequately stated a claim on which relief may be granted. *See Haley Paint Co. v. E.I. DuPont De Nemours and Co.*, 804 F. Supp. 2d 419 (D. Md. 2011).

*2 (D. Md. April 28, 2010) (Nickerson, J.) (quoting *Compton v. Alton Steamship Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1982)).

Rule 60(b), however, applies only to *final* judgments. Fed. R. Civ. P. 60(b) ("On motion . . . the court may relieve a party . . . from a final judgment, order, or proceeding"); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991) (rules 59 and 60 apply only to final judgments). Federal Rule of Civil Procedure 54(b), after mentioning that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if* the court expressly determines that there is no just reason for delay,"[3] states:

> Otherwise, any order or other decision however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities.*

Fed. R. Civ. P. 54(b) (emphasis added).

Accordingly, because the Plaintiffs did not move for certification of this Court's Order dismissing Defendant Cristal as *final* under Rule 54(b), the Order is interlocutory in nature, and is more properly viewed through the lens of Rule 54. *See generally* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, *Federal Practice and Procedure* § 3914.7 (2d ed. 1992). In this regard, the Fourth Circuit has stated that "a district court retains the power to reconsider and modify its interlocutory judgments," and that power "is committed to the discretion of the district court." *American Canoe Assoc. v. Murphy Farms, Inc.*,

---

[3] For a discussion of the two-step process that a court must undertake in certifying a judgment as final under Rule 54(b), *see MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010).

326 F.3d 505, 514-15 (4th Cir. 2003) (citing, *inter alia*, *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)).  Moreover, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment."  *Id.* at 514; *see also Fayetteville Investors*, 936 F.2d at 1472 ("a review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60").

Accordingly, by requesting review under Rule 60(b), Plaintiffs have inadvertently sought review under a heightened standard—a standard that is not necessary or proper in this case.  *See id.* at 1472-74 (district court improperly reconsidered interlocutory order under the strictures of Rule 60).  Therefore, this Court will not apply the heightened standard of Rule 60(b) insofar as interlocutory orders "are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  Fed. R. Civ. P. 60(b) Advisory Committee Note (1946).

## ANALYSIS

Although the Plaintiffs need not show the "exceptional circumstances" required for relief under Rule 60(b), they nevertheless fail to convince this Court that justice requires vacating its prior order dismissing Defendant Cristal for lack of personal jurisdiction.

Before exercising personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements.  *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  For a non-resident defendant, due process requires that a defendant have

5

certain minimum contacts with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Fourth Circuit has clarified that "due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." *Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) (citation omitted).

When, as here, the defendant has no direct contacts with the forum state and the plaintiffs seeks to impute the jurisdictional contacts of a subsidiary to the parent defendant, under Maryland law the agency test is used in analyzing whether or not to pierce the corporate veil for jurisdictional purposes. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993). The Maryland agency test allows a court to attribute the actions or contacts of a subsidiary corporation to the foreign parent "only if the parent exerts considerable control over the activities of the subsidiary." *Id.* Moreover, "[t]he fiction of the wholly separate corporate form is jealously guarded by courts in Maryland, where, as a matter of public policy, the [p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously.'" *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011) (adopting Report and Recommendation of Magistrate Judge Gauvey of this Court) (quoting *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976)). At base, "Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil, and courts do so *only* where necessary to prevent fraud or to enforce a paramount equity." *Rheumatology Nurses Soc'y, Inc. v. Phoenix Grp. Holdings, LLC*, No. CCB-08-1675, 2009 WL 249233, at *3 (D. Md. Jan. 8, 2009) (citation omitted, emphasis added); *see also Dixon v. The Process Corp.*, 382 A.2d 893, 900 (Md. Ct. Spec. App. 1978) ("We make it clear that the rule of law in this State is that no matter how flimsily woven is the

6

corporate curtain, it may not be flung aside except to prevent fraud or [enforce] a paramount equity."). "[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

Here, the Plaintiffs do not argue that the corporate cloak has been used to perpetrate some sort of fraud, and instead only argue that the jurisdictional contacts of Millennium should be imputed to Cristal under the "alter ego" doctrine—a doctrine that this Court has concluded "is not a separate basis for piercing the [corporate] veil, but is rather subsumed 'in the notion of paramount equity.'" *Baltimore Line Handling*, 771 F. Supp. 2d at 552-53 (quoting *Hildreth v. Tidewater Equip. Co., Inc.*, 838 A.2d 1204, 1212-13 (Md. 2003)). A court may attribute the subsidiary's actions to the parent corporation "only if the parent exerts considerable control over the activities of the subsidiary." *Mylan*, 2 F.3d at 61.

The most forceful new evidence propounded by the Plaintiffs supporting their position that Cristal exerts the requisite control over Millennium is a document titled "Authorized Approval Matrix." *See* Pls.' Reply, Ex. A., ECF No. 242-2. This document purports to show that Cristal executives must approve the most significant contracts entered into by Millennium. Specifically, the document shows that titanium dioxide sales contracts between $100 million and $199 million must be approved by Cristal's President or CEO, and that contracts over $200 million must be approved by the "Cristal Global Steering Body."[4]

---

[4] As they did in their original opposition to Cristal's motion to dismiss, the Plaintiffs spend much time arguing that, contrary to this Court's previous conclusion, "Cristal Global" is not merely an umbrella marketing moniker. *See* March 31, 2011 Mem. Op., 775 F. Supp. 2d at 794. Essentially, the Plaintiffs argue that because all the Cristal entities (including Millennium) are somehow enmeshed within "Cristal Global," that fact evidences the requisite control of a parent over a

7

*Id.* However, as noted by the Defendants, this document also reflects the fact that Millennium has significant autonomy in its day-to-day operations, and does not need Cristal's approval for the majority of sales contracts it enters into or capital projects it undertakes. While this evidence does suggest that Cristal exerts significant control over its subsidiary Millennium, in light of Maryland's restrictive piercing standard, it does not rise to the level required to disregard the corporate veil between the two companies. *See Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723 (D. Md. 2000) ("the fact that [the parent corporation] will control certain decisions and even must approve changes does not mean the two companies operate as one"); *see also In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599-600 (M.D. Pa. 2009) (approval of budgets "typify standard parent-subsidiary interactions and do not reflect daily, operational control that is the *sine qua non* of an alter ego relationship").

In sum, Plaintiffs have simply not met the high burden required of them to pierce the corporate veil and impute the jurisdictional contacts of Millennium to Cristal. Millennium's Senior Vice President—Strategy & Development, John E. Hall, has now submitted three affidavits detailing Millennium's independence from Cristal, and these affidavits are more than sufficient to outweigh the evidence put forth by the Plaintiffs in support of their motion. *See* Hall Affs., ECF Nos. 86-3, 94-1, & 232-1. Accordingly, this Court concludes

---

subsidiary sufficient to warrant piercing the corporate veil. This argument was unavailing when this Court first considered the matter, and it remains unavailing today. Additionally, Plaintiffs make an additional argument, based on Section 12 of the Clayton Act, which was previously rejected by this Court. For the reasons discussed in this Court's previous Memorandum Opinion, that argument also remains unavailing. *See id.* at 800.

that no paramount equity compels piercing the corporate veil in this case, and Plaintiffs' motion is therefore DENIED.

## CONCLUSION

For the reasons stated above, it is this 3rd day of April, 2012, ORDERED that:

1. Plaintiffs' Motion to Vacate Prior Order and Requesting Permission to Take Jurisdictional Discovery (ECF No. 222) is DENIED; and

2. The Clerk of the Court transmit this Memorandum Order to counsel.

/s/_____
Richard D. Bennett
United States District Judge