**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| IN RE: TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANTS' MOTION TO AMEND CLASS DEFINITION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY ......... 3

    I.     The Parties' Pleadings ......................................................................... 3

    II.    Discovery and Class Certification ...................................................... 3

    III.   Defendants' Motion to Amend Class Definition ................................. 4

ARGUMENT ..................................................................................................... 5

    I.     Defendants' Motion Is Improper and Circumvents the Federal Rules of
        Civil Procedure and the Federal Arbitration Act. ................................. 5

        A.   Defendants' Motion Does Not Comport With Rule 23. ........... 6

        B.   Defendants' Motion Fails to Comply with the Requirements of the
              Federal Arbitration Act. ......................................................... 9

    II.    Defendants Cannot Enforce Arbitration Agreements to Which They Are
        Not Parties. ....................................................................................... 10

        A.   Defendants May Not Enforce Other Defendants' Agreements
              Because Plaintiffs' Claims Are Not Based On, Nor Do They Arise
              From Their Contracts. ........................................................... 11

        B.   Defendants May Not Enforce Agreements to Which They are Not
              Signatories Because They Are "Strangers" to the Contracts. .................. 13

    III.   Defendants Waived Any Arbitration Rights They May Have Had Long
        Ago .................................................................................................. 17

        A.   Defendants Acted Inconsistently With Any Intent to Enforce
              Arbitration Rights. ................................................................. 18

        B.   Defendants' Delay is Prejudicial. ........................................... 18

        C.   Defendants' Novel Legal Theory Lacks Merit And Does Not
              Excuse Their Delay. ............................................................... 20

    IV.   Defendants Also Waived Their Improper Venue And Jury Waiver
        Arguments. ....................................................................................... 22

    V.    Defendants' Motion Improperly Sidesteps Valid Contract Defenses By
        Failing to Provide a Complete Factual Record. ................................... 24

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*,
97 F. Supp. 2d 320 (E.D.N.Y. 2000) ............................................................ 21, 22

*Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*,
572 F.3d 86 (2d Cir. 2009) ..................................................................................... 23

*Am. Bankers Ins. Group, Inc. v. Long*,
453 F.3d 623 (4th Cir. 2006) ................................................................................. 11

*Am. Reliable Ins. Co. v. Stillwell*,
212 F. Supp. 2d 621 (N.D. W. Va. 2002) .............................................................. 20

*Argueta v. Banco Mexicano*, S.A.,
87 F.3d 320 (9th Cir. 1996) ................................................................................... 22

*Becher v. Long Island Lighting Co.*,
172 F.R.D. 28 (E.D.N.Y. 1997) ............................................................................... 7

*Brantley v. Republic Mortg. Ins. Co.*,
424 F.3d 392 (4th Cir. 2005) ................................................................ 11, 12, 13, 14

*Dearborn Indus. Mfg. Co., Ltd. v. Soudronic Finanz AG*,
1997 WL 156589 (N.D. Ill. Apr. 1, 1997) ............................................................ 23

*Donaldson Co. v. Burroughs Diesel, Inc.*,
581 F.3d 726 (8th Cir. 2009) ................................................................................. 15

*EEOC v. Waffle House, Inc*,
534 U.S. 279 (2002) ................................................................................................ 11

*Estrella v. Freedom Fin. Network, LLC*,
No. 09-3156, 2012 WL 214856 (N.D. Cal. Jan. 24, 2012) .................................... 21

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ................................................................................................ 11

*Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
817 F.2d 250 (4th Cir. 1987) ...................................................................... 17, 18, 19

*Garcia v. Wachovia Corp.*,
No. 11-16029, --- F.3d ---, 2012 WL 5272942 (11th Cir. Oct. 26, 2012) ...................... 19, 20

*General Envtl. Science Corp. v. Horsfall*,
753 F. Supp. 664 (N.D. Ohio 1990) ....................................................................... 23

*Genus Credit Mgmt. Corp. v. Jones*,
05-3028, 2006 WL 905936 (D. Md. Apr. 6, 2006) ................................................ 16

*Griggs v. Evans*,
205 Md. App. 64 (Md. Ct. Spec. App. 2012) ......................................................... 11

*Hooper v. Advance Am.*,
589 F.3d 917 (8th Cir. Mo. 2009) ................................................................... 18, 20

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Humana Inc. Managed Care Litig.*,
   285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom. Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) ..................................... 15

*In re Managed Care Litig.*, 132 F. Supp. 2d 989 (S.D. Fla. 2000), *aff'd In re Humana*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom. Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003)................... 17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009)....................................................................... 7

*In re Powe*,
   282 B.R. 31 (Bankr. S.D. Ala. 2001) ...................................................... 20

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   No. 07-489, --- F.R.D. ---, 2012 WL 2870207 (D.D.C. June 21, 2012)................ 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827, 2011 WL 1753748 (N.D. Cal. May 9, 2011)................... 2, 7, 23, 25

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
   838 F. Supp. 2d 967 (C.D. Cal. 2012) ..................................................... 20

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   320 F. Supp. 2d 1135 (D. Kan. 2004)................................................ 21, 22

*In re Wireless Tel. Servs. Antitrust Litig.*,
   No. 02-2637, 2004 WL 1087262 (S.D.N.Y. May 17, 2004) ........................ 22

*Jones v. Genus Credit Mgmt. Corp.*,
   353 F. Supp. 2d 598 (D. Md. 2005)........................................................ 16

*Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselischaft MbH*,
   699 F. Supp. 669 (N.D. Ill. 1988)........................................................... 23

*Karnette v. Wolpoff & Abramson, L.L.P.*,
   444 F. Supp. 2d 640 (E.D. Va. 2006) ..................................................... 20

*Klopfer v. Queens Gap Mt., LLC*,
   816 F. Supp. 2d 281 (W.D.N.C. 2011) ................................................... 13

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
   449 Fed. Appx. 704 (10th Cir. 2011)............................................ 12, 14, 15

*Liles v. Ginn-La West End, Inc.*,
   631 F.3d 1242 (11th Cir. 2011) .............................................................. 13

*Long v. Silver*,
   248 F.3d 309 (4th Cir. 2001) ................................................................. 14

*Manasher v. NECC Telecom*,
   310 Fed. Appx. 804 (6th Cir. 2009)........................................................ 20

*Maxum Foundations, Inc. v. Salus Corp.*,
   779 F.2d 974 (4th Cir. 1985) ................................................................. 17

*Mobility v. Concepcion*,
131 S. Ct. 1740 (2011) ................................................................................................. 11

*Mora v. Harley-Davidson Credit Corp.*,
No. 08-1453, 2012 WL 1189769 (E.D. Cal. Apr. 9, 2012) ................................................. 21

*Noohi v. Toll Bros., Inc.*,
No. 11-00585, 2012 WL 273891 (D. Md. Jan. 30, 2012) ................................................... 24

*O'Donovan v. Cashcall, Inc.*,
No. 08-3174, 2012 WL 2568174 (N.D. Cal. July 2, 2012) .................................................. 8

*Palmer Ventures LLC v. Deutsche Bank AG*,
254 Fed. Appx. 426 (5th Cir. 2007) .............................................................................. 13

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ........................................................................................ 23

*Piechur v. Redbox Automated Retail, LLC*,
2010 U.S. Dist. LEXIS 16324 (S.D. Ill. Feb. 24, 2010) ..................................................... 21

*Richardson v. Byrd*,
709 F.2d 1016 (5th Cir. 1983) ....................................................................................... 6

*Ross v. Am. Express Co.*,
547 F.3d 137 (2d Cir. 2008) ........................................................................................ 15

*S. Broward Hosp. Dist. v. Medquist, Inc.*,
258 Fed. Appx. 466 (3d Cir. 2007) ............................................................................... 20

*Saleh v. Titan Corp.*,
353 F. Supp. 2d 1087 (S.D. Cal. 2004) .......................................................................... 21

*Schuele v. Case Handyman & Remodeling Servs., LLC*,
412 Md. 555 (Md. 2010) .............................................................................................. 12

*Security Watch, Inc. v. Sentinel Sys.*,
176 F.3d 369 (6th Cir. 1999) ......................................................................................... 6

*Steward v. Up North Plastics, Inc.*,
177 F. Supp. 2d 953 (D. Minn. 2001) ............................................................................ 23

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
130 S. Ct. 1758 (2010) ................................................................................................ 11

*Tex. Indus. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ...................................................................................................... 1

*Thomas v. Carnival Corp.*,
573 F.3d 1113 (11th Cir. 2009), *abrogated on other grounds by Lindo v. NCL
(Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011) ............................................................. 6

*Thompson v. Witherspoon*,
197 Md. App. 69 (Md. Ct. Spec. App. 2011) ................................................................... 12

*Wachovia Bank N.A. v. Schmidt*,
445 F.3d 762 (4th Cir. 2006) .................................................................................... 6, 14

*Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*,
683 F.3d 577 (4th Cir. 2012) .................................................................................. 18, 19

*Wright v. Circuit City Stores, Inc.*,
201 F.R.D. 526 (N.D. Ala. 2001) ............................................................................... 7, 8

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

9 U.S.C.
    § 4 ........................................................................................................................... 9
    § 16 ........................................................................................................................ 19

**RULES**

Local Rule 105.10 ......................................................................................................... 6

Rule 23 ............................................................................................................... 6, 7, 9

**OTHER AUTHORITIES**

J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel as a Basis for
    Compelling Nonsignatories to Arbitrate — A Bridge Too Far?,* 21 Rev. Lit.
    593, 613  (Summer, 2002) .................................................................................... 14

## INTRODUCTION

After choosing not to enforce their purported contractual rights in a timely manner, Defendants now move to excise from the certified Class an unknown number of class members on the basis of an incomplete record and an unprecedented procedure, invoking a hodgepodge of contractual provisions purportedly requiring certain class members' claims to be arbitrated, litigated in another forum, or decided without a jury. *See* Defendants' Motion to Amend Class Definition ("Motion").  Defendants do so after their long silence in this two-and-a-half year litigation, throughout multiple Rule 12 motions, production of over twelve million pages of documents, dozens of written discovery requests, seventy depositions, the close of the fact discovery period, and substantial expert discovery.  What's more, Defendants seek to do so without employing the established and proper procedures for enforcing these types of agreements.  Their unprecedented Motion fails as a matter of law on five independent grounds.

First, the Motion is a procedurally improper method of testing the agreements at issue because it does not move to compel the arbitration of any claims, or to enforce rights that purportedly arise under contracts between Defendants and a subset of class members (many of whom Defendants fail to identify).

Second, adopting Defendants' proposed Class definition would exclude class members who have valid antitrust claims against Defendants from whom they did not purchase titanium dioxide — and therefore with whom they have not contracted — by virtue of the rules of joint and several liability.  *See Tex. Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645–46 (1981) (antitrust conspirators face joint and several liability for all damages caused by the conspiracy with no right to contribution from co-conspirators).  Defendants' attempt to rely on equitable principles to invoke provisions of contracts to which they are strangers fails as a matter of law.

Third, Defendants waived the right to enforce any arbitration agreements when they decided at the pleading stage — and consistently for years thereafter — to remain silent and roll the dice in this forum, increasing litigation costs, utilizing discovery procedures unavailable in arbitration, and

expending the time and resources of this Court on purportedly arbitrable claims.  Their decision now

to seek redefinition of the Class prejudices both the class members whose purported agreements are

at issue and the rest of the Class.

Fourth, Defendants waived any rights to enforce forum selection and jury waiver clauses for

the same reasons they have waived any right to enforce arbitration agreements.  Significantly, the

law is even *stronger* with respect to venue and jury waiver clauses, as it is clear that such agreements

must be enforced when responsive pleadings are filed.  Defendants do not cite, and Plaintiffs are not

aware of, any legal authority enforcing a forum selection clause after years of litigation.

Defendants' effort to press jury waivers now also runs counter to contract and constitutional law.

Fifth, even on the thin record presented by the Motion, Defendants' proposed Class

definition is unworkable because it would dismiss claims without a sufficient factual record

establishing that the contracts at issue are valid, enforceable, or applicable to the entire Class period

or the claims in this case.  Had Defendants not waived such rights, a motion seeking to enforce them

could have been fully and manageably adjudicated upon a complete record.

In addition to denying Defendants' Motion, this Court should order Defendants to seek relief

with respect to any non-waived rights that remain following denial of this Motion in an omnibus

motion to enforce contractual rights, if Defendants so choose, with attendant discovery, the filing of

which should occur only after the opt-out period has run and the final composition of the Class is

known.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Lit.*, No. 07-1827, 2011 WL 1753748, at *6

(N.D. Cal. May 9, 2011) (refusing to pass on motion to enforce arbitration rights in antitrust price-

fixing case until after the defendants present an "omnibus motion to compel arbitration" producing

all relevant contracts, identifying relevant class members, and affording the plaintiffs an opportunity

to take arbitration-related discovery and address the enforceability and validity of each contract).

## FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### I.        The Parties' Pleadings

Plaintiffs filed this case on February 9, 2010, raising claims for price-fixing and cartel

practices under Section 1 of the Sherman Act, 15 U.S.C. § 1,  against Defendants Cristal USA

(formerly Millennium), DuPont, Huntsman, and Kronos (collectively, "Defendants").   Dkt. No. 1.

On May 28, 2010, Defendants moved to dismiss, arguing that Plaintiffs' Consolidated Complaint did

not state a claim upon which relief could be granted.  Dkt. No. 84.  Defendants did not assert that

Plaintiffs' claims, or those of any members of the proposed Class, should be dismissed based upon

any purported contractual agreement regarding arbitration, venue, or waiver of jury trial.  On March

29, 2011, this Court denied Defendants' Motion to Dismiss.  Dkt. No. 102.

Defendants thereafter filed their answers.  Neither DuPont's initial or operative answer

contains an affirmative defense regarding arbitration.  Dkt. No. 138, 156.  To this day, DuPont has

not amended its answer to include one.  In their answers, Cristal USA, Huntsman, and Kronos

asserted mandatory arbitration as a defense.  None of Defendants' answers asserts affirmative

defenses regarding either forum selection or jury waiver agreements.   Dkt. No. 152, at ¶135 (Cristal

USA); Dkt. No. 185, at ¶138 (Huntsman); Dkt. No. 186, at ¶5 (Kronos).

Defendants never filed — nor indicated any intent to file — a Rule 12(b)(3) Motion to

Dismiss for improper venue, nor a motion to compel arbitration pursuant to Section 4 of the Federal

Arbitration Act, 9 U.S.C. § 4, with respect to any party or absent member of the proposed class.

### II.       Discovery and Class Certification

The parties have engaged in substantial discovery.  Defendants have submitted disclosures

pursuant to Rule 26; none of them mention agreements regarding arbitration, forum selection, or jury

waiver.  Rayhill Decl., ¶ 7.  The parties produced over twelve million pages of documents, served

and responded to dozens of discovery requests, and conducted over seventy depositions.  Expert

discovery has been underway for months, and Defendants' depositions of Plaintiffs' experts is

substantially advanced.

On February 2, 2012, Plaintiffs filed their Motion for Class Certification.  Dkt. No. 246.  On May 29, 2012, Defendants made for the first time, on page 49 of their 50-page Opposition, the argument that contractual provisions preclude either certification or the inclusion of certain class members in any certified class.  Dkt. No. 293.  Plaintiffs' Reply noted that Defendants' argument was untimely and therefore waived, and that Defendants failed to make any factual showing upon which their claims were based.  Further, as Plaintiffs showed, any such contracts, to the extent they exist and are enforceable, did not preclude class certification.  Dkt. No. 306.

The Court certified the Class on August 28, 2012.  Dkt. No. 338.  With respect to Defendants' contractual arguments, the Court held:  "Because it is unclear to what extent the putative class members have this type of contractual provision, and to what extent the Defendants will seek to uphold those agreements, this Court concludes that 'the possible arbitration [or other contractual bar] of some class members does not, by itself, defeat class certification.'"  Dkt. No. 337, at 40 (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, --- F.R.D. ---, 2012 WL 2870207, at *28 (D.D.C. June 21, 2012)).

## III.   Defendants' Motion to Amend Class Definition

The Class contains "at least 700" members.  *See* Dkt. No. 337 at 11.  Defendants' November 2, 2012 Motion attaches a mishmash of sixty-three contracts between class members and one of the Defendants.  Dkt. No. 352.  These contracts show the following:

- no class members contracted with every Defendant;

- twelve of the sixty-three contracts, from nine customers, contain an arbitration clause;

- two of the contracts are not purchase agreements — they are agreements for electronic inventory management services.  *See* Mot., Ex. 5 to Clover Decl.; Ex. 5 to Daney Decl.;

- most of Huntsman's contracts, and at least one of DuPont's, contain "Third Party Beneficiary" clauses that expressly foreclose the rights of entities other than the parties to the agreements to enforce them.  *See, e.g.,* Mot., Exs. A–Y to Quinn Decl.; Ex. 3 to Daney Decl.;

- none of the contracts covers the entire Class Period, and several are as short as a single year, post-date the filing of this lawsuit, or both. *See, e.g.*, Mot., Ex. RR to Quinn Decl. (Jan. 1, 2012 to Dec. 31, 2012); Ex. 2 to Sanzalone Decl. (Jan. 1, 2007 to Dec. 31, 2007);

- forty-seven of the contracts contain venue clauses;

- forty-four contain jury waiver clauses;

*See* Rayhill Decl., ¶¶ 6; Exs. A–B (organizing and summarizing Defendants' submissions).  Without submitting any additional evidence, Defendants also assert that "more than one hundred additional customers" *may* have contracts that contain arbitration, forum selection, or jury waiver clauses.  Mot., at 17.  Defendants do not provide any details concerning these additional contracts, nor do they assert that any apply throughout the entire Class Period.

## ARGUMENT

### I.  Defendants' Motion Is Improper and Circumvents the Federal Rules of Civil Procedure and the Federal Arbitration Act.

Defendants have failed to present reliable evidence of the extent of the agreements they seek to enforce, and ask the Court to follow an unprecedented procedure that ignores clear procedural and substantive law, as well as established class action practice.  The Court's Class Certification Order deferred consideration of this issue until Defendants make clear the "extent [to which] the putative class members have this type of contractual provision, and to what extent the Defendants will seek to uphold those agreements."  The Motion, however, contains evidence that is, at best, inconsistent, self-contradictory, and incomplete.  Defendants seek to enforce their putative contractual rights without first showing that the agreements at issue are enforceable, that they apply to the claims in this case, that they apply to the entire Class Period (and thus justify excluding class members entirely), or that Defendants who did not sign them and have no relationship with a class member can nonetheless secure the benefit of a bargain that they did not make.[1]

---

[1] Defendants have not argued, nor can they, that they may rely on contracts executed during the Class Period to enforce arbitration, venue, or jury waiver clauses with respect to claims that arose

This Motion is not a proper Rule 23 motion, Rule 12 motion to dismiss, or motion to compel arbitration under the Federal Arbitration Act.  And insofar as it is a motion for reconsideration of the Court's Order rejecting Defendants' proposed Class definition, Defendants have failed to satisfy the requirements for it in the Court's Memorandum Opinion because in the two months since the Court rejected Defendants' proposed definition, nothing has changed.  The parties and the Court are still in the dark as to the precise contractual provisions Defendants' claim justify the dismissal of class members from this case.  In any case, any motion for reconsideration of the Court's Order is untimely.  *See* Local Rule 105.10.

### A.      **Defendants' Motion Does Not Comport With Rule 23.**

Defendants concede that "the possibility that some class members might have signed arbitration agreements does not defeat class certification."  Mot., at 16.  While Rule 23 permits the Court to modify the Class definition, Defendants' Motion to exclude entities that are purportedly subject to arbitration, forum selection, and jury waiver agreements is unjustified; Rule 23 contemplates modification in very different circumstances.

Rule 23(c)(1)(C) provides a mechanism for revisiting and potentially revising the class definition "in response to the progression of the case from assertion to facts."  *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983); *Becher v. Long Island Lighting Co.*, 172 F.R.D. 28, 30

---

and damages suffered before their execution.  Retroactive application of the clauses at issue here is impermissible.  *See, e.g., Thomas v. Carnival Corp.*, 573 F.3d 1113, 1117–19 (11th Cir. 2009), *abrogated on other grounds by  Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011) (refusing to apply arbitration clause "retroactively" where the clause applied to "[a]ny and all disputes arising out of or in connection with this Agreement"); *Security Watch, Inc. v. Sentinel Sys.*, 176 F.3d 369, 372 (6th Cir. 1999) (refusing to compel arbitration where products were purchased first under contracts without arbitration agreements and later under contracts with expansive arbitration clauses because the later adoption of arbitration clauses did not affect plaintiff's claims with respect to earlier purchases).  *Accord Wachovia Bank N.A. v. Schmidt*, 445 F.3d 762, 767–69 (4th Cir. 2006) (refusing to compel arbitration of claims arising under an earlier contract because later contract with arbitration clause related to a "distinct relationship" with the defendant unrelated to plaintiff's claims and because "the events giving rise to these claims occurred before" the execution of the arbitration agreement).

(E.D.N.Y. 1997) (allowing amendment to clarify a subclass definition in light of disputed factual issues).  In order to amend a class definition, "a district court must not only consider the criteria of Rule 23(a) and (b) in light of factual and legal developments, but also whether the parties or the class would be unfairly prejudiced by a change in proceedings at that point."  *TFT-LCD Antitrust Lit.*, 2011 WL 1753748, at *6 (rejecting amendment to class definition in antitrust price-fixing case because adding claims would prejudice defendants late in the litigation).  Amendment *may* be appropriate whenever it will provide "better comprehension and explanation of the class and the class claims [that] helps district courts, appellate courts, attorneys, and parties all proceed with more information and mutual understanding."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 (1st Cir. 2009).

Here, there have been no relevant "factual or legal developments."  Since class certification, Defendants have supplied incrementally more, but still insufficient, evidence to warrant reopening the Court's rationale in defining the certified Class.  Defendants also fail to address Rule 23, much less the unfair prejudice their Motion would visit on the Class.  Defendants instead seek the exclusion of class members through the mechanism of Rule 23(c)(1)(C) that they failed to secure at class certification.  They do so without producing many of the additional contracts upon which they base their Motion or identifying all of the class members they seek to exclude, despite claiming that they are "readily identifiable."  Defendants also fail to account for the patchwork periods of time the contracts cover, none of which are co-extensive with the Class Period, and the fact that, per their Motion, the claims of "potentially more than one hundred" additional class members who are members of what has been identified as "Guild CPO" would be dismissed even though those class members *never signed the contracts at issue*.  Mot., at 6.

Defendants justify their invocation of Rule 23 (c)(1)(C) by arguing that a class that includes members with arbitration clauses is "improper."  This argument — the same one rejected by this Court, but in new packaging — is wrong as a matter of law.  This time, Defendants rely on *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 538 (N.D. Ala. 2001), incorrectly claiming the *Wright*

court "excis[ed] from [the] class 'employees subject to [an] arbitration agreement [who] would not be able to participate in the lawsuit as class members.'" Mot., at 15.  But the *Wright* court, like the five other cases cited by Defendants, did no such thing.  Those courts merely held that a class definition need not be modified to reflect arbitration clauses.  *See* Mot., at 16–17 (citing cases).  The proper procedure, per Defendants' cases, was for the certified Class to receive notice.  Upon further development — and production of relevant evidence — the parties and the Court could then address any justified arguments concerning the contractual provisions of specific class members.  *Wright*, 201 F.R.D., at 538.  In none of these cases did the court simply redefine the class based on nothing more than "example" contracts and otherwise bare assertions.

*O'Donovan v. Cashcall, Inc.*, No. 08-3174, 2012 WL 2568174, at *1–3 (N.D. Cal. July 2, 2012), also cited by Defendants, similarly shows why their Motion fails.  There, the defendant merely moved to modify the closing date of the class period.  *The evidence showed* there was a date certain after which the defendant amended its standard promissory note to include an arbitration clause.  Thereafter, *every member of the proposed class* had signed the agreement.  After extensive discovery and briefing regarding the change to the promissory note, the court held that the clause was enforceable and therefore applied to each of the affected customers equally.  Considering the unique and straightforward nature of the issue, the *Cashcall* court noted that it could dispense with the ordinary arbitration motion procedures and granted the defendant's motion.  *Id.*

Defendants rely on the simplicity of the issue presented in *Cashcall* despite the patently different circumstances in this case.  In their Motion, Defendants do not seek to change the Class period.  Nor have they made a showing that the agreements are enforceable as to the class members who signed them, much less that a Defendant may enforce its co-Defendant's agreements despite having never seen, negotiated, or signed it.  Where, in *Cashcall*, the court was presented with all the relevant evidence concerning the contracts at issue, here, Defendants have failed to produce it; and where, in *Cashcall*, the parties had ample opportunity to scrutinize the evidence and raise appropriate defenses, the relief sought by the Motion here would foreclose such a procedure.

Moreover, even if Defendants had made an adequate evidentiary showing — and they have

not — and even if they have not waived their contractual rights, the practice counseled by caselaw

and Rule 23 is to: (1) issue notice to the Class so that all parties know who the class members are;

(2) permit Defendants to move with respect to any non-waived contractual rights; and (3) allow the

parties to oppose the Motion, with attendant discovery.  Defendants themselves possess the evidence

to categorize the relevant contracts and provisions into a manageable number of groups, based on

similarities among the relevant provisions.  If it is true, as Defendants claim, that there may be up to

one hundred class members who are purportedly subject to the pertinent provisions for all or part of

their claims, Defendants could have — and should have — made such a showing long ago so these

proceedings could have proceeded in a manageable fashion based on a full record, and pursuant to

the appropriate procedure for their enforcement.  Defendants have not made such a showing, despite

the pendency of this years-long litigation, numerous opportunities to raise this issue, and the Court's

instructions in its Class Certification Order and regarding the case schedule.

**B.**      **Defendants' Motion Fails to Comply with the Requirements of the Federal Arbitration Act.**

Defendants' Motion also fails because it is procedurally defective under the FAA.[2]

First, Section 4 of the FAA requires a party to petition the district court to compel arbitration

of the subject claims.  9 U.S.C. § 4.  Defendants have failed to do so.

Second, Defendants are required to notify the parties against whom they intend to enforce an

arbitration clause.  Section 4 requires a petitioning party to provide five days' notice, in writing, of a

motion to compel arbitration.  *Id.*  Defendants have failed even to identify the class members against

whom they seek to enforce arbitration agreements, let alone provided them the statutorily required

notice.

Third, the FAA requires that Defendants provide *all* of the agreements at issue.  Section 4

requires courts to carefully analyze the agreements to confirm they exist, that they do, in fact,

---

[2] Plaintiffs reserve their right to separately oppose any motion Defendants may make under the FAA.

provide for arbitration, and that they are enforceable.  Defendants fail to provide, much less establish, the requisite factual predicate to a motion enforcing their arbitration rights.  Offering "example" agreements is not enough.

Fourth, the FAA and relevant caselaw contemplate that motions to compel arbitration include the opportunity for the parties to take arbitration-related discovery in order to establish the contracts, the parties to the contracts, and the facts underlying the formation and negotiation of the contracts. Here, Defendants moved absent such discovery and have not identified each affected customer.  In so doing, they try to short-circuit the procedural protections of the FAA, absent requisite discovery.

## II.     Defendants Cannot Enforce Arbitration Agreements to Which They Are Not Parties.

Even if the Motion sought to enforce any arbitration agreements in a procedurally proper manner, Defendants' proposal would haphazardly exclude from the Class every class member who signed any agreement with any Defendant covering any purchases during the Class period if a single agreement contained an arbitration, forum selection, or jury waiver provision.  The Motion would therefore: (1) expand Defendants' contractual rights beyond the intended scope of the contracts and beyond the rights negotiated by the parties to the contracts; (2) dismiss valid price-fixing claims not subject to the agreements; (3) dismiss claims against Defendants with whom class members never contracted; and (4) dismiss claims based on purchases before or outside the arguable relevant period the contracts cover.

Significantly, of the exemplar contracts Defendants attach to their Motion, not one covers the entire Class Period, and not a single identified customer contracted with every Defendant. Therefore, regardless of whether class members signed arbitration agreements, each class member still has the right to enforce the Sherman Act for damages suffered outside the time periods covered by the contract, and an independent right to enforce the Sherman Act against other co-conspirators, who are liable jointly and severally for the entire harm caused by the conspiracy. Thus, even if Defendants had not waived their rights under these contracts, and even if Defendants' exemplar contracts applied and were enforceable, they would not justify excluding a single member of the

Class, let alone the wholesale amendment to the Class definition Defendants seek.

Arbitration rights are a matter of contract.  The FAA "does not require parties to arbitrate when they have not agreed to do so."  *EEOC v. Waffle House, Inc*, 534 U.S. 279, 294 (2002). Courts consequently construe the right to arbitrate narrowly pursuant to the plain terms of the contract; absent manifest consent, courts cannot require a party to arbitrate its dispute.  *See, e.g.*, *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1755 (2011) (Thomas, J.) (concuring op.) (noting the Supreme Court has "emphasized that 'arbitration under the Act [FAA] is a matter of consent'") (citing cases); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) ("arbitration is a matter of consent, not coercion"); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 947, 949 (1995) ("basic objective" of courts in determining arbitration rights is "to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties.").

Defendants argue that the equitable estoppel doctrine obviates the need for consent in this case.  Nothing in the caselaw justifies turning blackletter contract law aside.  The equitable estoppel doctrine permits enforcement of an arbitration agreement by a non-signatory defendant only where the contract at issue is "inextricably intertwined" either with (1) the plaintiff's claims or (2) the non-signatory enforcing the agreement.  *See generally, Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (setting forth two-prong test); *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (same).  Here, because consent to arbitrate antitrust claims against strangers to the contracts at issue cannot be found or implied in the contracts' plain terms, as discussed below, neither scenario applies.

A.  **Defendants May Not Enforce Other Defendants' Agreements Because Plaintiffs' Claims Are Not Based On, Nor Do They Arise From Their Contracts.**

The equitable estoppel doctrine aims to avoid a party's "rel[iance] on a contract when it works to its advantage, and repudiate[ion] it when it works to its disadvantage."  *Griggs v. Evans*, 205 Md. App. 64, 82–83 (Md. Ct. Spec. App. 2012) (reciting the two-factor test, or "more succinctly

put, when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."); s*ee also Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 563 (Md. 2010) (reciting same).   The first prong of the equitable estoppel doctrine permits a non-signatory to enforce the arbitration rights of a party to the arbitration agreement where the plaintiffs' claim "makes reference to or presumes the existence of the written agreement."  *Brantley*, 424 F.3d, at 395.  Importantly, only where "the signatory's claims arise out of and relate directly to the written agreement," such as in a breach of contract case, can a non-signatory compel arbitration.  *Brantley*, 424 F.3d at 395.

The first prong does not apply in this case because (1) Plaintiffs' claims arise out of the Sherman Act, not their contracts with Defendants, and, in any case, (2) any agreement between a class member and one Defendant does not provide the legal basis for that class member's Sherman Act claims *against the other co-conspirator Defendants*.  Defendants summarily argue the first prong is met here because Plaintiffs' "claims regarding the prices they paid for titanium dioxide arise out of and relate directly to their purchase contracts," Mot., at 13, presumably because each purchase agreement contains an unlawfully and artificially inflated price term.

Not so.  In *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 710 (10th Cir. 2011), the Tenth Circuit squarely rejected this argument.  As *Lenox* acknowledged, an antitrust plaintiff's purchase "[a]greement does not form the legal basis for [the] claims.  [The plaintiff] is not attempting 'to hold the non-signatory liable pursuant to duties imposed by the agreement,' and its claims do not depend on whether either [defendants'] conduct was proper under the Agreement."  *Id.* (citations omitted).

The key inquiry under the first prong is whether Plaintiffs' claims are so "intertwined" with the contract providing for the arbitration agreement that it is the *source* of Plaintiffs' right to sue. *See Thompson v. Witherspoon*, 197 Md. App. 69, 89–90 (Md. Ct. Spec. App. 2011) (noting plaintiff's claims must "rely on" the agreement with the arbitration provision, or be "inextricably intertwined with, or inherently inseparable" from such an agreement; thus, the first prong was not

met where breach of fiduciary duty and fraud claims were asserted against non-signatory bank that attempted to enforce investor agreements); *Palmer Ventures LLC v. Deutsche Bank AG*, 254 Fed. Appx. 426, 431–32 (5th Cir. 2007) ("Even if a plaintiff's claims 'touch matters' relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action.").  The source of Plaintiffs' claims here is the Sherman Act, *not* the contracts that contain the clauses Defendants seek to enforce.

Defendants' legal support is unavailing.  In each of Defendants' cases, the plaintiff's claims arose directly from agreements containing arbitration and forum selection clauses.  *See Klopfer v. Queens Gap Mt., LLC*, 816 F. Supp. 2d 281, 293–94 (W.D.N.C. 2011) (basing fraudulent inducement and contractual claims on Lot Purchase Agreements); *Liles v. Ginn-La West End, Inc.*, 631 F.3d 1242, 1256 (11th Cir. 2011) (basing rescission and fraud claims on purchase contracts).  In contrast, Plaintiffs here do not allege that Defendants breached the terms of any contract.  *Compare Brantley*, 424 F.3d, at 395 (holding mortgage insurer could not enforce lender's mortgage arbitration clause against homeowner where homeowner claimed violations of the Fair Credit Reporting Act because statutory violations are "wholly separate from any action or remedy for breach of the underlying mortgage contract" and arbitration agreement).

**B.      Defendants May Not Enforce Agreements to Which They are Not Signatories Because They Are "Strangers" to the Contracts.**

Defendants next claim they can enforce contracts to which they are complete strangers under the second, "substantially interdependent and concerted misconduct" prong of the equitable estoppel doctrine.  *See Brantley*, 424 F.3d, at 395.  The Motion again asserts in summary fashion that "Plaintiffs' conspiracy allegations 'are more than sufficient to permit the non-signatory defendants to invoke the arbitration provision' and other contractual provisions."  Mot., at 13.  Numerous courts have rejected this argument as well.

Defendants misapprehend the applicable test.[3]  The second prong is only satisfied when the misconduct is "intimately founded on and intertwined with the underlying contract obligations." *Lenox*, 449 Fed. Appx., at 710.  In antitrust and other conspiracy cases, the mere assertion of conspiratorial misconduct does not satisfy this test.  The crucial inquiry is the nexus between the claims, the parties, the nonsignatory, and the contract.  *See, e.g., Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (focusing on the relationship between shareholders and closely-held corporation). Indeed, in *Wachovia Bank N.A. v. Schmidt*, 445 F.3d, at 770–71, the Fourth Circuit held that even where a defendant seeks to enforce arbitration rights under a contract *to which it is a party*, against a plaintiff whose claims *directly arise* from an earlier signed contract, it is the *connection between the contract at issue and the plaintiff's claims* that controls.  *Id.*  Thus, where an investor's claims directly arose from a financial planning agreement, the promissory note he later executed with the same bank for funds to be invested in the very fund the bank serviced pursuant to the earlier contract, the Fourth Circuit rejected the bank's equitable estoppel argument and refused to compel arbitration.  *Id.* (finding lack of "close connection" required for application of equitable estoppel doctrine and holding that "[t]he fact that a signatory receives benefits from a contract is therefore insufficient, in and of itself, to estop it from asserting that a nonsignatory is not entitled to invoke the contract's arbitration clause").

Courts throughout the country have similarly looked for a nexus between the parties, the

---

[3] The *Brantley* wording of the "concerted misconduct" prong of the equitable estoppel test is the consequence of an historical accident that has led to confusion in conspiracy cases.  *See generally,* J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate — A Bridge Too Far?,* 21 REV. LIT. 593, 613  (Summer, 2002) (discussing the accidental conversion of the phrase "conduct intimately founded in and intertwined with the underlying contract obligations" to "allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."). Nevertheless, the caselaw concerning this prong is relatively uniform, particularly in the Fourth Circuit.  *Id.* (recognizing "the Fourth Circuit, like the Second, continues to apply the pure equitable estoppel theory" despite change in wording of the test, which focuses on the relationship between the non-signatories and the contract at issue).

contract, and the claim in rejecting the argument Defendants raise here.  In *Lenox*, after rejecting Defendants' argument under the first prong, the Tenth Circuit held that allegations of collusion may support estoppel "only when they establish that the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause." *Lenox*, 449 Fed. Appx., at 710 (quotation omitted) ("[A]llegations of collusion between a signatory and a nonsignatory, alone, are not enough to estop a signatory from avoiding arbitration with a nonsignatory."). *See also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 975–76 (11th Cir. 2002), *rev'd on other grounds sub nom. Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) (RICO co-conspirators could not enforce arbitration provisions they did not sign because conspiracy claims against non-signatory defendants were not intertwined with contract between plaintiffs and signatory defendants).

Similarly, in *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 735 (8th Cir. 2009), the Eight Circuit held that non-signatory defendants may rely on the enforceable arbitration rights of a party to an arbitration agreement if the plaintiff alleges "substantial interdependent and concerted misconduct" **and** "only if either (1) the allegations of concerted misconduct were *dependent upon the agreement containing the arbitration provision*, or (2) there were a *close legal relationship*, such as alter ego, parent/subsidiary, or agency relationship." *Id.* (emphasis added).

Likewise, the Second Circuit in *Ross v. Am. Express Co.*, 547 F.3d 137, 148 (2d Cir. 2008) refused to allow American Express to enforce arbitration agreements between credit cardholders and other card issuers in a large antitrust price-fixing case because "plaintiffs do not allege that they have [] had any contact whatsoever with Amex, and the latter makes no claim to the contrary.  Amex is a complete stranger to the plaintiffs' cardholder agreements; it did not sign them, it is not mentioned in them, and it performs no function whatsoever relating to their operation." *Id.*  The *Ross* court found a "decisive contrast" between the facts presented in that case and the facts of other conspiracy cases where the allegations concern entities that are *actually* intertwined, such as parent companies and their subsidiaries, corporations and their affiliates, and auto manufacturers and their dealers.  *See id.*

Defendants' reliance on *Jones v. Genus Credit Mgmt. Corp.*, 353 F. Supp. 2d 598, 603 (D. Md. 2005) is misplaced.  In that case, Judge Motz employed the exact same analysis, and the facts of that case compelled the opposite result.  In *Genus*, the plaintiffs alleged a group of corporate entities, *acting as one*, *single provider* of "Debt Management Plans," committed fraud.  Because the plaintiffs alleged that the defendants acted as a single entity, the "intertwining" relationship between them justified permitting them to share the right to enforce the arbitration agreement with the customer-facing defendant.  *See also Genus Credit Mgmt. Corp. v. Jones*, No. 05-3028, 2006 WL 905936, at *1 (D. Md. Apr. 6, 2006).

Plaintiffs here, like the plaintiffs in *Ross* and in *Humana*, do not allege an "intertwining," legal relationship between Defendants; they allege an unlawful conspiracy that violates a federal statute (in *Ross*, and here, the Sherman Act; in *Humana*, RICO).  The price-fixing conspiracy here did not involve particular contract terms, and Defendants are separate corporate entities, separately selling titanium dioxide (albeit pursuant to an illegal common understanding).  These allegations do not empower one defendant to step into the shoes of another and enforce the other's contractual rights without consent.

Finally, Defendants attempt to bootstrap their arguments to the contracts themselves, claiming that denial of their Motion would "contradict the plain language of the agreements."  Mot., at 13.  None of the contracts' terms so state, and Defendants do not point to any contractual language for this proposition.  In fact, most of the contracts produced by Huntsman and at least one DuPont standard contract explicitly disavow Defendants' argument; those contracts include "Third Party Beneficiary" clauses that disclaim the rights of any entity other than the parties to the contract to enforce its terms.  *See* Mot., Exs. A–Y to Quinn Decl.; Ex. 3 to Daney Decl.

Defendants' argument that refusal to invoke equitable estoppel here would "effectively thwart the federal policy in favor of arbitration" is equally deficient.  Mot., at 13.  Each case cited above rejects the assertion of equitable estoppel by a stranger to the contracts, and therefore, necessarily contemplates concurrent proceedings in court and arbitration.  *See also In re Managed*

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

*Care Litig.*, 132 F. Supp. 2d 989, 995–96 (S.D. Fla. 2000), *aff'd* 285 F.3d at 975, *rev'd on other grounds*, 538 U.S. 401 ("[T]his Court is painstakingly following the FAA's mandate to arbitrate whatever the parties agree to arbitrate, even though it will lead to concurrent proceedings.").  Thus, courts and the FAA explicitly contemplate that, should Defendants' contracts be enforceable against class members with whom they actually contracted, the class members' claims against Defendants with whom they did not contract will proceed contemporaneously in federal court; such an outcome is in perfect harmony with the "federal policy in favor of arbitration."

In sum, even if Defendants have enforceable, non-waived arbitration clauses, and even if those clauses applied for the entire Class period as to some class members (and none do), dismissing the claims of every class member that signed even a single arbitration, forum selection, or jury waiver clause would *still* be unjustified.  Every class member would still have the independent right to pursue their claims in this Court against co-conspirator Defendants with whom they never contracted.

## III.    Defendants Waived Any Arbitration Rights They May Have Had Long Ago

Defendants chose to give litigation in this Court a try.  Having done so, they waived their right to move, two and a half years later, to abandon litigation and enforce their arbitration agreements.  Defendants have therefore waived any arbitration rights they may have had.  They are also barred under laches and other equitable principles.  This serves as an independent reason why the Motion, and any subsequent motion to compel arbitration, must fail.

Litigants give up the right to enforce an arbitration clause by "substantially using the litigation machinery" inconsistently with the intent to enforce the agreement, thereby prejudicing the opposing party.  *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) ("'A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'") (quoting *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586–87

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

(4th Cir. 2012) (quoting *Fraser*, 817 F.2d at 252) ("'Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.'").  That is precisely what Defendants have done here.  Throughout this litigation, they have been remiss in asserting their purported contractual rights.

### A.    Defendants Acted Inconsistently With Any Intent to Enforce Arbitration Rights.

When Defendants filed their answers in May of 2011 — over seventeen months ago — only Cristal USA, Huntsman, and Kronos asserted arbitration as a potential defense.  Since then, every Defendant has been silent with respect to arbitration.  The topic was absent from Defendants' extensive motions to dismiss and other pretrial motions, was never mentioned in discovery, was never raised by any Defendant in the Court's monthly case management teleconferences, and has never been offered for discussion in the parties' ongoing dialogue.  DuPont's very first mention of arbitration agreements, in any paper, pleading, letter, phone call, or e-mail in this case, occurred two years after the filing of the complaint, when it joined the other Defendants in asserting on page forty-nine of their fifty-page class certification opposition, that any class definition should exclude customers with arbitration agreements.  Dkt. No. 246.  Defendants have, for years, made extensive use of "litigation machinery," at substantial expense to all parties and the Court in a manner irreconcilable with arbitration.

### B.    Defendants' Delay is Prejudicial.

Courts reject untimely attempts to resort to arbitration on prejudice grounds when (1) parties litigate "substantial issues on the merits," (2) delayed enforcement of arbitration rights would result in "duplication of efforts," (3) delay results in additional delay and unnecessary expense, and (4) the delay rewards the delaying party with advantages in arbitration that it could only attain through the federal judicial system.  *Hooper v. Advance Am.*, 589 F.3d 917, 923 (8th Cir. Mo. 2009); *Wheeling*,

683 F.3d at 586; *Fraser*, 817 F.2d, at 252.  *See also Garcia v. Wachovia Corp.*, No. 11-16029, ---

F.3d ---, 2012 WL 5272942, at *4 (11th Cir. Oct. 26, 2012) (finding waiver of right to compel

arbitration in class action because years-long delay prejudiced plaintiffs who incurred expenses that

accompany litigation, not arbitration, and because defendant was advantaged by discovery

unavailable in arbitration).

 All of these factors weigh against Defendants.  First, Defendants have actively litigated this

case for years without asserting any arbitration rights they may have had.  Second, with fact

discovery closed, dispositive motions set for Spring, and a jury trial long set in stone for

September 9, 2013, permitting Defendants to invoke their purported arbitration rights now would

negate the Court and the parties' efforts to bring this case to resolution.  Third, permitting

Defendants to pursue arbitration now would result in a complete upheaval of the case schedule, since

a motion to compel arbitration — the only procedurally appropriate vehicle for testing the arbitration

clauses' validity — would require reopening substantial additional discovery and potentially trigger

an automatic right of appeal.[4]  Finally, Defendants would be unfairly rewarded for their delay.  By

sitting silently for two and a half years, Defendants have benefitted from learning Plaintiffs'

litigation strategy, Plaintiffs' view of the facts, and their experts' analyses.  They have attained this

through discovery procedures that are unavailable in arbitration — conduct that has been repeatedly

held prejudicial.  *See, e.g., Wheeling*, 683 F.3d, at 588 (4th Cir. 2012) (the extent of discovery, and,

"significantly," whether parties had "proceeded with time-consuming and expensive depositions"

supports finding prejudice).  Now, as Defendants' depositions of Plaintiffs' merits experts proceed, it

is hard to imagine any delay more disruptive.

 A legion of courts, including the Eleventh Circuit less than three weeks ago, have found

---

[4] Defendants' contention that a denial of the instant Motion would trigger an automatic right of
appeal is incorrect.  Mot., at 17.  Only a motion to compel arbitration pursuant to Section 4 of the
FAA triggers an appellate right.  *See* 9 U.S.C. § 16(a)(1)(B) ("An appeal may be taken from an order
denying a petition under section 4 of this title to order arbitration to proceed.").  Defendants have not
moved to compel arbitration against any named Plaintiff or class member.

waiver of the right to enforce arbitration agreements in analogous class actions where a party failed to raise the issue in a timely manner *before class certification*. *See, e.g., Garcia*, 2012 WL 5272942, at *4 (11th Cir. Oct. 26, 2012) (defendant, for years-long delay because plaintiffs incurred expenses that accompany litigation, not arbitration, and defendant was advantaged by discovery otherwise unavailable in arbitration); *Manasher v. NECC Telecom*, 310 Fed. Appx. 804, 806–07 (6th Cir. 2009) (defendant, for delay of one year that resulted in prejudice to plaintiff class in the form of unnecessary expense and delay); *Hooper*, 589 F.3d, at 923–24 (8th Cir. 2009) (defendant, for litigating substantive motions and attaining discovery in court that would have advantaged defendant in arbitration); *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 Fed. Appx. 466, 467–68 (3d Cir. 2007) (defendant, for sixteen-month delay because defendant "tested the sufficiency of the pleadings" through motions to dismiss, thereby prejudicing the plaintiffs); *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d 967, 978–80 (C.D. Cal. 2012) (defendant, for litigating four substantive pretrial motions in class action "without a whisper of the intent to seek an order compelling arbitration" because defendant was advantaged by substantial discovery that was otherwise unavailable in arbitral forum and plaintiffs expended considerable time, money, and effort litigating the case); *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640, 648–49 (E.D. Va. 2006) (defendant, for years-long delay where, prior to class certification but after losing summary judgment, defendant moved to compel); *Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d 621, 628–29 (N.D. W. Va. 2002) (plaintiffs, for fourteen month delay and because plaintiffs moved to compel only after suffering losses in federal court); *In re Powe*, 282 B.R. 31, 33–34 (Bankr. S.D. Ala. 2001) (defendant, for delay of two years because plaintiffs spent considerable time, effort, and money litigating the class action).  As demonstrated, each of the sources of prejudice identified in these cases applies with more force *after class certification*.

### C.     Defendants' Novel Legal Theory Lacks Merit And Does Not Excuse Their Delay.

Defendants seek to excuse their untimely attempt to arbitrate on the grounds that absent class members do not become parties until a class is certified.  For this, Defendants rely on two

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

unpublished California cases that have never been relied upon by any other court, apart from one citing the other.[5]  *See Estrella v. Freedom Fin. Network, LLC*, No. 09-3156, 2012 WL 214856, at *4 (N.D. Cal. Jan. 24, 2012) (holding defendant did not waive arbitration rights in class case because rights were not ripe until class certification); *Mora v. Harley-Davidson Credit Corp.*, No. 08-1453, 2012 WL 1189769, at *16 (E.D. Cal. Apr. 9, 2012) (same).

Apart from the numerous cases cited above, additional research makes clear that Defendants' novel legal theory is meritless.   For instance, this case is readily distinguishable from *Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 327–33 (E.D.N.Y. 2000), where the court held that a securities class action defendant did not waive its right to demand that a major shareholder (and absent class member) must arbitrate its claims because, among other things — and quite unlike this case — the defendant had not used the litigation "to disadvantage" the shareholder. In departing from the general rule, that court found that the "circumstantial aspects" of that case "contrast[ed] sharply with the principal cases" finding waiver of the right to enforce arbitration clauses in class actions.

Additional courts have rejected Defendants' argument here based on factual and procedural records virtually indistinguishable with the instant case.  In *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 320 F. Supp. 2d 1135, 1140–42 (D. Kan. 2004), the court refused to follow *Allied Sanitation* because waiver "depends on the facts of each case."   Analyzing the record before it, the court found that the defendant had waived its right to compel arbitration against the plaintiff class because it had delayed in moving to compel arbitration for nine months, and, unlike in *Allied Sanitation*, the delay prejudiced the plaintiffs, who incurred significant expenses in litigating the

---

[5] Defendants also cite: *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004), which held that prior to class certification the court could not enjoin an absent class member from pursuing independent litigation against the defendant; and *Piechur v. Redbox Automated Retail, LLC*, No. 09-984, 2010 WL 706047, at *1–4 (S.D. Ill. Feb. 24, 2010), which merely held, as this Court did at class certification, that the varying contract terms of absent class members do not defeat class certification.  These two cases have no bearing on Defendants' argument here.

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

action.  *Id.*

In *In re Wireless Tel. Servs. Antitrust Litig.*, No. 02-2637, 2004 WL 1087262, at *3–4 (S.D.N.Y. May 17, 2004), the court distinguished *Allied Sanitation* and refused to modify the class definition, as Defendants seek here.  Instead, the court ordered the defendant to properly brief its motion to compel arbitration because "[t]he plaintiffs assert that they will be able to show through discovery that the arbitration clauses in the Cingular contracts are unenforceable. They must be permitted an opportunity to make that showing."

The full weight of precedent justifies the outright rejection of Defendants' argument, but this Court need not even consider the legal merits of Defendants' argument in order to reject it.  As noted in every case concerning waiver of arbitration rights, the Court's determination of waiver and the extent of prejudice that stemmed therefrom is a discretionary one that *depends on the facts of each individual case*.  In *this* case, the facts point to inexcusable delay that resulted in actual prejudice that cannot be undone.  For this reason, this Court may, independent of the other reasons for denial presented in this brief, deny the Motion in full.  Nevertheless, the Court can and should, in addition, explicitly reject Defendants' novel legal theory that arbitration rights are not waived prior to class certification, based upon both legal and practical considerations.

## IV.     **Defendants Also Waived Their Improper Venue And Jury Waiver Arguments.**

Plaintiffs' waiver argument applies with even greater force to Defendants' attempts to enforce any valid forum selection and jury waiver agreements they may have — agreements which Defendants cursorily raised for the first time at class certification.  The waiver analysis that applies to arbitration agreements applies equally to other contract terms; as Defendants repeatedly note, this analysis applies to all contract terms because it is a fundamental contract law defense.  In addition, insofar as Defendants attempt to invoke forum selection clauses, the Federal Rules unambiguously require that motions challenging venue be filed before any responsive pleading.  The only way to enforce a forum selection clause is to move to dismiss for improper venue under Rule 12(b)(3).  *See, e.g., Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  Because Defendants failed

-22-

to move to dismiss under Rule 12(b)(3), they have waived their venue argument. *See TFT-LCD Antitrust Lit.*, 2011 WL 1753748, at *7 (relying on plain text of Rule 12 in finding waiver of improper venue claim in antitrust class action where defendant sought to enforce forum selection clause after filing its first responsive pleading); *Steward v. Up North Plastics, Inc.*, 177 F. Supp. 2d 953 (D. Minn. 2001) (same).

Moreover, even if Defendants had not waived their rights to argue improper venue, forum selection clauses are inapplicable in antitrust class actions because antitrust claims do not arise from the purchase agreements. *See Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 91 (2d Cir. 2009) (holding forum selection clause in licensing contract did not encompass related unfair competition claims, which "may begin in court without any reference to the contract") (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007)); *Dearborn Indus. Mfg. Co., Ltd. v. Soudronic Finanz AG*, No. 95-4414, 1997 WL 156589, at *5 (N.D. Ill. Apr. 1, 1997) (denying motion to dismiss unfair competition claim despite forum selection clause, because the "tortious acts" allegedly underlying that claim "could as easily have taken place between strangers as between parties to the . . . Agreement"); *General Envtl. Science Corp. v. Horsfall*, 753 F. Supp. 664, 667–68 (N.D. Ohio 1990) (holding suit for RICO, statutory, and common law claims was broader than forum selection clause, so plaintiff's choice of forum would not be disturbed). Moreover, several of the contracts produced by Defendants set forums outside the United States as the exclusive forum for disputes; the strong public policy in favor of adjudicating antitrust claim in the United States forecloses Defendants' attempt to enforce these provisions. *See Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselischaft MbH*, 699 F. Supp. 669, 670–71 (N.D. Ill. 1988) (holding forum selection clause did not require dismissal of Sherman Act claims, which extended beyond contract and implicated strong public interest in having antitrust claims brought by Americans litigated in United States, instead of abroad). Simply put, forum selection clauses have no bearing on where antitrust cases are venued.

The foregoing arguments apply equally, as Defendants point out in their Motion, to jury

waiver clauses.  Not one Defendant raised the issue of jury waivers until class certification, and the clauses themselves do not encompass an antitrust action for the same reason that forum selection clauses do not apply — antitrust claims do not arise out of the contract and therefore are not governed, either in terms of venue or the right to a jury trial, by the contract's terms.  Moreover, although Defendants pay relative short shrift to their jury waiver claims, the implication of their Motion is quite significant.  Without legal support, long after having waived their claims, and based on a thin factual record, Defendants seek to strip absent class members of their Seventh Amendment right to a trial by jury.  Much more is required before the constitutional rights of litigants may be denied.

**V.     Defendants' Motion Improperly Sidesteps Valid Contract Defenses By Failing to Provide a Complete Factual Record.**

Defendants submitted "examples" of the contracts at issue in their Motion.  As previously discussed, the record is wholly insufficient to grant Defendants *any* relief based on these contracts, much less the broad relief they affirmatively seek.  An array of defenses applies to the contracts at issue, and presumably to the contracts Defendants did not produce.  The Court should reject Defendants' Motion because, without more, no assessment of the validity of these contracts, (which, as discussed above and in the accompanying Declaration, are rife with ambiguities), is possible.

By failing to produce each contract subject to the Motion and a complete roster of the class members affected, which Defendants claim, are "readily identifiable," Defendants have deprived Plaintiffs and the Court of the opportunity to examine the contracts to determine whether they are, in fact, valid and enforceable.  Without knowing their terms, it is impossible to know whether they are the types of contracts that courts nationwide routinely hold invalid and unenforceable, for myriad reasons.  *See, e.g., Noohi v. Toll Bros., Inc.*, No. 11-00585, 2012 WL 273891, at *6–7 (D. Md. Jan. 30, 2012) (Bennett, J.) (holding unenforceable "one-sided" and "onerous" arbitration agreements). And even in Defendants' examples, there are contracts that contradict each other concerning the proper forum for dispute resolution.  Others are *not even purchase agreements* and therefore have

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

nothing to do with the purchase of titanium dioxide products.  *See, e.g.*, Mot., Ex. 5 to Daney Decl. (concerning electronic inventory service); Ex. 5 to Clover Decl. (same).  Defendants' Motion also purports to apply to "potentially more than one hundred" class members who are members of the Guild CPO even though they *never signed the contracts at issue*.  Moreover, Defendants seek to dismiss the claims of class members who have valid claims under purchase agreements without arbitration clauses because later in the Class Period, they allegedly signed valid arbitration clauses, or vice versa.

Plaintiffs are entitled to a full production of these contracts and the identity of each affected class member so they may investigate the legal sufficiency of the contracts at issue and address the numerous legal infirmities already identified above.  Plaintiffs must have the opportunity to assert the multitude of defenses that may and do apply to these contracts in response to a proper motion to compel arbitration or to enforce the other applicable clauses where appropriate.

Finally, if the Court does not deny Defendants' Motion in its entirety, Plaintiffs respectfully request that the Court require Defendants to submit an Omnibus Motion to Compel Arbitration and Enforce Other Contractual Provisions after the close of the opt-out period, just as the court in the *LCD* antitrust litigation did when confronted with an identical situation, so the final composition of the Class may be known prior to briefing.[6]  *See TFT-LCD Antitrust Lit.*, 2011 WL 1753748, at *6.

---

[6] The Court could also create a subclass that includes "all members of the Class who have agreements relating to the purchase of TiO2 with one of more of the Defendants or Tronox containing (a) mandatory arbitration clauses or (b) clauses purporting to require litigation in alternate fora and/or (c) waiving the right to a jury trial."  Any class notice ordered by the Court would therefore adequately protect the rights of all class members by providing notice to all subclass members of Defendants' (purported) intention to exclude them from the class via motion to be filed on a date identified in the notice.

Dated: November 13, 2012

Respectfully submitted,

By:   /s/ C. Andrew Dirksen
      C. Andrew Dirksen

By:   /s/ Eric B. Fastiff
      Eric B. Fastiff

GOLD BENNETT CERA & SIDENER, LLP
Solomon B. Cera (*Pro hac vice*)
C. Andrew Dirksen (*Pro hac vice*)
595 Market Street, Suite 2300
San Francisco, California 94105
scera@gbcslaw.com
cdirksen@gbcslaw.com

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Eric B. Fastiff (*Pro hac vice*)
Daniel M. Hutchinson (*Pro hac vice*)
Eduardo E. Santacana (*Pro hac vice*)
275 Battery Street, 29th floor
San Francisco, California 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
efastiff@lchb.com
dhutchinson@lchb.com
esantacana@lchb.com

*Co-Lead Counsel*

*Co-Lead Counsel*

By:   /s/ Joseph R. Saveri
      Joseph R. Saveri

By:   /s/ Robert B. Levin
      Robert B. Levin

SAVERI LAW FIRM
Joseph R. Saveri (*Pro hac vice*)
Lisa L. Leebove (*Pro hac vice*)
255 California St., Ste. 450
San Francisco, CA 94111
(415) 500-6800
jsaveri@saverilawfirm.com
lleebove@saverilawfirm.com

SHAPIRO SHER GUINOT & SANDLER
Paul M. Sandler
Robert B. Levin
36 South Charles Street, Suite 2000
Baltimore, Maryland 21201
Tel: (410) 385-0202
Fax: (410) 539-7611
pms@shapirosher.com
rbl@shapirosher.com

*Co-Lead Counsel*

*Plaintiffs' Liaison Counsel*

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION

BERGER & MONTAGUE, P.C.
Eric L. Cramer (*Pro hac vice*)
Michael C. Dell'Angelo (*Pro hac vice*)
Daniel Walker (*Pro hac vice*)
Matthew P. McCahill (*Pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
dwalker@bm.net
mmccahill@bm.net

GRANT & EISENHOFER, P.A.
Linda Nussbaum (*Pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
lnussbaum@gelaw.com

*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 13th day of November, 2012, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system.  The Court or the CM/ECF system

will send notification of such filings to all CM/ECF participants.

/s/Robert B. Levin                          
Robert B. Levin

PLAINTIFFS' OPPOSITION TO
MOTION TO AMEND CLASS DEFINITION