WOMBLE
CARLYLE
SANDRIDGE
& RICE

A PROFESSIONAL LIMITED
LIABILITY COMPANY

250 West Pratt Street
Suite 1300
Baltimore, MD 21201

Telephone: (410) 545-5800
Fax: (410) 545-5801
www.wcsr.com

David B. Hamilton
Direct Dial: 410-545-5850
Direct Fax: 410-694-0871
E-mail: David.Hamilton@wcsr.com

January 9, 2013

**VIA CM/ECF ONLY**

The Honorable Richard D. Bennett
United States District Court for the District of Maryland
101 West Lombard Street, Chambers 5D
Garmatz Federal Court House
Baltimore, Maryland 21201

      RE:   *In re Titanium Dioxide Antitrust Litigation,* No. 10-cv-00318 (RDB) (D. Md.)

Dear Judge Bennett:

      I write on behalf of all Defendants to request that the Court address three issues in the upcoming status conference scheduled with the Court on January 15, 2013 at 5:00 p.m. First, Defendants object to the deposition errata sheet submitted by one of Plaintiffs' proposed expert witnesses, Dr. Bruce W. Hamilton, as improper under Federal Rule of Civil Procedure 30(e) because the changes materially alter and contradict his deposition testimony. Having conferred with Plaintiffs on this issue, Defendants now ask the Court to strike the errata sheet. Second, Plaintiffs' supplemental responses to Defendants' contention interrogatories continue to be deficient and Defendants request that the Court order Plaintiffs to supply full and complete responses, as more fully described below. Third, Defendants believe it is in the Court's and the parties' interest to clarify the page limits for the upcoming summary judgment briefs. Having attempted to meet and confer with Plaintiffs on that issue, Defendants now seek guidance from the Court.

      Finally, the Parties have reached an agreement to modify the scheduling order to allow Plaintiffs an additional three weeks to respond to Defendants' expert reports. The proposed schedule does not affect the summary judgment hearing or the trial. Defendants understand that Plaintiffs will submit the proposed schedule modification to the Court.

**I.**    **<u>Improper Errata Sheet by Plaintiffs' Expert Witness, Dr. Hamilton:</u>**

      Defendants object to the errata sheet, as proposed, because it materially alters and contradicts Dr. Hamilton's prior, sworn deposition testimony. Because Dr. Hamilton's proposed errata are improper under Federal Rule of Civil Procedure 30(e), Defendants request that they be

stricken from the record, and that Plaintiffs be instructed to re-submit new errata that comply with Rule 30(e).

Dr. Hamilton was deposed on November 5, 2012. On November 20, 2012, Dr. Hamilton submitted an errata sheet containing 15 changes to his deposition testimony (the "Errata Sheet"). See Errata Sheet, Exhibit 1. Since receipt of the Errata Sheet, the parties have conferred by letter regarding Defendants' concerns about the Errata Sheet. Defendants asked Plaintiffs to withdraw the Errata Sheet, and to submit a corrected sheet in its place; Plaintiffs declined to do so. In light of that response, Defendants now seek the assistance of the Court to resolve this matter.

Under Federal Rule of Civil Procedure 30(e), a deponent may submit a signed statement listing errata to a deposition transcript, which must include "the changes and the reasons for making them". See Fed. R. Civ. P. 30(e). Although Rule 30(e) permits "changes in form or substance", id., courts in this district follow a "growing minority" of courts that prohibit deponents from using Rule 30(e) as a vehicle to materially alter or contradict prior deposition testimony. See Harden v. Wicomico Cnty., 263 F.R.D. 304, 305, 309 (D. Md. 2009) (striking Rule 30(e) errata where the deponent sought to materially change testimony upon reviewing certain evidence after his deposition); Wyeth v. Lupin Ltd., 252 F.R.D. 295, 296-97 (D. Md. 2008) (holding that a deponent could not "change testimony in a material way, simply because on review, [he or she] does not like the answer as given").[1] As explained in Greenway v. Int'l Paper Co.:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported 'yes' but I said 'no,' or a formal error, i.e., he reported the name to be 'Lawrence Smith' but the proper name is 'Laurence Smith,' then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

144 F.R.D. 322, 325 (W.D. La. 1992), cited with approval in Harden, 263 F.R.D. at 308; Wyeth, 252 F.R.D. at 296; see also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225-26 (9th Cir. 2005) ("Rule 30(e) is to be used for corrective, and not contradictory,

---

[1] Plaintiffs have suggested that both Harden and Wyeth can be distinguished. That is wrong. Both cases remain good law in this district, and are applicable here. Any attempt to characterize as dicta Harden's holding that Rule 30(e) does not permit substantive changes, or to distinguish Wyeth as applicable only to 30(b)(6) deponents is unavailing. The Court in Harden struck errata as contradictory and as unsupported by sufficient reason, Harden, 263 F.R.D. at 308-09, while Wyeth's reasoning that allowing deponents to materially alter deposition answers would disincentivize 30(b)(6) deponents from preparing for depositions applies equally to expert deponents, see infra at 3.

changes."); Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty., 330 F.3d 1275, 1282 (10th Cir. 2003).[2]

With only a few exceptions,[3] Dr. Hamilton's errata are improper under these principles. For example, at his deposition Dr. Hamilton was asked, "other than the fact that Kronos was a member of CEFIC, do you have any evidence to suggest that Kronos was [a] member of the cartel?" Hamilton Dep. 326:17-19, Exhibit 2. In response, Dr. Hamilton unambiguously answered that Kronos's CEFIC membership was the only evidence that he had to suggest that Kronos was a member of the alleged cartel. Id. at 327:4-6 (Answer: "That's all." Question: "That's it?", Answer: "Yes."). Despite the simplicity and apparent clarity of those questions and answers – and despite the fact that Plaintiffs' counsel chose not to return to clarify or modify those responses during their own questioning of the witness at the end of the deposition – Dr. Hamilton is now seeking, after the close of the deposition, to contradict and change his previous answers in a fundamental way: by changing his response "Yes" to "No", and his response "That's all" to "No". See Exhibit 1 at 2-4. That kind of subsequent re-writing of a substantive response in the transcript is impermissible.[4]

Particularly where, as here, Dr. Hamilton is an expert witness, this Court should follow this district's rule for two reasons. First, expert witnesses have an obligation to arrive at their depositions prepared to testify. See Bhan v. NME Hosps. Inc., 929 F.2d 1404, 1415 (9th Cir. 1991) (affirming sanctions because an expert witness arrived at a deposition unprepared to testify). If expert witnesses can liberally change their deposition testimony, they will have little incentive to prepare adequately, frustrating the purpose of their deposition – a comprehensive examination of the expert's opinion. Cf. Wyeth, 252 F.R.D. at 297 (striking a 30(b)(6) deponent's substantive errata to avoid "discourag[ing] the careful preparation of 30(b)(6) witnesses"). Second, "[r]ather than advancing the pursuit of truth in discovery, a policy of liberal 'amendments' and 'corrections' would encourage and intensify lawyer wordsmithing and parsing." Wyeth, 252 F.R.D. at 297. Both policy rationales apply here.

---

[2] Some courts, by contrast, adopt a "permissive approach" under Rule 30(e), allowing deponents to make changes to their sworn deposition testimony without limitation. See, e.g., Reilly v. TXU Corp., 230 F.R.D. 486, 487, 491 (N.D. Tex. 2005); Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997). Neither the Fourth Circuit nor any decision in this district has adopted this approach.

[3] Defendants do not object to Dr. Hamilton's errata at Hamilton Dep. 118:3, 134:14, 341:10 and 341:12. See Errata Sheet at 1, 4-5, Exhibit 1.

[4] Additionally, the reasons that Dr. Hamilton provides for his changes are unavailing. See Harden, 263 F.R.D. at 307 (rejecting conclusory reasons for material changes as insufficient). If Dr. Hamilton was "confused by" or "misunderstood" a question, he could have asked for clarification, as he frequently did during his deposition, see, e.g., Exhibit 2, Hamilton Dep. 13:20-21, 218:22, 221:1-11, or class counsel could have clarified his responses during cross examination, see Wyeth, 252 F.R.D. at 297 ("[Counsel] had the opportunity to cross examine [the deponent] to complete the record or clear up now asserted ambiguities."). Similarly, if Dr. Hamilton was "fatigue[d]", he could have sought a break from questioning. See Exhibit 2, Hamilton Dep. 12:22-13:4.

Accordingly, Defendants respectfully request that the Court strike Dr. Hamilton's errata as improper under Rule 30(e), and direct them to re-submit revised errata that comply with Rule 30(e). If the Court is not inclined to strike Dr. Hamilton's errata, then Defendants request that the Court permit Defendants additional time at Dr. Hamilton's anticipated rebuttal deposition, to examine fully the bases for his Errata Sheet.[5]

## II. Plaintiffs' Insufficient Responses to Defendants' Contention Interrogatories:

During the status conferences with the Court on October 25, 2012 and November 26, 2012, Defendants raised the issue of Plaintiffs' insufficient responses to Defendants' Contention Interrogatories. The Court made it clear during the November 26th hearing that it expected Plaintiffs to answer the Contention Interrogatories to respond to the substance of the requests. The Court further explained that it expected Plaintiffs to state specifically whether they are relying on circumstantial or direct evidence, and to identify the particular communications they believe evidence—directly or indirectly—the alleged agreement that forms the basis of Plaintiffs' claims. The Parties subsequently agreed that Plaintiffs would "supplement" their responses to follow the Court's guidance on December 14, 2012.

After three attempts at responding to Defendants' contention interrogatories served on Plaintiffs at the close of discovery in August 2012, Plaintiffs have yet to comply with the Court's prior guidance by informing Defendants what evidence the Plaintiffs have showing that any of the Defendants' employees ever met with or talked to employees of the other Defendants about coordinating prices for titanium dioxide during the Class Period. Instead, Plaintiffs continue to try to obscure their lack of direct evidence of a conspiracy by (i) submitting a massive index of "competitor contacts" among defendants without identifying what was allegedly improper about those communications and meetings; and (ii) submitting lists of alleged participants in the conspiracy without detailing what any of the alleged conspirators actually did.

As this Court has already observed at the November 26, 2012 telephone hearing, Defendants are entitled to know whether Plaintiffs claim to have direct evidence of a conspiracy. Thus, Plaintiffs must identify that direct evidence (e.g., who said what, when and to whom and how that information was used in furtherance of the conspiracy) or state that they have no such direct evidence.[6] After receiving that guidance from the Court, the Plaintiffs submitted revised responses,[7] but did not cure the deficiencies of their prior responses. Plaintiffs should be

---

[5] If this Court is not inclined to strike Dr. Hamilton's errata, Defendants reserve the right to move to preclude Plaintiffs from relying on his errata to create an issue of fact at the summary judgment stage. See, e.g., In re Family Dollar FLSA Litig., 637 F.3d 508, 513 (4th Cir. 2011).

[6] It is well settled that Defendants are entitled to pose these types of contention interrogatories and to secure specific information about what Plaintiffs contend is the factual basis for the alleged conspiracy. See In re Rail Freight Fuel Surcharge Antitrust Litigation, MDL Dkt. No. 1869 (Misc. No. 07-489 (PLF/AK/JMF (D.D.C. 2011); In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 326 (N.D. Ill. 2005); In re Residential Doors Antitrust Litig., 900 F. Supp. 749, 753 (E.D. Pa. 1995); In re Potash Antitrust Litig., 161 F.R.D. 405, 409 & n.5 (D. Minn. 1995); In re Shopping Carts Antitrust Litig., 95 F.R.D. 299, 307 (S.D.N.Y. 1982); In re Folding Carton Antitrust Litig., 76 F.R.D. 417 (N.D. Ill. 1977).

required to supply that answer and Defendants seek an order compelling Plaintiffs to respond accordingly.

As detailed below, Plaintiffs' interrogatory answers are evasive and wholly deficient for two primary reasons. First, the methodology by which Plaintiff seeks to answer the interrogatory, by reference to many hundreds of documents, deposition excerpts, expert reports and the like, is improper. Second, the content of Plaintiffs' answers is insufficient because they do not even purport to address the specific questions posed.

### A. Plaintiffs' Improper Methodology: Plaintiffs Cannot Respond to These Contention Interrogatories by Reference to Documents

In response to virtually all of the interrogatories at issue, the Plaintiffs refer Defendants to lists of documents in the specific answer and also reference a separate 165 page Appendix A - "Competitor Contacts Chronology" attached to this letter as Exhibit 7.[8] In the latest iteration of Plaintiffs' responses, the "Competitor Contacts Chronology" grew from 96 pages to 165 pages, and has an additional field called "additional evidence" but, for the reasons stated below, is now simply a much longer, non-responsive document. The documents referenced in the interrogatory responses and appendix consist of deposition exhibits, other material produced in discovery, deposition excerpts, and expert reports.

Plaintiffs cannot employ Federal Rule of Civil Procedure 33(d)'s option to produce or reference responsive business records in lieu of answering the interrogatories because it is improper to use Rule 33(d) to answer contention interrogatories of the type posed here. These contention interrogatories require the Plaintiff to state the facts regarding the allegations in their complaint. For example, Huntsman's Interrogatory No. 2 specifically asks for the facts underlying their contention that Jim Fisher/IBMA provided confidential or non-public information to any employee of HILLC. Kronos's Interrogatory No. 2 seeks identical information for Kronos. As stated by the court in In re Savitt/Adler Litig., 176 F.R.D. 44 (N.D.N.Y. 1997), Rule 33(d) should not be employed to answer such questions because the interrogatory sought the contended facts, which must be "specifically and fully stated" and did

---

[7] To expedite the Court's review of Plaintiffs' objections and answers, Defendants have attached Plaintiffs' Revised Objections and Answers to Defendants' Contention Interrogatories, which were designated as "Confidential" under the Stipulated Protective Order. See Exhibit 3 – Plaintiffs' Revised Responses and Objections to Defendant Huntsman International LLC's Second Set of Interrogatories to Plaintiffs; Exhibit 4 – Plaintiffs' Revised Responses and Objections to Defendant Kronos Worldwide Inc.'s Second Set of Interrogatories to Plaintiffs; Exhibit 5 – Plaintiffs' Revised Responses and Objections to Defendant Millennium Inorganic Chemicals Inc.'s Second Set of Interrogatories to Plaintiffs; and Exhibit 6 – Plaintiffs' Revised Responses and Objections to Defendant E.I. DuPont De Nemours & Co. Inc.'s Second Set of Interrogatories to Plaintiffs.

[8] Plaintiffs attached an identical copy of the "Competitor Contacts Chronology - Appendix A" to each of its responses to Defendants' contention interrogatories. For the Court's convenience, Defendants attach only one copy of Appendix A to this letter. See Exhibit 7.

not seek the "sources of those facts or evidence which supports those facts." Id. at 49.[9]  Thus, Plaintiffs must answer the interrogatories with "assertions of fact, or the admission that no such facts exist" independently from references to other documents.  Id. at 50.  See also Smith v. Logansport Community School Corp., 139 F.R.D. 637, 650 (N.D. Ind. 1991) (noting that "Defendant . . . is entitled to discover the factual basis for plaintiffs' claims through the use of interrogatories, without being referred to the plaintiffs' deposition testimony, other discovery materials, or the pleadings.").

     A related deficiency of Plaintiffs' responses is that they simply do not come close to answering the questions posed. Rule 33(d) is used only where the burden of finding the information sought is "substantially equivalent" to both parties.  Here, it is impossible to tell from examining any of the documents what the plaintiffs contend is the allegedly "confidential or non-public material" shared in the document, much less how such information was used.  In rejecting the use of Rule 33(d) to respond to contention interrogatories, one court has noted that "[o]nly plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants."  S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 577 n.5 (M.D. N.C. 2002).  Simply put, "documents themselves rarely, if ever, reveal contentions of fact or law. A party reveals its contentions."  Id. at 576.

     The analysis of the court in In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 326 (N.D. Ill. 2005), rejects the misuse of Rule 33(d) that Plaintiffs attempt here.  In that case, the interrogatory directed the responding defendant to state whether certain anticompetitive communications regarding production of sulfuric acid occurred and, if they did, to state the identities of the parties having such communications, the date and location of the communication, who initiated it, and whether an agreement or contract was entered into as a result of the communication and the terms of such agreement.  Id. at 325.  In response, the defendant referred the plaintiff to documents that it would be producing.  However, the court found that reference to "a massive amount of documents" expecting the inquiring party to "sift through them to find the answers" to the interrogatory was not permitted, particularly where "[i]t is anything but clear that the answer to the interrogatories could be obtained "simply from reviewing cold records."  Id. at 326.  Moreover, there was nothing to show that "there is an equivalency of burdens or that the specification was in sufficient detail to permit the location and identification with the same degree of effort and efficiency that Koch could bring to the task." Id.

     An analysis of some of the documents referenced in Plaintiffs' interrogatory answers highlights the problem that the documents simply do not reveal the answers to the interrogatory questions.  For example, following up on Plaintiffs' "yes" answer to Interrogatory Number 1,

---

[9] The interrogatories propounded by DuPont and Millennium also explicitly seek the "facts" underlying Plaintiffs' various allegations, although they also seek the supporting evidence for those alleged facts.  The interrogatories propounded by Huntsman and Kronos, which are identical, asked specific factual questions, such as who shared confidential or non-public information, with whom, when and for what purpose was that information used.

The Honorable Richard D. Bennett
January 9, 2013
Page 7

which asks whether plaintiffs contend that "Jim Fisher/IBMA provided confidential or non-public information to any employee of HILLC," Interrogatory Number 2 asks:

    a.    Which HIILC employee(s) do you contend received such allegedly confidential or non-public information [from Jim Fisher/IBMA]?
    b.    When was such allegedly confidential or non-public information provided?
    c.    What allegedly confidential or non-public information was provided?
    d.    How did HILLC act upon the information that you contend was allegedly confidential or nonpublic?

See Plaintiffs' Revised Responses to Huntsman International LLC's 2nd Set of Interrogatories, Ex. 3 at 4; see also Plaintiffs' Revised Responses to Kronos Worldwide, Inc.'s 2nd Set of Interrogatories, Ex. 4 at 5-6.

In response to subpart (a), Plaintiffs list 20 HILLC employees, many of whom have not been deposed, were not document custodians, and whose names have not surfaced in this litigation until Plaintiffs' interrogatory responses. To determine what "allegedly confidential or non-public information" these employees allegedly received, Defendants are expected to analyze the enormous lists of documents recited in response to this interrogatory and in the Appendix A that is incorporated in the answer. Putting aside the obvious burden of that endeavor, the real problem is that it is futile. First, it is not clear that every employee listed in subpart (a) is referenced in the many hundreds of documents. Indeed, of the 20 names in this interrogatory, only 4 are listed in Exhibit 7.[10]

Second, Plaintiffs answer parts (b) and (c) of this interrogatory by referencing numerous documents, including communications between HILLC employees and Jim Fisher. However, Defendants cannot determine from looking at a document referenced in Plaintiffs' answers whether, and to what extent, the information shared in the information is contended to be confidential or non-public information. An examination of some of these documents reveals that they do not include any information regarding the titanium dioxide industry, much less information that could be considered confidential or non-public. For example, Exhibit 615 is simply an email to Mohammed Maiter forwarding Jim Fisher's contact information.[11]

Other documents indexed by Plaintiffs establish that nothing of a confidential or non-public nature was shared in the meeting. For example, on page 55 of Exhibit 7, Plaintiffs list a June 2, 2004 meeting of the Supervisory Committee of Louisiana Pigment Company (a joint venture between Kronos and Huntsman). The minutes to that meeting (HILLC000597078-082[12])

---

[10] This issue is pervasive throughout Plaintiffs' answers. For example, in response to Huntsman's interrogatory 4(b), which asks "[w]hich HILLC employee do you contend received such allegedly confidential or non-public information [from an employee of a Defendant or alleged Co-Conspirator]?" Plaintiffs list 59 persons. Exhibit 3, at 13. Most of those names appear nowhere else in Plaintiffs' responses, including in Plaintiffs' Appendix A. Exhibit 7. See also Exhibit 4, at 12.

[11] The email from Maiter is attached as Exhibit 8.

[12] The June 2, 2004 Supervisory Committee meeting minutes are attached as Exhibit 9.

are also referenced and establish that the only topics discussed at that meeting were issues relating to the operation of LPC. Thus, it is unclear whether Plaintiffs contend that (i) the discussions reflected in the minutes involve issues that were "confidential or non-public information" shared in furtherance of the conspiracy; (ii) other "confidential or non-public" information was shared outside of the meeting, or otherwise was not reflected in the minutes; or (iii) if Plaintiffs admit that no "confidential or non-public" information was shared at this particular meeting. This is just one of numerous examples where the information provided does not answer the questions posed.

Further, Plaintiffs have failed to answer part (d) of Huntsman's interrogatory—and the similar interrogatories of other Defendants—which requests that Plaintiffs identify how Defendants acted upon any allegedly non-public information exchanged. Even if Plaintiffs' "Competitor Contacts Chronology" identified non-public information exchanged—which it does not—such information is irrelevant unless it was used by Defendants in furtherance of the alleged conspiracy. The chronology does not even purport to explain how the Defendants acted on the allegedly non-public information.

Moreover, the addition of the "additional evidence" field in the "Competitor Contacts Chronology" provides no assistance in determining what facts underlie Plaintiffs' contentions. For the vast majority of documents, this field is empty. Where it is provided, it does not, as it must, explain what about the communication involved the sharing of "confidential or non-public information" but instead merely provides references to deposition testimony about the communication or other related documents. As a result, Plaintiffs' "amended" answers do nothing to correct the same deficiencies that existed prior to the last hearing before the Court: the "chronology" remains a long list of what appears to be legitimate industry activity without any explanation as to what, if anything, was provide an answer to Defendants' interrogatories.

Similarly, Millennium's Interrogatory No. 21 states "For each [Millennium employee you contend knowingly participated in the alleged conspiracy to fix or stabilize prices], Identify and describe all facts (whether in the discovery record or not), including Documents (by bates number if produced by a party) and deposition testimony (by witness and transcript page number), that you contend support your contention." Plaintiffs' response includes a list of hundreds of documents, a reference to 18 deposition transcripts without specific page numbers (as called for in the interrogatory), a list of *examples* of overt acts by Millennium employees in furtherance of the common course of conduct and agreements," and a reference to their "Competitor Contacts Chronology." Plaintiffs' response also purports to incorporate "any other documents and deposition exhibits that pertain to this issue which are cited within plaintiffs' other discovery response, plaintiffs' expert reports, and/or that were made exhibits and the depositions of defendants' current and former employees." Plaintiffs' wholesale reference to every document marked in a deposition, entire transcripts, and entire expert reports are tantamount to no response at all. If Plaintiffs' only support for the knowing participation in a conspiracy by Millennium employees is the information in their "examples" and in the chronology (Exhibit 7), Plaintiffs should so state or otherwise provide a complete response to the interrogatory.

Plaintiffs' responses to DuPont's contention interrogatories are similarly deficient. For example, DuPont's Interrogatory No. 13(f) asks Plaintiffs to "state how each Entity or Person to the alleged unlawful agreement monitored and enforced such agreement". Plaintiffs' revised response, which does nothing but expand the chronology, does not answer the specific question that DuPont's interrogatory poses. The "Competitor Contacts Chronology" – which Plaintiffs reference in response to numerous interrogatories, regardless of the interrogatory posed – does nothing more than list a series of proper meetings and communications among Defendants, without specifically discussing monitoring or enforcement mechanisms. See Exhibit 7.

### B.   Plaintiffs Cannot Evade the Questions Asked by Answering Different Questions of Their Own Choosing

At base, there is a fundamental disconnection between the questions Defendants are asking and the question Plaintiffs are choosing to answer. The Defendants' interrogatories seek specific information about what Plaintiffs contend happened and what evidence they have of that conduct and its consequences. To that end, Defendants' questions ask what "confidential or non-public information" was shared among the alleged co-conspirators, when it was shared, who received it, and how it was used.

Plaintiffs' responses, in contrast, merely catalog all, or nearly all, the meetings and communications they can find among the alleged co-conspirators on any subject. For example, in response to Huntsman's interrogatory Number 2, which asks what specific "confidential or non-public" information was shared with HILLC employees by Jim Fisher, Plaintiffs hedge as to whether the documents they list actually involve the sharing of allegedly confidential or non-public information, characterizing them only as "[d]ocuments produced by HILLC pertaining to contacts with Jim Fisher." See Exhibit 3, at 5 (emphasis supplied). Similarly, Plaintiffs state that "Fisher attended many trade conferences at which he had opportunities to meet with HILLC executives" and then lists four trade conferences. Id. at 8 (emphasis supplied).

This hedging language appears throughout Plaintiffs' interrogatory responses. See, e.g., id. at 16 ("Plaintiffs contend that [meetings of the Supervisory Committee of the Louisiana Pigment Company] provided an opportunity for executives of the two companies to exchange confidential information in furtherance of the conspiracy to raise prices in the titanium dioxide industry."); id. at 17 (listing contacts between HILLC employees and employees of other defendants which "constitute evidence of opportunities to exchange and exchanges of confidential information and other evidence of the cartel, price fixing and other anticompetitive activity Plaintiffs allege."); Exhibit 5 ("Millennium personnel took part in meetings and communications in which the opportunity to share confidential information arose as demonstrated in the following documents" and then listing many hundreds of deposition exhibits) (emphasis supplied).

At best, this information would be relevant to the question "if a price fixing conspiracy did exist, when might have communications in furtherance of that conspiracy have occurred." But that is not the question posed and Defendants are entitled to know what evidence the Plaintiffs believe they have adduced to support the allegations in their Complaint that "[t]he

alleged conspiracy was facilitated by . . . . secret discussions and agreements among Defendants concerning capacity, costs and raw materials, and by exchanges of nonpublic, commercially sensitive information between and among Defendants and their agents and co-conspirators." Amended Complaint (Dkt. 51 at ¶ 2). If all the Plaintiffs have is evidence that Defendants had mere "opportunities" to have such alleged secret discussions and agreements, they should plainly say so.

Defendants respectfully ask the Court to order Plaintiffs to answer the Contention Interrogatories by providing the information requested in the manner and format set forth by the respective interrogatories or to state that they have no such direct evidence of alleged communications.

### III.  Page Limits for Motion for Summary Judgment Deadline:

Under the local rules, each of the four Defendants would be entitled to file a summary judgment brief of up to 50 pages, for a total of 200 pages. See Local Rule 105.3. Defendants intend to present the salient legal issues and facts to the Court in as concise a manner as possible – using less than the total number of pages permissible under the Local Rule – but in light of the breadth and amorphous nature of Plaintiffs' allegations, believe that significant briefing will be warranted. Defendants anticipate that they will file one joint brief, which addresses legal issues common to all Defendants, with each party reserving the right to file its own individual brief not to duplicate issues in the joint brief, but to address Plaintiffs' conspiracy allegations that are specific to each defendant. In an attempt to reach an agreement with the Plaintiffs on the collective number of pages of summary judgment briefing, Defendants offered to limit the summary judgment briefing to 175 pages, rather than the 200 Defendants may use under the Local Rules. Under Defendants' proposal, Plaintiffs would be entitled to the same number of pages as the opening brief for their opposition to each brief and Defendants' reply briefs would be limited to 100 pages. Despite Defendants' attempts to be reasonable with respect to the schedule modification discussed above, Plaintiffs rejected Defendants' proposal. In the absence of an agreement, Defendants now seek clarity from the Court that they will be permitted to submit up to five separate summary judgment briefs not to exceed 175 pages of total summary judgment briefing, and 100 pages for reply briefs.

Respectfully submitted,

/s/

David B. Hamilton

DBH:nlw
Attachments (Exhibits 1-9)
cc:   All counsel of record (via CM/ECF)