

250 West Pratt Street
Suite 1300
Baltimore, MD 21201

Telephone: (410) 545-5800
Fax: (410) 545-5801
www.wcsr.com

David B. Hamilton
Direct Dial: 410-545-5850
Direct Fax: 410-694-0871
E-mail: David.Hamilton@wcsr.com

February 20, 2013

<u>**VIA CM/ECF ONLY**</u>

Honorable Richard D. Bennett
United States District Court
District of Maryland
Garmatz Federal Courthouse
101 West Lombard Street, 5D
Baltimore, Maryland 21201

RE:  *In re Titanium Dioxide Antitrust Litigation*, Case No: 1:10-CV-00318-RDB

Dear Judge Bennett:

     Pursuant to the Court's February 11, 2013 status conference and accompanying letter order (Dkt. 388), Defendants seek the Court's intervention in compelling answers to Defendants' contention interrogatories.[1]  Defendants have reviewed the Plaintiffs' fourth version of their answers to each Defendant's contention interrogatories ("Fourth Revised Responses") and have conferred with Plaintiffs.[2]  While Defendants recognize that Plaintiffs made some effort to provide responsive information on certain sub-parts of the Interrogatories, the Fourth Revised Responses remain deficient in several respects, and the parties are unable to resolve their differences.  Thus, the Defendants submit this letter

---

[1] The Contention Interrogatories at issue are: (1) Interrogatory Nos. 2, 4, 6, 8, 10 and 12 from Huntsman International LLC's Second Set of Interrogatories to Plaintiffs; (2) Interrogatory Nos. 2, 4, 6, 8, 10 and 12 from Kronos Worldwide, Inc.'s Second Set of Interrogatories to Plaintiffs; (3) Interrogatory Nos. 11, 13 and 15 from E. I. du Pont de Nemours and Company's Second Set of Interrogatories to Plaintiffs; and (4) Interrogatory Nos. 20, 21, 23 and 25 from Millennium Inorganic Chemical Company's Second Set of Interrogatories to Plaintiffs.

[2] During the parties' conference on February 19, 2013, Plaintiffs agreed with Defendants' position that with regard to the entries on Appendix A identified as "opportunities to conspire," Plaintiffs are precluded from introducing at trial or in response to Defendants' motions for summary judgment evidence that competitors actually exchanged non-public confidential information at any meetings characterized as mere "opportunities."  *See, e.g*., Plaintiffs' Appendix A at p. 21 (identifying a June 2001 CEFIC conference call as a "competitor contact opportunity").  Defendants ask the Court to incorporate that agreement in its ruling on this motion.

to identify the continuing shortcomings of the Fourth Revised Responses and to seek certain relief from the Court.[3]

### 1. The Fourth Revised Responses Improperly Attempt to Incorporate Unspecified Evidence and Seek to Supplement, Rather than Amend, Plaintiffs' Responses

Defendants' interrogatories properly seek specific information concerning Plaintiffs' contentions regarding who received non-public, confidential information, what information was received, and what was done with that information. *See, e.g.*, Huntsman and Kronos's Second Set of Interrogatories to Plaintiffs, No. 2. Perhaps the most significant failing of the Fourth Revised Responses is Plaintiffs' preliminary statement in each response, which states, "[t]hese revised responses should not be considered a replacement or renunciation of the prior responses, and Plaintiffs explicitly reserve the right to introduce any evidence referenced in those prior responses in any subsequent filing, hearing, correspondence, trial, or other transaction in this matter." *See, e.g.*, Fourth Revised Responses to Huntsman's Interrogatories at p. 2; Fourth Revised Responses to DuPont's Interrogatories at p. 2; Fourth Revised Responses to Millennium's Interrogatories at p. 2.

This is improper. This single sentence imports all of the prior deficiencies and failings of Plaintiffs' prior efforts to answer these interrogatories into this version and nullifies any improvements in the answers. Indeed, if this statement were permitted to stand, Defendants are left in a worse position than they were before, as they would have to contend with thousands of pages of deficient interrogatory answers, rather than the hundreds of pages contained in the Fourth Revised Responses. The Fourth Revised Responses must be deemed to be an amendment to, and total replacement of, the prior versions of Plaintiffs' responses.[4]

Another significant problem with Plaintiffs' prior versions of the interrogatory responses was that Plaintiffs answered these specific questions about their contentions by simply listing hundreds of deposition exhibits, deposition excerpts and other documents. As set forth in Defendants' prior letters to the Court, it is improper to answer a contention interrogatory by merely citing to documents. *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 50

---

[3] Defendants refer to and incorporate the discussion of applicable case law that was set forth in prior letters to the Court dated November 20, 2012 and January 9, 2013.

[4] The import of this issue was highlighted during the meet and confer with Plaintiffs. Specifically, Plaintiffs conceded that the Appendix A attached to the Fourth Revised Responses is now the only operative version of the competitor contacts chronology, and their latest response to Millennium's Interrogatory 20 replaces their previous responses, but when pressed on which version of the interrogatory responses control, Plaintiffs indicated that the fourth revision answered Defendants' questions as "re-written," but that the previous versions answered the original questions posed. This is inconsistent with Defendants' understanding and leaves Defendants guessing as to which responses are in play and what questions Plaintiffs actually answered.

(N.D.N.Y. 1997) (holding that interrogatories must be answered with "assertions of fact, or the admission that no such facts exist" independently from references to other documents); *Smith v. Logansport Community School Corp.*, 239 F.R.D. 637 (N.D. Ind. 1991) (noting that "Defendant . . . is entitled to discover the factual basis for plaintiffs' claims through the use of interrogatories, without being referred to the plaintiffs' deposition testimony, other discovery materials, or the pleadings").

In one respect, the Fourth Revised Responses are improved in this regard. Plaintiffs have now omitted the long list of evidence that appeared in the narratives of their prior answers and have more specifically identified the information they seek to rely on at trial. However, this improvement is negated by the "catch-all" language included by Plaintiffs alongside their more specific narrative responses, pursuant to which they also seek to include "any other documents and deposition exhibits that pertain to this issue which are cited within plaintiffs other discovery responses, plaintiffs' expert reports . . . and/or that were made exhibits to the depositions of defendants' current and former employees." *See* Fourth Revised Responses to Millennium's Interrogatories at pp. 4, 17, 23 and 27; *see also* Fourth Revised Responses to DuPont's Interrogatories at pp. 23, 31.[5]

That is also improper, in that the catch-all language swallows the actual response. If there is anything in those other documents that is responsive to the interrogatories, then that information should have been provided and identified with specificity. Defendants request that these catch-all phrases be struck from the responses and/or that Plaintiffs be precluded from relying on documents or exhibits at trial that are not specifically referenced in the narrative responses.

### 2. Plaintiffs' Interrogatory Responses Make Unsupported References to "Direct" Evidence of Conspiracy

Plaintiffs' interrogatory responses continue to refer to the existence of "direct" evidence of conspiracy when, in fact, they have adduced no such evidence. In response to Huntsman's Interrogatory No. 10, Plaintiffs contend that "[t]here is direct and circumstantial evidence of cartel behavior and coordination on pricing, supply, capacity and inventory." *See* Fourth Revised Responses to Hunstman's Interrogatories at p. 32. Plaintiffs make the same assertion in response to DuPont Interrogatory No. 11, which is incorporated by reference into their response to Interrogatory No. 13. *See* Fourth Revised Responses to DuPont's Interrogatories at pp. 10, 31. But nowhere in their responses do Plaintiffs identify any *direct* evidence of "coordination on pricing, supply, capacity and inventory". As the Court has previously made clear, if Plaintiffs cannot point to any direct evidence of conspiracy, they should acknowledge that their case is based only on circumstantial evidence and remove the reference to direct evidence from their interrogatory responses.

---

[5] Defendants have attached the Fourth Revised Responses, which were designated as "Confidential" under the Stipulated Protective Order, as Exhibit A to this letter.

### 3. Plaintiffs Must Identify with Specificity the Portion of Communications That They Contend Is Non-Public Confidential Information

Throughout their Fourth Revised Responses, Plaintiffs often contend that a document or "some part" of a document allegedly exchanged "contains" non-public and confidential information. But they do not identify the specific information in the document or, indeed, in Defendants' supposedly improper communications more generally that they claim was confidential and non-public.

Defendants have asked Plaintiffs to identify specifically the non-public, confidential information upon which they rely, and are entitled to know exactly what information in a document or communication Plaintiffs contend was non-public and confidential. Without this specificity, Defendants cannot adequately prepare to rebut Plaintiffs' contentions. Thus, Defendants respectfully request that when a specific document or written communication is referenced in the Fourth Revised Responses, Plaintiffs should identify the specific portion of the document that they contend is non-public, confidential information (even in circumstances where that specific portion is described as a mere "example" of the confidential or non-public information contained therein). In other words, Defendants should not be left to speculate which part of a document Plaintiffs will contend is allegedly non-public, confidential information.[6] In the event Plaintiffs fail to identify such information, Plaintiffs should be precluded from later contending that portions of the document that are not specifically referenced or discussed constituted improper communications.

#### a. Plaintiffs Fail To Provide Specific Answers Regarding How Allegedly Confidential Non-Public Information was Used

Similarly, Plaintiffs wholly fail to specify what they contend was actually *done* with the allegedly confidential and non-public information that was allegedly shared improperly by the Defendants and other parties. Instead of specifying how the information was used, they simply repeat the boilerplate, conclusory allegation that the Defendants "used this information to raise, fix, and stabilize prices."[7] *See, e.g.*, Fourth

---

[6] Specifically, Defendants ask the Court to compel Plaintiffs to answer: (1) Interrogatory Nos. 2(c), 4(d), and 6(d) from Huntsman International LLC's Second Set of Interrogatories to Plaintiffs; (2) Interrogatory Nos. 2(c), 4(d), and 6(d) from Kronos Worldwide, Inc.'s Second Set of Interrogatories to Plaintiffs; (3) Interrogatory No 25 from Millennium Inorganic Chemicals Inc.'s Second Set of Interrogatories to Plaintiffs; and (4) Interrogatory No. 13(d) from DuPont's Second Set of Interrogatories to Plaintiffs.

[7] Specifically, Defendants ask the Court to compel Plaintiffs to answer: (1) Interrogatory Nos. 2 (d), 4(e), and 6(e) from Huntsman International LLC's Second Set of Interrogatories to Plaintiffs; (2) Interrogatory Nos. 2(d), 4(e), 6(e) from Kronos Worldwide, Inc.'s Second Set of Interrogatories to Plaintiffs; (3) Interrogatory Nos. 21, 23 and 25 from Millennium Inorganic Chemicals Inc.'s Second Set of

Revised Responses to Huntsman's Interrogatories at 7. That is a meaningless phrase, not an answer that enables Defendants to rebut a specific factual contention. Moreover, Plaintiffs' repetition of it is mindless—they say the same thing with respect to communications that occurred years <u>before</u> the onset of the alleged conspiracy in 2002. *See, e.g.*, *id.* at p. 10 (alleging that Huntsman used information allegedly received in April 1, 1999 to "raise, fix and stabilize prices"). If Plaintiffs know how the specific, confidential, non-public information was actually used, they are obligated to say so. If not, and having failed to do so, Plaintiffs should now be precluded from introducing, at trial or in response to Defendants' motions for summary judgment, evidence of how the information exchanged was actually used.

      **b.**    **Conclusory Answers that Non-Public and Confidential Information Was Exchanged Are Improper**

The Fourth Revised Responses also remain significantly deficient to the extent that they state that certain persons "shared confidential, non-public information" about various general topics, but do not specify what information on those topics was shared and do not specify what evidence they have to support their conclusory contentions. Below are two examples of these types of conclusory answers that are replete throughout the Fourth Revised Responses:

> Plaintiffs contend that Keenan, Dixon, Maiter and Fisher exchanged confidential, non-public information at this meeting, and that Huntsman used this information to raise, fix and stabilize prices. . . . .
>
> Plaintiffs contend that Basson shared confidential, non-public information about titanium dioxide sales, production, inventory, capacity, and end use with Jon Dean, Luitigi Cutrone, Mahomed Maiter, and Rob Portsmouth, and that HILLC used this information to raise, fix and stabilize prices.

*See* Fourth Revised Responses to Huntsman's Interrogatories at p. 7, 19.

If Plaintiffs can assert that at a particular meeting confidential, non-public information was exchanged, they must know what it was—that is, what was the substance and nature of the information exchanged. If so, they should provide Defendants with that specific information. On the other hand, if Plaintiffs are merely *speculating* that confidential, non-public information was exchanged and have no evidence, they should be held to that position. Plaintiffs have continually failed to identify in these answers *any* specific information actually exchanged. Accordingly, Defendants ask that this Court compel Plaintiffs to either specifically state the confidential information that was

---

Interrogatories to Plaintiffs; and (4) Interrogatory No. 13(d) from DuPont's Second Set of Interrogatories to Plaintiffs.

exchanged and how specifically it was used, or state that Plaintiffs do not have specific evidence about what information was exchanged and how the information was used.

### 4. Plaintiffs Have Not Specified What They Contend Defendants Agreed to Do

DuPont's Interrogatory No. 11 asks Plaintiffs to "[d]escribe in detail the *precise nature* of any unlawful agreement [they] allege involving any of the Defendants . . . ." Fourth Revised Responses to DuPont's Interrogatories at p. 3 (emphasis added). Plaintiffs' answer is a generalized narrative, which describes the agreement among Defendants only as an agreement to "raise, fix and stabilize titanium dioxide prices." *Id.* at 4; *see also id.* at 5, 6, 8, 9, 11, 15, 16. But that does not answer the interrogatory, or give Defendants notice of what the actual unlawful agreement supposedly was here. At this late stage of the case, Plaintiffs should be able to answer that interrogatory with specificity, and not a generalized catch-all response. What exactly was the unlawful agreement here, and when was it made, and by whom? Plaintiffs can no longer "keep their options open" by responding to specific questions with generalized narratives. If Plaintiffs do not know what they contend was the actual unlawful agreement here among Defendants, then they must say so, and they should be precluded from taking a different position at trial.

### 5. The Overbreadth of Plaintiffs' Responses to DuPont Interrogatory Nos. 13 and 15 Renders Them Nonresponsive

Interrogatory No. 13 asks Plaintiffs to identify "every . . . Person whom [they] believe participated in the alleged unlawful agreement" and "every overt act each such . . . Person took in furtherance of the alleged unlawful agreement." *See id.* at 20. While Plaintiffs identify some alleged participants in the conspiracy by name, they undercut those responses by also listing broad *categories* of alleged participants, such as "every employee of Defendants and their co-conspirators who . . . in any way benefited commercially as a result of information received from the GSP." *Id.* at 23. Those responses are so overbroad as to be meaningless. Plaintiffs should be able, and required, to identify all persons whom they contend participated in the conspiracy, by name, and be precluded from identifying other participants at trial.

Interrogatory No. 15 asks Plaintiffs to identify "every Communication among or between any two or more Entities or Persons that [they] contend, standing alone, itself constitutes an unlawful agreement, and Identify every Person whom [they] contend participated in those Communications." *Id.* at 33. In response, Plaintiffs have identified only *examples* of communications they contend constitute unlawful agreements as well as two *categories* of communications, and they have failed to identify the persons involved in such communications. *See id.* at 34-35. That is insufficient. Either Plaintiffs should respond to the interrogatory with specificity, or they should be precluded from contending at trial that any communication, standing alone, constitutes an unlawful agreement.

      For all of the foregoing reasons, Defendants request the relief outlined in this letter and all further relief to which they are entitled.

                        Respectfully submitted,

                        /s/

                        David B. Hamilton

DBH:nlw
Attachment (Exhibit A-Filed Under Seal)
cc:     All Counsel of Record (via CM/ECF)