IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: TITANIUM DIOXIDE ANTITRUST LITIGATION | * | |
| | * | |
| | * | |
| * * * * * * * * | * | CIVIL ACTION NO.: RDB-10-0318 |
| | * | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This class action concerns an alleged price-fixing conspiracy in the market for titanium dioxide.[1] The Plaintiff class representatives Haley Paint Company, Isaac Industries, Inc., and East Coast Colorants, LLC, doing business as Breen Color Concentrates, and the class of titanium dioxide purchasers whom they represent (together, "Plaintiffs") claim that Defendants Kronos Worldwide Inc. ("Kronos"), and Cristal USA Inc., formerly known as Millennium Inorganic Chemicals, Inc. ("Millennium"), together with E.I. du Pont de Nemours & Co. ("DuPont"), Huntsman International LLC ("Huntsman"), and Tronox Inc. ("Tronox"), engaged in an unlawful conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, to fix, raise, or maintain the price of titanium dioxide in the United States. The Plaintiffs allege that as a consequence of the unlawful conspiracy, the Defendants were successful in charging artificially inflated prices for titanium dioxide.

---

[1] Titanium dioxide ("TiO2") is a "dry chemical powder that is the world's most widely used pigment for providing whiteness, brightness, and opacity . . . to many products, particularly paints and other coatings." *See* Mem. Op. Granting Mot. for Class Certification 2, ECF No. 337 (internal quotation omitted).

On August 6, 2013, this Court ordered a stay of all proceedings between the Plaintiffs, DuPont, and Huntsman, as those parties have reached agreements in principle to settle and release the class claims against DuPont and Huntsman. *See* Stay Order, ECF No. 484. In a Memorandum Opinion and Order issued on August 14, 2013 (ECF Nos. 498 & 499), this Court denied the Motions for Summary Judgment filed by Defendants Millennium and Kronos. Presently pending before this Court is the Defendants' Motion to Compel Arbitration and Stay Proceedings, Motion to Dismiss for Improper Venue, Motion to Strike, and Renewed Motion to Amend the Class Definition (ECF No. 423). Defendants Millennium and Kronos argue that approximately 320 members of the class are contractually precluded from participating in this class action. They seek to enforce arbitration clauses, class action and jury trial waivers, and forum selection clauses against the relevant class members. They also ask this Court to amend its definition of the class to exclude any titanium dioxide purchasers whose contracts contain these clauses.

The parties' submissions have been reviewed, and a hearing was held on June 25, 2013. In addition, the Court has reviewed the supplemental memoranda regarding the impact of the DuPont and Huntsman settlements. For the reasons that follow, the Defendants' Motion to Compel Arbitration and Stay Proceedings, Motion to Dismiss for Improper Venue, Motion to Strike, and Renewed Motion to Amend the Class Definition (ECF No. 423) is GRANTED.

<u>BACKGROUND</u>

The facts of this case are fully set forth in the Memorandum Opinion on the Defendants' Motions for Summary Judgment, issued on August 14, 2013 (ECF No. 498).

For purposes of this Motion, the Court recites facts pertinent to the issue at hand: whether arbitration clauses, forum selection clauses, and class action and jury waivers entered into by some of the class members may be enforced against them, to the extent that they are precluded from pursuing their claims as part of this class action litigation.

The Plaintiff class representatives, Haley Paint Company, Isaac Industries, and East Coast Colorants, LLC, doing business as Breen Color Concentrates, are small purchasers of titanium dioxide. They bring this case under Section 1 of the Sherman Act, alleging that the Defendants Millennium and Kronos, as well as DuPont, Huntsman, and Tronox, which are the market leaders in the production of titanium dioxide, conspired to fix prices during a period from February 1, 2003 to the present (the "Class Period"). On February 9, 2010, the Plaintiffs filed suit, and they submitted an Amended Consolidated Complaint (ECF No. 51) on April 12, 2010, initiating this class action lawsuit.

On August 28, 2012, this Court issued a Memorandum Opinion (ECF No. 337) certifying a class of titanium dioxide purchasers who are alleged to have sustained injury when they paid artificially inflated prices for the product.[2] The class is currently defined as follows:

> All persons and entities who purchased titanium dioxide in the United States directly from one or more Defendants or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, between February 1, 2003, and the present ("Class Period"). Excluded from the Class are Defendants, their coconspirators, parent companies, predecessors, subsidiaries and affiliates, and all governmental entities.

---

[2] The Defendants petitioned to appeal this Court's decision certifying the class, and that petition was denied by the United States Court of Appeals for the Fourth Circuit on November 14, 2012. *See* Order, *In re Titanium Dioxide Antitrust Litig.*, No. 12-320 (1:10-CV-00318-RDB) (4th Cir. Nov. 14, 2012).

In their opposition to class certification, the four original Defendants argued that some putative class members purchased titanium dioxide pursuant to contracts containing mandatory arbitration clauses, forum selection clauses, and class action and jury trial waivers, all of which would contractually bar them from participating in this class action. *See* Class Cert. Mem. Op. 40. Though these contractual provisions did not defeat class certification, this Court left open the possibility of a later amendment to the class certification Order if certain members' contracts rendered them atypical of the class. *Id.*

On November 2, 2012, the four original Defendants moved to amend the class definition (ECF No. 351). They asserted that the class should be defined to exclude any putative class members who would be contractually precluded from participation in this class action litigation. In a Memorandum Opinion and Order of November 27, 2012 (ECF Nos. 366 & 367), this Court denied the motion as not yet ripe for review. Specifically, this Court found that a determination regarding whether mandatory contractual provisions would be enforceable against putative class members should await the expiration of the class opt-out period, when the parties to this action would be known. *See* Nov. Mot. Amend Class Def. Mem. Op. 6-7.

On March 18, 2013, the Court-appointed Notice Administrator reported that after eleven persons properly opted out of the class, the final class was composed of 537 unique entities. *See* Sherwood Decl., ECF No. 403. With that information, the remaining Defendants Millennium and Kronos have moved this Court to enforce the contractual provisions that they argue bar some 320 class members from participating in this class action. They specifically request that this Court (1) order the class members with claims

subject to an arbitration clause to proceed, if at all, in arbitration; (2) dismiss the claims of class members whose purchases were subject to mandatory forum selection provisions that render this Court an improper forum; and (3) strike the jury trial demands of class members that have contractually waived their rights to a jury trial. The clauses asserted by the Defendants are described herein.

DuPont: Approximately 215 titanium dioxide purchasers of DuPont signed contracts with mandatory arbitration clauses, class action waiver clauses, or forum selection clauses. *See* Defs.' Ex. 3, ECF No. 460-2; Daney Decl. & DuPont Exs. 1-58, ECF No. 426 & 426-1 through 426-58. Some of these contractual clauses were individually negotiated. *See* Daney Decl. ¶ 4 (listing thirty-one DuPont customers who agreed to formal written contracts containing an arbitration clause); *id.* ¶ 17 (naming twenty-nine DuPont customers who signed class action waivers as part of formal written agreements); *id.* ¶ 19 (identifying twelve DuPont customers with forum selection clauses in their contracts). The majority of the clauses, however, are part of DuPont's Standard Conditions of Sale, which as of March 2007 include a mandatory arbitration clause and class action waiver.[3] *See id.* ¶¶ 15, 17 (identifying

---

[3] DuPont's Standard Conditions of Sale, revised in March 2007, read in pertinent part:

> Buyer and Seller *agree to arbitrate all disputes, claims, or controversies* whether based on contract, tort, statute, or any other legal or equitable theory, arising out of or relating to (a) this Agreement or the relationship which results from this Agreement, (b) the breach, termination or validity of this Agreement, (c) the purchase or supply of any product, service, or information provided by Seller, (d) events leading up to the formation of Buyer's and Seller's relationship, and (e) any issue related to the creation of this Agreement or its scope, including the scope and validity of this paragraph.
> [ . . . ]
> Buyer and Seller *agree not to file or join any class action* or class arbitration, seek or consent to class relief, or seek or consent to the consolidation or joinder of its claims with those of any third party.

Daney Decl. ¶¶ 7, 16 (emphasis added); DuPont Ex. 9, DUPTIO20375422 ¶ 11.

180 DuPont customers who agreed to the arbitration provision and class action waiver in DuPont's revised Standard Conditions of Sale).

<u>Huntsman:</u> Approximately 109 Huntsman customers signed contracts containing forum selection clauses, jury waivers, or arbitration clauses. *See* Defs. Ex. 3; Quinn Decl. & Huntsman Exs., ECF No. 427 & 427-1 through 427-40. Many of Huntsman's supply agreements contain a set of "General Terms and Conditions," including a jury waiver for "any action, suit or proceeding arising out of or relating to" the agreement. *See* Quinn Decl. ¶ 5; Huntsman Exs. 1-5. Some supply agreements also provide that the parties "irrevocably submit to the exclusive jurisdiction" of courts other than this Court—to wit, the United States District Court for the Southern District of Texas; the Texas State District Courts of Harris County, Texas; the United States District Court for the District of Delaware; or the state Chancery Court in Wilmington, Delaware. *See id.* All in all, twenty-five supply agreements contain these clauses. *Id.* Moreover, nine of Huntsman's distributors agreed to waive their right to trial by jury and submit to the exclusive jurisdiction of the District Court for the Southern District of Texas or State District Courts in Harris County, Texas. *See* Quinn Decl. ¶ 6; Huntsman Exs. 26-34.

Huntsman also sold titanium dioxide to the Guild CPO, Inc. ("the Guild CPO"), an organization made up of paint and coatings manufacturers and providing cooperative purchasing services for its members. *See* Quinn Decl. ¶ 7. A total of eighty-three Guild CPO members agreed to waive "any right it may have to a trial by jury" and "irrevocably submit to the exclusive jurisdiction" of the Southern District of Texas and the Texas state courts of Harris County. *See id.* ¶ 8.

Finally, Huntsman and titanium dioxide customer GAF agreed pursuant to their contract that "[a]ny controversy or claim arising from or relating to this Agreement shall be settled by final and binding arbitration by a single arbitrator." *See id.* ¶ 9; Huntsman Ex. 38.

Kronos: Approximately nine Kronos customers entered into contracts for the purchase of titanium dioxide that included jury waivers, mandatory arbitration clauses, or forum selection provisions. *See* Defs.' Ex. 3; Sanzalone Decl. & Kronos Exs. 1-21, ECF No. 428 & 428-1 through 428-21. Though Kronos's standard supply agreements do not contain these clauses, customers sometimes request that they be included. *See* Sanzalone Decl. ¶ 5 (identifying seven Kronos customers with arbitration clauses in their contracts); *id.* ¶ 7 (listing two Kronos customers who agreed to jury waiver provisions); *id.* ¶ 9 (identifying three Kronos customers whose contracts contain forum selection clauses).

Millennium: Finally, an estimated seven entities who purchased titanium dioxide from Millennium agreed to mandatory arbitration provisions or forum selection clauses. *See* Defs.' Ex. 3; Clover Decl., ECF No. 425 & Millennium Exs., ECF No. 425 & 425-1 through 425-7. For example, some Millennium contracts provide that all disputes between the parties should be arbitrated at The Hague, Netherlands, *see* Millennium Exs. 1-2, or in Baltimore, Maryland, *see* Millennium Ex. 7. Millennium's contract with customer Weyerhauser Company includes a forum selection clause requiring claims to be litigated in the State of Washington. *See* Millennium Ex. 6.

In addition to asserting the subject contractual clauses against the 320 identified current class members,[4] the Defendants have renewed their Motion to Amend Class Definition. They argue that the class is overly broad and improperly certified under Rule 23 of the Federal Rules of Civil Procedure for two reasons. First, they assert that the claims of class members that cannot proceed in this class action litigation are atypical, and the class representatives cannot adequately represent these members. *See* Fed. R. Civ. P. 23(a)(3)-(4). Moreover, the Defendants contend that questions affecting individual class members now predominate over the common questions, such that Rule 23(b) is no longer satisfied. *See* Fed. R. Civ. P. 23(b)(3). To cure these Rule 23 deficiencies, the Defendants propose that the current class definition be amended as follows:

> All persons and entities who purchased titanium dioxide in the United States directly from one or more Defendants or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, between February 1, 2003, and the present ("Class Period")*, except those persons and entities who purchased titanium dioxide in the United States directly from one or more Defendants or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, during the Class Period pursuant to a contract containing one or more of the following: (i) an arbitration clause, (ii) a clause restricting the litigation of disputes to courts other than the U.S. District Court for the District of Maryland, (iii) a class action waiver clause, or (iv) a provision waiving the right to a jury trial. Also* excluded from the Class are Defendants, their coconspirators, parent companies, predecessors, subsidiaries and affiliates, and all governmental entities.

Defs.' Renewed Mot. to Amend Class Def. Mem. 4, ECF No. 424-2 (emphasis on proposed amendment added).

---

[4] Many of the customers who purchased titanium dioxide pursuant to asserted clauses entered into more than one such clause, such that Defendants in their Exhibit 1, tables A through E, list more than 320 contractual clauses that they argue preclude participation in this class action litigation. *See* Defs.' Ex. 1, ECF No. 424-1. Taking into consideration the customers who signed more than one such clause, Defendants' Exhibit 3 identifies the 320 separate class members subject to one or more mandatory arbitration clauses, forum selection clauses, class action waivers, or jury trial waivers. *See* Defs.' Ex. 3, ECF No. 460-2.

For the reasons stated below, the Defendants' Motion to Compel Arbitration and Stay Proceedings, Motion to Dismiss for Improper Venue, Motion to Strike Jury Trial Demand, and Renewed Motion to Amend the Class Definition (ECF No. 423) is GRANTED.

ANALYSIS

## I. Enforcement by Nonsignatory Defendants Under a Theory of Equitable Estoppel

At the outset, this Court finds that, based on principles of equitable estoppel, Defendants Millennium and Kronos can enforce not only those arbitration clauses, forum selection clauses, and class action and jury waiver provisions to which their approximately sixteen customers agreed, but also the subject clauses contained in the contracts of the settling parties DuPont and Huntsman. The question whether a nonsignatory may compel a signatory to arbitrate claims is governed by state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Most of the contracts at issue in this case are governed by the law of Delaware, while some contracts provide for interpretation under laws of Ontario, Canada; Ohio; New York; or the United States, that is, federal law. *See* Supp. Mem. tbl. A-1, ECF No. 485-1. The customer whose contract provides for interpretation under the law of Ontario, Cascades Boxboard Group—Connecticut LLC, *see* DuPont Ex. 12, also entered into an agreement governed by Delaware law, *see* DuPont Ex. 11; thus this Court need not look to Ontario law. Delaware, Ohio, and New York apply the same equitable estoppel test applied by the Fourth Circuit. *See Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. Civ.A.2037-N., 2006 WL 2473665, *4-5 (Del. Ch. Aug. 22, 2006); *I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 8-9 (Ohio Ct. App. 2004); *Hoffman v. Finger Lakes Instrumentation, LLC*, 789

9

N.Y.S.2d 410, 414-15 (N.Y. Sup. Ct. 2005). For this reason, this Court applies the equitable estoppel test as recited by the Fourth Circuit.

The United States Court of Appeals for the Fourth Circuit has found that "a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2010) (quoting *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006)). One such situation is when "the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." *Id.* The doctrine of equitable estoppel applies (1) when the signatory's claims "arise out of and relate directly to the written agreement," *see Am. Bankers*, 453 F.3d at 627 (quoting *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005)); or (2) when the signatory raises allegations of "substantially interdependent or concerted misconduct by both the nonsignatory and one or more signatories to the contract," *see Brantley*, 424 F.3d at 396 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds*, *Arthur Andersen LLP*, 556 U.S. at 631 (holding that state law governs whether an arbitration clause is enforceable against a nonsignatory under the FAA)).

In this case, almost all of the arbitration clauses that Defendants Millennium and Kronos seek to enforce derive from contracts formed between class members and either DuPont or Huntsman. Indeed, the record reflects that there are only seven Kronos contracts and seven Millennium contracts that contain arbitration clauses. However, DuPont and Huntsman have each reached agreements in principle with the Plaintiffs to

settle the claims against them. Consequently, the Defendants, as nonsignatories, can enforce the lion's share of these contractual clauses only by relying on equitable estoppel to bar the signatory class members from pursuing this litigation.

Assuming that the arbitration clauses at issue are enforceable,[5] this Court determines that the class members would be equitably estopped from avoiding the arbitration clauses that they signed with DuPont and Huntsman. In other words, Millennium and Kronos can compel the signatory class members to arbitrate their claims with the Defendants. The doctrine of equitable estoppel applies in two cases—when the signatory's claims arise out of the agreement containing the clause, or when the signatory alleges concerted misconduct by the nonsignatory and the signatory. *See Brantley*, 424 F.3d at 396 (internal citations and quotation marks omitted). As the United States Court of Appeals for the Eleventh Circuit has reasoned, equitable estoppel should bar the signatory from pursuing litigation when concerted misconduct is alleged; "[o]therwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *MS Dealer*, 177 F.3d at 947 (internal citation and quotation marks omitted).

In the Complaint, the Plaintiffs assert that the Defendants Millennium and Kronos, along with DuPont, Huntsman, and Tronox, violated the Sherman Act through a "continuing combination or conspiracy to unreasonably restrain trade and commerce" and "concerted action among Defendants and their coconspirators." Am. Consolidated Compl. ¶¶ 122, 125, ECF No. 51. The signatories thus raise allegations of "substantially

---

[5] In Section II.B of this Memorandum Opinion, this Court finds that the arbitration clauses are enforceable.

interdependent or concerted misconduct by both the nonsignatory and one or more signatories to the contract." *Brantley*, 424 F.3d at 396 (quoting *MS Dealer*, 177 F.3d at 947). As in *MS Dealer*, the arbitration clauses entered into by the class members and DuPont and Huntsman would be "rendered meaningless" if not for equitable estoppel, 177 F.3d at 947, because the Plaintiffs proceed in this action under a theory of joint and several liability, naming the four original Defendants as co-conspirators. Moreover, the "liberal federal policy favoring arbitration agreements" weighs in favor of permitting the nonsignatories Millennium and Kronos to enforce the arbitration clauses that govern the relevant class members' contracts for the purchases of titanium dioxide. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("[F]ederal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

The Plaintiffs oppose the application of equitable estoppel, contending that the doctrine cannot apply when the connection between Millennium, Kronos, DuPont, and Huntsman is only their illegal concerted activity. The Plaintiffs cited *Laumann v. National Hockey League*, Nos. 12 Civ. 1817 & 3704 (SAS), 2013 WL 837640, at *2 n.25 (S.D.N.Y. 2013), for the proposition that a "non-signatory to an arbitration agreement cannot enforce an arbitration clause where its only relationship to the signatories is as a co-conspirator." Further, the United States Court of Appeals for the Second Circuit has found that a nonsignatory could not avail itself of arbitration clauses under a theory of equitable estoppel where there was no "relationship between [the nonsignatory] and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with [the nonsignatory]."

*Ross v. Am. Express, Inc.* 547 F.3d 137, 147 (2d Cir. 2008); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 n.7 (2d Cir. 2004) (noting that, while equitable estoppel applied in the case at hand, "[w]e do not, in so holding, mean to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel. The inquiry remains a fact-specific one."). The approach taken by the Second Circuit in *Ross*, as well as the court in *Laumann*, reflects the Second Circuit's concern that in the context of conspiracy allegations, the application of equitable estoppel is "problematic." *Ross*, 547 F.3d at 148.

While the Second Circuit indeed gives a narrower reading to the equitable estoppel doctrine in the context of conspiracy claims, other courts—including the Fourth Circuit—have recognized the application of equitable estoppel in such circumstances. The Fourth Circuit in *Aggarao* held that for equitable estoppel to apply, there must be "allegations of coordinated behavior between a signatory and a nonsignatory defendant," and "the claims against both the signatory and nonsignatory must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." 675 F.3d at 374 (quoting *MS Dealer*, 177 F.3d at 947-48, and *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 735 (8th Cir. 2009)). Moreover, the Eleventh Circuit's decision in *MS Dealer*, from which the Fourth Circuit's equitable estoppel test is derived, involved the application of equitable estoppel where the plaintiff alleged a fraud claim based on the nonsignatory and signatory parties' conspiracy to charge an excessive amount pursuant to a contract. Other courts have likewise precluded a signatory plaintiff from avoiding an arbitration clause where the underlying claim against the signatory and nonsignatory defendants involved allegations of

conspiratorial conduct. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1139 (D. Kan. 2003) (in the context of an antitrust claim alleging that three long distance carriers fixed prices, holding that equitable estoppel prevented signatories from litigating against any of the three defendant carriers); *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) ("Since all of [the plaintiff's] allegations against the Nonsignatory Defendants concern their interdependent and concerted misconduct with [the signatory defendant], the second independent basis for equitable estoppel is met.").

The Plaintiffs' Complaint alleges coordinated behavior between signatories and nonsignatories. Moreover, the claims are based on the same facts, are inherently inseparable, and, as this Court explains in Section II.B of this Memorandum Opinion, fall within the scope of the arbitration clauses at issue. Thus, the *Aggarao* factors are met in this case. Moreover, that the signatory Defendants—that is, DuPont and Huntsman—are not seeking to enforce their rights under the contracts does not preclude the application of equitable estoppel in this case. *See, e.g.*, *Am. Bankers*, 453 F.3d at 625 (permitting a nonsignatory to enforce an arbitration clause in the absence of the signatory defendant). Accordingly, the Defendants Millennium and Kronos may compel the class members who signed arbitration clauses in their purchase agreements with DuPont or Huntsman to arbitrate, as those class members are equitably estopped from avoiding their contractual agreements.[6]

---

[6] Because the second scenario giving rise to the equitable estoppel doctrine applies in this case, this Court need not determine whether the other ground for equitable estoppel—that the signatory's claims "arise out of and relate directly to the written agreement," *see Am. Bankers*, 453 F.3d at 627—would be satisfied.

For the same equitable reasons, the forum selection clauses, jury waivers, and class action waivers can be enforced by the nonsignatory Defendants. The purpose of equitable estoppel is to preclude "a party from asserting his rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Id.* at 627 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000)). In this case, the Plaintiffs have brought suit alleging that the prices they paid, pursuant to their agreements with Millennium, Kronos, DuPont, and Huntsman, were artificially high as a result of the alleged price-fixing agreement among the pigment producers. They cannot rely on their contracts to assert this Sherman Act claim, yet repudiate the clauses within those contracts that preclude certain members from participating in this class action litigation. To rule otherwise would in essence allow class members to have their cake and eat it too—in other words, to "rely on the contract when it works" to their advantage, while "repudiating it" when it works to their disadvantage. *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (citation and quotation marks omitted); *see also Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1256-57 & n.23 (11th Cir. 2011) (equitably estopping a signatory from avoiding enforcement of a forum selection clause as to claims against nonsignatories and noting that precedent "strongly suggests that any of the established theories for allowing a non-signatory to invoke a contract's arbitration clause should also be sufficient to allow a non-signatory to invoke a forum-selection clause" (internal citation and quotation marks omitted)); *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) (applying the equitable estoppel test derived from the Eleventh

Circuit's decision in *MS Dealer*, 177 F.3d at 947, to prevent a signatory from avoiding a forum selection clause).

## II. Enforceability of Asserted Clauses

Having found that the asserted arbitration clauses, forum selection clauses, and jury and class action waivers that pertain only to DuPont and Huntsman may be enforced by the Defendants Millennium and Kronos, this Court must now determine whether those clauses, as well as the clauses entered into by Millennium, Kronos, and their customers, are enforceable. Before turning to the individual arguments relating to enforceability, this Court addresses the Plaintiffs' argument based on waiver.

### A. <u>Plaintiffs' Waiver Argument</u>

The Plaintiffs claim that the Defendants have waived their rights to enforce the arbitration and class action waiver clauses, because they have known about these clauses since the early stages of this litigation, yet did not seek to enforce them until class certification. In general, "a party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011); *see also Fraser v. Merrill Lynch Pierce, Fenner & Smith Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) ("A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." (quoting *Maxum Founds. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985))).

In the context of a class action, however, the Defendants could not have waived their rights to enforce the contractual clauses at issue until the class composition was final. *See*

*Flat Panel*, 2011 WL 1753784, at *4 (holding that "putative class members are not parties to an action prior to class certification" (internal quotation omitted)); *cf. Muhammad v. Giant Food Inc.*, 108 F. App'x 757, 765 n.5 (4th Cir. 2004) (per curiam) (noting that pre-class certification dismissal binds only the named parties, and not putative class members); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314-15 (4th Cir. 1978) (same).[7]   As a result, the Defendants moved to enforce their arbitration rights against the class members at the proper stage—at class certification and subsequently in a Motion to Amend Class Definition (ECF No. 351).   In both circumstances, this Court indicated that it might entertain the Defendants' argument at a later time.   *See* Class Cert. Mem. Op. 40, ECF No. 337 ("[T]o the extent certain putative class members' contacts render them atypical of the class as a whole, this Court will exercise its discretion to amend its class certification Order as necessary."); Nov. Mot.  Amend Class Def. Mem. Op. 6 (anticipating a ruling on this issue once "the parties to this class action litigation are known and the record presented by the parties is fully developed").   The Plaintiffs themselves suggested that this issue be deferred until after the class opt-out period had expired.   *See* Nov. Mot. Amend Class Def. Mem. Op. (heeding the Plaintiffs' suggestion that this issue be resolved only after "notice has been issued to the class and the opt-out period has expired").   Accordingly, the Defendants have not waived their rights to enforce the asserted arbitration clauses and class action waivers, and their Motion is timely.

### B. Mandatory Arbitration Provisions

The "liberal federal policy favoring arbitration agreements," *Gilmer*, 500 U.S. at 25, extends to the antitrust context.  The Supreme Court recently held in *American Express Co. v.*

---

[7] It is noteworthy that the Defendants have not attempted to assert any arbitration clauses entered into by the named party Haley Paint Company.

*Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), that an arbitration clause could be enforced to preclude class litigation of a Sherman Act claim. The Fourth Circuit has likewise ruled that "domestic antitrust claims, as a class, are suitable for arbitration." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 282 (4th Cir. 2007); *cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (holding that antitrust claims arising from international transactions are suitable for arbitration). The Defendants Millennium and Kronos argue that the arbitration clauses signed by class members should be enforced, such that the relevant class members must pursue their claims, if at all, in arbitration.

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, provides as follows:

> [A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Despite this presumption, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision

which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the signatory party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

In this case, the arbitration agreements that the Defendants Millennium and Kronos assert are enforceable against the signatory class members. It is undeniable that the parties are involved in a dispute, that this dispute involves interstate commerce, and that the Plaintiffs oppose arbitration, thus satisfying the first, third, and fourth elements of the Fourth's Circuit test in *Whiteside*. *Id.* The only question is whether the arbitration provisions on which the Defendants rely purport to cover this dispute. This Court answers that question in the affirmative.

The arbitration provisions asserted by the Defendants are broad and encompass the Plaintiffs' antitrust claim. Though the exact wording of each asserted clause varies, they employ language indicating that the agreement is far-reaching.[8] Broad arbitration clauses such as the ones asserted in this case have been found to apply to Sherman Act claims. *See, e.g., Cotton Yarn*, 505 F.3d at 278-82; *JLM Indus. Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175 (2d Cir. 2004) (finding that a broadly worded arbitration clause was expansive enough to apply

---

[8] *See, e.g.*, DuPont Ex. 1 at DUPTIO20376530 ("All disputes arising out of or in connection with the present Agreement shall be finally settled under the Rules of Arbitration."); DuPont Ex. 9 (DuPont's "Standard Conditions of Sale") ¶ 11 ("Buyer and Seller agree to arbitrate all disputes, claims, or controversies whether based on contract, tort, statute, or any other legal or equitable theory . . . ."); Huntsman Ex. 38 at HILLC006938362 ("Any controversy or claim arising from or related to this Agreement shall be settled by final and binding arbitration."); Kronos Ex. 5 at KROWW00072493 (providing that "any dispute, claim, or controversy arising out of or relating in any way to this Agreement . . . shall be submitted to the American Arbitration Association" if resolution through good faith negotiations is not achieved); Millennium Ex. 2 at MIC04360873 ("[A]ll disputes arising from this Agreement will be settled exclusively by binding arbitration.").

to Sherman Act claims).  Bolstering this Court's conclusion is the Supreme Court's guidance that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Moreover, the arbitration clauses apply retroactively to encompass even those antitrust claims that arose prior to the execution of the relevant contracts.  Many of the asserted contracts explicitly state that they apply retroactively or supersede all previous agreements.[9]  For those contracts where the retroactive application is not specifically stated, the broad wording of each clause and the underlying federal policy in favor of arbitration lead to the conclusion that these clauses apply retroactively.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Gilmer*, 500 U.S. at 25.

The Plaintiffs challenge this argument, pointing out that some of the asserted contracts are unsigned, *see, e.g.*, Kronos Ex. 1, while others post-date the filing of this lawsuit, *see, e.g.*, Huntsman Ex. 38; Kronos Exs. 2, 6, 12; Millennium Ex. 7.  Neither fact affects the enforceability of the asserted arbitration clauses.  First, there is no requirement that arbitration agreements must be signed to be enforceable.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he plain language of § 2 [of the FAA] requires that the arbitration provision be 'written.'  It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (same).

---

[9] *See, e.g.*, DuPont Ex. 9 (DuPont's "Standard Conditions of Sale") ¶ 11 (mandating arbitration of "all disputes" relating to "the purchase or supply of any product" and "events leading up to the formation of Buyer's and Seller's relationship"); *id.* ¶ 15 ("This Agreement supersedes all prior agreements, representations, and understandings between the parties."); Huntsman Ex. 38 at HILLC006938362 ("This Agreement contains the entire agreement and understanding between the parties hereto, and supersedes any previous communications, representations, or agreements.").

As for the Plaintiffs' second point of contention, the Defendants reply that the contracts that post-date the Complaint were entered into during the normal course of their business, thus there is no concern that the Defendants sought to solicit exclusions from the class action. Even more convincing is the fact that some of these post-dated arbitration clauses were requested by the class members themselves. *See* Kronos Ex. 2; Huntsman Ex. 38. In sum, the Plaintiffs put forward no evidence suggesting that the Defendants included these arbitration clauses for coercive purposes.

Finally, the Plaintiffs contend that the Defendants failed to fulfill both contractual conditions precedent and FAA procedure. They argue that some arbitration clauses, for example, required the parties to attempt to resolve any dispute through good faith negotiations before submitting it to arbitration. Moreover, the Plaintiffs claim that the Defendants have failed to follow basic FAA requirements—namely, notifying the parties against whom they intend to enforce arbitration clauses and serving the class members with the relevant contracts. *See* 9 U.S.C. § 4 (requiring a party seeking an order to compel arbitration to give "[f]ive days' notice in writing of such application" upon the party "in default"). These arguments, however, miss the mark. The Defendants' Motion to Compel Arbitration and Stay Proceedings is not meant to initiate arbitration; an order compelling arbitration simply clarifies the forum in which the claim may be asserted. *See, e.g.*, *Horneffer v. St. Joseph Med. Ctr.*, No. MJG-11-410, 2012 WL 983782, at *7 (D. Md. Mar. 21, 2012) ("Plaintiff shall pursue his claims presented herein, *if at all*, in arbitration proceedings."). Thus the Defendants are not obligated to fulfill conditions precedent of individual arbitration clauses. Moreover, the class members received written notice satisfying the

FAA's requirement under Section 4. In particular, the class members were made aware of the Defendants' intention to enforce arbitration clauses by the Notice of Pendency of Class Action, which was sent out to class members following class certification. *See* Ex. A, ECF No. 386-1. The Defendants also put the class members on notice through their public filings with regard to this issue, which were also served on Plaintiffs' Counsel, who represent the absent class members.

For all of these reasons, the arbitration clauses asserted by the Defendants Millennium and Kronos are enforceable under the Federal Arbitration Act. Pursuant to Section 4 of the Federal Arbitration Act, this Court compels the class members whose arbitration clauses have been asserted by the Defendants to pursue their claims, if at all, in arbitration.[10]

In addition to moving to compel arbitration, the Defendants Millennium and Kronos seek a stay of trial of the proceedings as to class members who agreed to enforceable arbitration clauses. Section 3 of the FAA provides that where a proceeding is brought in a United States court upon an issue "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, district courts in the Fourth Circuit have recognized that dismissal, rather than a stay of trial pending arbitration, is appropriate where a court rules that all of a plaintiff's claims must be arbitrated. *See, e.g.*, *Payton v. Nordstrom, Inc.*, 462 F. Supp. 2d 706,

---

[10] The class members whose titanium dioxide contracts contain valid and enforceable arbitration clauses precluding them from this litigation are listed in the Defendants' Exhibit 1, attached to their Motion to Compel Arbitration and Stay Proceedings. *See* Defs.' Ex. 1 tbl. A, ECF No. 424-1.

709 (M.D.N.C. 2006) (citing *Webb v. Harris*, 378 F. Supp. 2d 608, 613 (M.D.N.C. 2005)); *see also Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (dismissing a claim where "no useful purpose will be served by granting a stay" pending arbitration). As the United States Court of Appeals for the Fifth Circuit held in *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), Section 3 of the FAA "was not intended to limit dismissal of a case in the proper circumstances," that is, where all of the issues raised must be submitted to arbitration. *See id.* (collecting authorities).

In the context of this class action, where certain absent class members' claims are subject to arbitration clauses, no useful purpose will be served by staying the pertinent proceedings pending arbitration. In the wake of this Court's decision, the class members subject to enforceable arbitration clauses may decide not to proceed in arbitration. Yet for the reasons recited above, those members' Sherman Act claims—in their entirety—may not be pursued in this forum. Because the entire claim of each relevant class member must be resolved by arbitration, this Court finds that dismissal, rather than a stay of trial, is appropriate. Accordingly, this Court dismisses the actions of those class members whose arbitration clauses have been asserted by the Defendants and deemed by this Court to be enforceable.[11]

---

[11] All of the class action waivers asserted by the Defendants pertain to DuPont contracts. *See* Defs.' Ex. 1 tbl. D, ECF No. 424-1. Moreover, each contract containing a class action waiver also includes an arbitration clause. *See id.*; *see also* Daney Decl. ¶¶ 3, 15, 17-18. This Court has found those arbitration clauses to be valid and enforceable. Accordingly, the class members that entered into class action waivers are already excluded from the class on the basis of their mandatory arbitration provisions, and this Court need not separately consider the enforceability of the asserted class action waivers. However, this Court notes that the Plaintiffs present no reason for finding these class action waivers invalid—apart from the issues they raised regarding the asserted arbitration clauses.

C. Forum Selection Clauses

Based on a similar rationale, Defendants Millennium and Kronos argue that the asserted forum selection clauses should be held enforceable. All of the relevant clauses provide that disputes shall be litigated in forums other than the United States District Court for the District of Maryland.[12] Accordingly, Millennium and Kronos move to dismiss the claims of customers with forum selection clauses based on improper venue.

The United States Court of Appeals for the Fourth Circuit has held that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 855 (D. Md. 2009). This Court has previously noted that under Rule 12(b)(3), "a court is free to look at matters outside of the pleadings, however, the court still must draw all reasonable inferences in the light most favorable to the" nonmoving party. *Costar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 672 (D. Md. 2009) (citation omitted).

In this case, the forum selection clauses limit litigation relating to the purchase agreements to courts other than this Court. *See supra* note 12 & accompanying text. Because the Sherman Act claims in this case involve each customer's purchase of titanium dioxide pursuant to their agreements, the forum selection clauses are triggered. Additionally, after a review of the subject clauses, it is clear by their language that they are meant to be

---

[12] *See, e.g.*, DuPont Ex. 46 at DUPTIO20375190 (designating the forum of Delaware); DuPont Ex. 47 at DUPTIO20375647 (Illinois); DuPont Ex. 54 at DUPTIO20986844 (Geneva); Huntsman Ex. 2 at HILLC005139529 (District Court for the Southern District of Texas, Houston Division, or State District Court of Texas located in Harris County, Texas); Kronos Ex. 16 at KROWW00024416 (The Hague, Netherlands); Kronos Ex. 17 at KROWW00035655 (the state and federal courts in Minnesota); Millennium Ex. 6 (any state or federal court within the State of Washington).

mandatory, not permissive. *See, e.g.*, DuPont Ex. 46 at DUPTIO20375190 ("[T]he courts within Delaware will be the only courts of competent jurisdiction."); Huntsman Ex. 2 at HILLC005139529 ("Buyer and Seller irrevocably submit to the exclusive jurisdiction of the Federal courts of the United States of America located in the Southern District of Texas, Houston Division, or the State District Courts of Texas located in Harris County, Texas.").

These forum selection clauses do not "lose their force in the context of a class action." *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011). Nor are the clauses stripped of enforceability because of the subject matter of this case. Indeed, courts have enforced forum selection clauses in antitrust cases. *See Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718 (2d Cir. 1982); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 497 (S.D.N.Y. 2006). In *Wu*, the District Court for the Southern District of New York confronted a similar issue in a class action alleging copyright infringement, where some class members' contracts contained forum selection clauses. 277 F.R.D. 255. The district court explained that the "best method for managing this issue is to exclude copyright holders whose licensing agreements contain forum selection clauses or [arbitration provisions] from the class definition." *Id.* at 266.

The Plaintiffs contend that the Defendants failed to file a motion challenging venue "before pleading," as is required by Rule 12(b)(3) of the Federal Rules of Civil Procedure. Moreover, the Plaintiffs argue that the Defendants failed to move to dismiss under Rule 12(b)(3), thereby waiving any challenges to venue. However, the Defendants have not waived their right to enforce these clauses, for the same reason that they did not lose their opportunity to challenge the arbitration clauses and class action waivers. *See* Section II.A

*supra.* In short, because the absent class members were not part of this case prior to class certification, the Defendants did not have an earlier opportunity to enforce the forum selection clauses. *See Flat Panel*, 2011 WL 1753784, at *4; *cf. Muhammad*, 108 F. App'x at 765 n.5; *Shelton*, 582 F.2d at 1314-15.

Third, the Plaintiffs contend that the claims in this case do not arise out of the agreements to purchase titanium dioxide, thus the forum selection clauses do not hold force. For example, courts have found that unfair competition claims under federal trademark law were not governed by forum selection clauses in underlying contracts. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 91 (2d Cir. 2009) (holding forum selection clause in licensing contract did not encompass related unfair competition claims, because the trademark claims "do not sound in contract and are not based on rights originating from the licensing agreements"—that is, they "may begin in court without any reference to the contract") (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007)); *Dearborn Indus. Mfg. Co. v. Soudronic Finanz AG*, No. 95-4414, 1997 WL 156589, at *5 (N.D. Ill. Apr. 1, 1997) (same). The Plaintiffs likewise rely on a case in which the District Court for the Northern District of Ohio found that a forum selection clause did not control because the allegations—violations of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") and state tort claims—were "broader than the forum selection clause." *Gen. Envtl. Sci. Corp. v. Horsfall*, 753 F. Supp. 664, 667–68 (N.D. Ohio 1990). That court's reasoning relied mainly on the fact that the plaintiffs brought no contract claims and sought no contract remedies. *Id.* However, these cases involved causes of action—federal trademark or RICO violations—that did not depend on

the existence of a contract. By contrast, the class members of this case have a potential cause of action only if they purchased titanium dioxide from one of the pigment producers, and each member purchased pursuant to a contract.

More importantly, none of the cases cited by the Plaintiffs involve price-fixing allegations under the Sherman Act. As already stated, some courts have enforced forum selection clauses in the context of such claims. *See Bense*, 683 F.2d 718; *Person*, 456 F. Supp. 2d 488. Though the Fourth Circuit has not ruled specifically on this issue, it has permitted the enforcement of arbitration clauses in the context of an alleged antitrust price-fixing conspiracy. *See Cotton Yarn*, 505 F.3d at 278-82. Courts recognize that arbitration clauses and forum selection clauses are similar and therefore admit of similar application. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (reasoning that an arbitration agreement "is, in effect, a specialized kind of forum-selection clause"); *see also Villanueva*, 822 F. Supp. 2d at 739 (noting that "forum selection clauses and arbitration provisions are substantially similar"). The purchase agreements at issue in *Cotton Yarn* were sufficiently related to the Sherman Act claims to give rise to the enforcement of arbitration clauses, 505 F.3d at 278-82; thus, the same reasoning suggests that forum selection clauses in the relevant titanium dioxide purchase agreements encompass the Plaintiffs' Sherman Act claims. For these reasons, the forum selection clauses asserted by the Defendants control.

Finally, the Plaintiffs argue that the forum selection clauses in the Guild CPO contracts, *see* Huntsman Exs. 35-37, cannot be enforced, because the Defendants have not produced contracts for the eighty-three individual class members of the Guild CPO. They also suggest that the contracts are not enforceable because the members did not sign them.

This argument gains no traction. As this Court earlier described, the Guild CPO is an organization made up of paint and coatings manufacturers and providing cooperative purchasing services for its members. *See* Quinn Decl. ¶ 7. The purpose of the Guild CPO was to negotiate for its members favorable prices for titanium dioxide. *See* Defs. Ex. 5, Kerr Dep. 35. Members paid a membership fee to purchase titanium dioxide under contracts that the Guild CPO negotiated. *Id.* at 48-51. The Guild CPO contracts expressly indicate that the agreement covers the Guild CPO members. *See, e.g.*, Huntsman Ex. 35 at HILLC000581535. Thus, there is no question that the class members who participated in the Guild CPO are bound by these contracts, including their mandatory forum selection clauses.

For all of these reasons, this Court finds that the asserted forum selection clauses are enforceable. Accordingly, this Court dismisses the claims of customers with forum selection clauses for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.[13]

### D. Jury Trial Waivers

The final set of clauses asserted by the Defendants Millennium and Kronos are jury trial waivers found in some of the class members' contracts. Based on these clauses, the Defendants move this Court to strike the jury trial demands of the relevant class members, pursuant to Rule 39(a) of the Federal Rules of Civil Procedure.

---

[13] The class members whose titanium dioxide contracts contain valid and enforceable forum selection clauses precluding them from this litigation are listed in the Defendants' Exhibit 1, attached to their Motion to Compel Arbitration and Stay Proceedings. *See* Defs.' Ex. 1 tbls. B & C, ECF No. 424-1.

Though the right to a jury trial under the Seventh Amendment is a fundamental one, it "can be knowingly and intelligently waived by contract." *Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir. 1986). There is, however, a strong federal policy favoring jury trials. *Mowbray v. Zumot,* 536 F. Supp. 2d 617, 620 (D. Md. 2008). For this reason, courts have typically "indulge[d] every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393 (1937). Accordingly, the Fourth Circuit has held that a party seeking to enforce a contractual provision waiving the right to a jury trial must establish that the waiver was knowing and voluntary. *Leasing Serv. Corp.,* 804 F.2d at 833. Factors relevant to this determination are (1) the relative bargaining power of the parties; (2) the conspicuousness of the provision; and (3) whether the provision is comprehensible. *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 530 (D. Md. 2011).

The Defendants assert that forty-three titanium dioxide customers participating in the class signed contracts including enforceable jury trial waivers. *See* Defs.' Ex. 1 tbl. E, ECF No. 424-1. These clauses are found only in contracts involving Huntsman and Kronos. *Id.* It is important to note that Kronos's standard supply agreements did not contain these clauses, but two Kronos customers requested that they be included. *See* Sanzalone Decl. ¶ 7.

Upon review of these clauses, this Court finds that the relevant class members knowingly and voluntarily waived their jury trial rights. First, there is no concern in this case about the relative bargaining power of the parties—the customers purchasing titanium dioxide are either paint companies that individually negotiated with the pigment producers or, in a few cases, members of the Guild CPO, who were represented by an organization whose purpose was to negotiate for favorable contract terms on their members' behalf.

Thus, the customers stood on par with Huntsman and Kronos. Moreover, the clauses are conspicuous. In nearly all contracts at issue, the jury waiver language is printed in all capital letters, so that the terms are readable and obvious. *See, e.g.*, Huntsman Exs. 27 at HILLC000581439, 30 at HILLC1388027, 40 at HILLC583762; Kronos Ex. 18 at KROWW00626614. The clauses are often set off as a separate paragraph in the contract. *See, e.g.*, Huntsman Ex. 35 at HILLC00581544; Kronos Ex. 18 at KROWW00626614. Moreover, the headings in many of the asserted contracts indicate that the contract section contains a jury trial waiver. *See* Huntsman Ex. 23 at HILLC006938487; Kronos Ex. 18 at KROWW00626614. Finally, the jury waivers are comprehensible, clearly indicating that the provision is a waiver of the parties' rights to proceed in litigation before a jury. *See, e.g.*, Huntsman Ex. 35 at HILLC00581544 ("EACH PARTY TO THIS AGREEMENT WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY"); Kronos Ex. 18 at KROWW00626614 ("THE PARTIES WAIVE ALL RIGHTS TO A JURY TRIAL IN CONNECTION WITH OR ARISING FROM THIS PO.").

The Plaintiffs do not contest that these jury waivers were knowing and voluntary. Rather, they suggest that the Defendants have waived their right to challenge the jury trial demands, as Rule 12(f) of the Federal Rules of Civil Procedure requires a party to move to strike matters from a pleading at the initial stages of litigation. Moreover, the Plaintiffs repeat their argument that the Sherman Act claims in this case do not arise out of the class members' purchase agreements, thus the jury waivers are not applicable. For the reasons explained in Sections II.A through C of this Memorandum Opinion, these arguments fail.

First, because the absent class members were not part of this case prior to class certification, the Defendants raised the issue of jury waivers at the appropriate time—once the relevant titanium dioxide purchasers became members of the class. *See Flat Panel*, 2011 WL 1753784, at *4; *cf. Muhammad*, 108 F. App'x at 765 n.5; *Shelton*, 582 F.2d at 1314-15. Second, because the Plaintiffs' price-fixing claims involve each class member's agreements to purchase titanium dioxide, the jury waivers control. *Cf. Cotton Yarn*, 505 F.3d at 278-82.

Accordingly, this Court finds that the jury trial waivers asserted by the Defendants Millennium and Kronos are enforceable. Pursuant to Rule 39(a) of the Federal Rules of Civil Procedure, this Court strikes the jury trial demands of the relevant class members.[14]

### III. Amendment to the Class Definition under Rule 23

Finally, the Defendants argue that based on the effect of enforcing the contractual provisions discussed in Section II this Memorandum Opinion, the class definition must be amended. Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). This Court has previously held that a federal district court possesses "broad discretion in determining whether to modify or even decertify a class." *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 162 (D. Md. 2008) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.")). In fact this Court has "an affirmative obligation to ensure that the class membership remains at all

---

[14] The class members whose titanium dioxide contracts contain valid and enforceable jury trial waivers precluding them from this litigation are listed in the Defendants' Exhibit 1, attached to their Motion to Compel Arbitration and Stay Proceedings. *See* Defs.' Ex. 1 tbls. C & E, ECF No. 424-1.

times consistent with the underlying facts and procedural posture of the case." *Id.* at 162-63 (citing *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 . . . the district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.")); *Chisolm v. TranSouth Fin. Corp.* 194 F.R.D. 538, 544 (E.D. Va. 2000) (same).

The Defendants argue that the class is improperly certified for two reasons. First, the Defendants argue that many class members are differently situated in their contractual relationships with the Defendants and their alleged coconspirators, such that the claims of the representative Plaintiffs are not typical of the class. Second, individual issues related to those contractual relationships predominate over any questions of law and fact that are common to all class members, rendering a class action an inferior method by which to adjudicate all asserted claims. This Court concludes that, because various contractual provisions put certain class members in different legal positions from the rest of the class, the class definition must be amended.

Pursuant to Rule 23(a), a class may be properly certified only if "there are questions of law or fact common to the class," and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). The "commonality" and "typicality" requirements of Rule 23(a) both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13. Some courts have held that where

certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroyed the commonality and typicality of the class. *See Pablo v. ServiceMaster Global Holdings Inc.*, No. C 08-03894, 2011 WL 3476473, at *3 (N.D. Cal. Aug. 9, 2011) (denying renewed motion for class certification where litigation would be devoted to determining which portion of putative class signed arbitration agreements); *Renton v. Kaiser Found. Health Plan*, No. C00-5370RJB, 2001 WL 1218773, at *5-6 (W.D. Wash. Sept. 24, 2001) (finding plaintiffs failed to meet commonality and typicality requirements in part due to class members' varying contractual provisions requiring arbitration or exhaustion of administrative remedies).

In this case, the members of the current class that are subject to arbitration, forum selection, or class action or jury waiver clauses are in a different legal position than those class members whose contracts contain no such provisions. While the claims of the named Plaintiffs are typical of the class, to the extent that all claims arise out of the purchases of titanium dioxide from the Defendants and their alleged coconspirators, many of the current class members are subject to contractual provisions that expressly foreclose their ability to proceed in this case. The claims of the named Plaintiffs are not typical of the claims of those class members against whom the Defendants now seek to enforce such contractual provisions.[15]

---

[15] The contract of named Plaintiff Haley Paint Company contains arbitration, forum selection, and jury waiver provisions. However, the Defendants have expressly waived their right to enforce that provision. Because the clauses in Plaintiff Haley Paint Company's contracts are not being enforced, its claim is not typical of other class members whose contractual provisions the Defendants seek to enforce.

The Plaintiffs argue that, because no class member is subject to an arbitration clause with all original Defendants, and no contract covers the entire Class Period, each member of the current class has at least some purchases of titanium dioxide that are not covered by the contractual provisions at issue. This argument rings hollow. The relevant inquiry is not whether *purchases* of titanium dioxide are typical of one another, but rather whether the *entities* that made the purchases meet the requirements for class certification. Therefore, the class as currently defined does not meet the commonality and typicality requirements of Rule 23(a).[16]

Furthermore, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The likely difficulty in managing a class action may be a pertinent factor in determining whether common issues predominate, and whether a class action is a superior method of adjudication. Fed. R. Civ. P. 23(b)(3)(D). As the Court of Appeals for the Ninth Circuit has held, issues regarding contractual provisions that vary between class members may predominate over common questions of law or fact. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (finding that "predominance [may be] defeated because [a defendant's] intent to seek arbitration of the class would necessitate a state-by-state review of contract [ ] jurisprudence.").

---

[16] The Defendants also argue that the named Plaintiffs cannot meet the requirement in Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Because this Court finds that the class as currently defined fails to meet the commonality and typicality requirements of Rule 23(a)(2)-(3), it need not address the Defendants' second contention.

Here, individual questions of law and fact as to the enforcement of provisions of class members' contracts predominate over any common issues. The likely difficulties in managing individual questions of contract formation and interpretation are especially pertinent to this finding. *See* Fed. R. Civ. P. 23(b)(3)(D). For each class member who challenges the applicability of one or more of the contractual provisions at issue, this Court could be forced to conduct extensive analysis regarding choice of law, and contract formation and interpretation, for each contract. This would likely total hundreds of individual invoices. This is precisely the type of class-member-by-class-member and contract-by-contract inquiry that the Ninth Circuit determined to be predominant over any common questions of law or fact. *See Lozano*, 504 F.3d at 728 (affirming district court's finding that predominance was defeated because arbitration clauses would necessitate state-by-state review of contract unconscionability jurisprudence).

In sum, the class as currently defined does not meet Rule 23's requirements of commonality, typicality, and predominance. Accordingly, the class definition will be amended to read as follows:

> All persons and entities who purchased titanium dioxide in the United States directly from one or more of Defendants Millennium and Kronos, or non-parties DuPont, Huntsman, or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, between February 1, 2003, and the present ("Class Period"), except those persons and entities who purchased titanium dioxide in the United States directly from one or more of Defendants Millennium and Kronos, or non-parties DuPont, Huntsman, or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, during the Class Period pursuant to a contract containing one or more of the following: (i) an arbitration clause, (ii) a clause restricting the litigation of disputes to courts other than the U.S. District Court for the District of Maryland, (iii) a class action waiver clause, or (iv) a provision waiving the right to a jury trial.

Also excluded from the Class are Defendants, their coconspirators, parent companies, predecessors, subsidiaries and affiliates, and all governmental entities.

Based on this amended class definition, all purchasers listed in Defendants' Exhibit 1, tables A through E, ECF No. 424-1, will be excluded from the class.

<u>CONCLUSION</u>

For the reasons stated above, the Defendants' Motion to Compel Arbitration and Stay Proceedings, Motion to Dismiss for Improper Venue, Motion to Strike, and Renewed Motion to Amend the Class Definition (ECF No. 423) is GRANTED.

As a result, the class members whose titanium dioxide contracts contain valid and enforceable arbitration clauses, as set forth in Table A of Defendants' Exhibit 1, ECF No. 424-1, are ORDERED, pursuant to Section 4 of the Federal Arbitration Act, to pursue their Sherman Act claims, if at all, in arbitration, and their claims in this litigation are hereby DISMISSED. The claims of class members whose titanium dioxide contracts contain valid and enforceable forum selection clauses, as set forth in Tables B and C of Defendants' Exhibit 1, are DISMISSED for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Further, the jury trial demands of class members whose titanium dioxide contracts contain valid and enforceable jury trial waivers, as set forth in Tables E and C of Defendants' Exhibit 1, are STRICKEN, and they are not members of the class as now defined.

Finally, pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, the class definition is amended as set forth in the accompanying Order, as well as in Section III of this Memorandum Opinion.

A separate Order follows.

Dated:          August 26, 2013          _____/s/_____
                                         Richard D. Bennett
                                         United States District Judge