IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | * | |
| | * | |
| | * | |
| *   *   *   *   *   *   *   * | * | CIVIL ACTION NO.: RDB-10-0318 |
| | * | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | * | |
| | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This class action concerns an alleged price-fixing conspiracy in the market for titanium dioxide.[1]  Plaintiff class representatives Haley Paint Company and Isaac Industries, Inc., and Intervening Plaintiff East Coast Colorants, LLC d/b/a Breen Color Concentrates, which represent a class of 537 entities (collectively, "Plaintiffs"), claim that Defendants Huntsman International, LLC ("Huntsman"), E.I. DuPont de Nemours and Company ("DuPont"), Kronos Worldwide, Inc. ("Kronos"), and Cristal USA, Inc., formerly known as Millennium Inorganic Chemicals, Inc. ("Cristal")[2] (collectively, "Defendants"), together with non-party Tronox Inc. ("Tronox"),[3] engaged in an unlawful conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, to fix, raise, or maintain the price of titanium dioxide in the United States.  Plaintiffs allege that as a consequence of the unlawful

---

[1] Titanium dioxide ("TiO2") is a "dry chemical powder that is the world's most widely used pigment for providing whiteness, brightness, and opacity . . . to many products, particularly paints and other coatings." *See* Mem. Op. Granting Mot. for Class Certification 2, ECF No. 337 (internal quotation marks omitted).

[2] In previous opinions of this Court, Cristal has been referred to as "Millennium." *See, e.g.*, Mem. Op. Denying Mots. for Summ. J., ECF No. 498.  Because the documents related to the proposed Class Settlement Agreements currently at issue refer to Cristal as such, this Court will do the same.

[3] The Plaintiffs allege that Tronox was a co-conspirator of Defendants.  Tronox filed for Chapter 11 bankruptcy in January 2009, and is therefore precluded from being named as a defendant.  *See* 11 U.S.C. § 362(a).

conspiracy, the Defendants were successful in charging artificially inflated prices for titanium dioxide.

This case was scheduled for a four-week jury trial that was to commence on September 9, 2013.  However, presently pending before this Court are Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendant Huntsman International, LLC (ECF No. 480), Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with E.I. DuPont de Nemours and Company (ECF No. 496), and Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with Defendants Cristal USA, Inc. and Kronos Worldwide, Inc. (ECF No. 529) (collectively, "Motions for Preliminary Approval"). Counsel having submitted the proposed terms of settlement, this Court conducted a preliminary fairness hearing on September 10, 2013, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  For the reasons stated on the record at the hearing, this Court entered an Order Granting Plaintiffs' Motions for Preliminary Approval of Class Action Settlements with Defendants Huntsman International, LLC, E.I. DuPont de Nemours and Company, Cristal USA, Inc. and Kronos Worldwide, Inc., Approving Form and Manner of Notice, and Scheduling Final Fairness Hearing (ECF No. 533).  This Memorandum Opinion supplements this Court's reasons for the preliminary approval of the class action settlements.

<u>BACKGROUND</u>

The facts of this case are fully set forth in the Memorandum Opinions issued on August 28, 2012 (ECF No. 337) and on August 14, 2013 (ECF No. 498).  An abbreviated factual summary is repeated here to introduce the pending motions.

Case 1:10-cv-00318-RDB   Document 534   Filed 09/12/13   Page 3 of 13


Plaintiffs claim that Defendants, who are the market leaders in the production of titanium dioxide, conspired to fix, raise, maintain, and stabilize the price of titanium dioxide when demand for the product declined. The conspiracy is alleged to have occurred from February 1, 2003, through the present.

On February 9, 2010, the Plaintiffs filed suit, and they submitted an Amended Complaint (ECF No. 51) on April 12, 2010, initiating this class action lawsuit. The Plaintiffs' Amended Complaint alleges a price-fixing conspiracy in violation of the Sherman Act, 15 U.S.C. § 1. On August 28, 2012, this Court issued a Memorandum Opinion (ECF No. 337) certifying a class of titanium dioxide purchasers who are alleged to have sustained injury when they paid artificially inflated prices for the product. The class is defined as "[a]ll persons and entities who purchased titanium dioxide in the United States directly from one or more Defendants or Tronox,[4] or from any predecessors, parents, subsidiaries, or affiliates thereof, between February 1, 2003, and the present." Order Granting Mot. Certify 2, ECF No. 338.

In April 2013, the Defendants, jointly and individually, moved for summary judgment. On August 6, 2013, before ruling on the Motions for Summary Judgment, this Court ordered a stay of all proceedings between the Class Plaintiffs and Defendants DuPont and Huntsman, as those parties reached agreements in principle to settle and release the class claims against DuPont and Huntsman. *See* Stay Order, ECF No. 484. In a Memorandum Opinion and Order issued on August 14, 2013 (ECF Nos. 498 & 499), this Court denied the Motions for Summary Judgment as they pertained to Defendants Cristal and Kronos. The

---

[4] The settlement of this case has no effect on Tronox's bankruptcy proceedings, and no settlement funds will be available to Tronox's creditors.

Plaintiffs faced a unique burden to withstand a motion for summary judgment in an antitrust case involving allegations of price-fixing.   In the antitrust context, evidence of the Defendants' parallel conduct alone is insufficient to defeat a motion for summary judgment; the Plaintiffs were required to demonstrate the existence of "plus factors" that tend to rule out procompetitive explanations for behavior that may have had anticompetitive effects.   In the Memorandum Opinion denying the motions for summary judgment, this Court set forth in detail the evidence presented by the Plaintiffs in support of their claims, including numerous parallel price increase announcements, the structure of the market, economic conditions, acts by the Defendants against their economic interests, and a high level of inter-firm communication that could lead to the inference that there was an actual agreement not to compete.   This Court noted that while the case rested entirely on circumstantial evidence, the Plaintiffs nevertheless alleged sufficient facts that tended to exclude the inference that there were pro-competitive explanations for Defendants' conduct, such that the Defendants' were not entitled to a grant of summary judgment (ECF No. 498).

On August 26, 2013, this Court issued a Memorandum Opinion and Order (ECF Nos. 507 & 508) granting Defendants' Motion to Amend the Class Definition as it pertained to Defendants Cristal and Kronos.[5]   Subsequently, the Class Plaintiffs and Cristal agreed in principle to settle, and on September 5, 2013, this Court entered a stay as to Class Plaintiffs and Cristal (ECF No. 521).   Then, on the eve of the trial of this case, the Class Plaintiffs settled in principle with Kronos, and this Court stayed all proceedings with respect to Class

---

[5] Although the Class definition was amended, as explained more fully below in Part A of this Memorandum Opinion, the proposed Class Settlement Agreements apply to the Class as defined in the Order Granting the Motion Certify the Class of August 28, 2012 (ECF No. 338).

Plaintiffs and Kronos on September 9, 2013 (ECF No. 528).[6]   The parties have submitted Proposed Settlement Agreements pursuant to which the Defendants will pay a total of $163.5 million into a common settlement fund.[7]   No Defendant will admit liability, and all claims of class members will be released.   The parties request that this Court: (1) preliminary approve the proposed Settlement Agreements and Releases contained in the respective Motions (ECF Nos. 480-3, 496-3 & 530-2) (collectively, "Settlements"); (2) approve and allow dissemination of the Notice, Summary Notice, and Proof of Claim forms; (3) appoint Gilardi & Company, LLC as the Settlement Administrator; and (4) schedule the final fairness hearing and related deadlines.

<u>STANDARD OF REVIEW</u>

Judge Messitte of this Court has recently set forth the standard of review at this preliminary approval stage.   "Review of a proposed class action settlement generally involves two hearings."   *In re Am. Capital S'holder Derivative Litig.*, No. PJM-12-2424, 2013 U.S. Dist. LEXIS 90973, at *7 (D. Md. June 28, 2013) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004) (footnote omitted)).   The first is a "preliminary fairness" hearing, where the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."   *Id.*   The second is the "fairness" hearing, where the court assesses whether the proposed settlement is "fair,

---

[6] As a result of this Order, all actions were stayed, including Case Nos. RDB-10-0318 and RDB 10-0323.

[7] Huntsman will pay $6.5 million, DuPont will pay $72 million, Cristal will pay $50 million, and Kronos will pay $35 million.

reasonable, and adequate" for all class members. *Id.* (quoting Manual for Complex Litigation (Fourth) § 21.634). At this juncture, the Court is concerned with the first hearing.

Although the court's "essential inquiry" for both hearings is the same, *i.e.*, "whether the proposed settlement is fair, adequate, and reasonable," *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983), the court's goal at the preliminary fairness hearing is to assess whether there is "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Id.* (quoting Manual for Complex Litigation § 1.46 (5th ed. 1982)). Put differently, the court's inquiry is whether there has been a basic showing that the Proposed Settlement Agreements are "sufficiently within the range of reasonableness so that notice . . . should be given." *In re Am. Capital S'holder Derivative Litig.*, 2013 U.S. Dist. LEXIS 90973, at *8 (citation and internal quotation marks omitted).

The preliminary fairness review considers (1) the "fairness" of the settlement, and (2) the "adequacy" of the settlement. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1385. The "fairness" prong is concerned with the procedural propriety of the proposed settlement agreement, while the "adequacy" prong focuses on the agreement's substantive propriety. *In re Am. Capital S'holder Derivative Litig.*, 2013 U.S. Dist. LEXIS 90973, at *9. With regard to the "fairness" element, the purpose of the inquiry is to protect against the danger of counsel – who are commonly repeat players in larger-scale litigation – from "compromising a suit for an inadequate amount for the sake of insuring a fee." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383 (quoting *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979)). The court thus considers the following

6

factors: whether the proposed settlement is the product of good faith bargaining at arm's length; the posture of the case at settlement; the extent and sufficiency of discovery conducted; counsel's experience with similar litigation and their relevant qualifications; and any pertinent circumstances surrounding the negotiations.   *See id.* at 1383-85 (internal citations and quotation marks omitted); *In re Lupron Mktg. & Sales Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

As to the "adequacy" prong, the court "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement."   *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384 (quoting *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. at 315-16)).   Although the court endeavors not to try the case on its own, it remains tasked with carefully assessing the facts and applicable law to ensure that the settlement is proportionate to the strength (and weakness) of the plaintiffs' case.   *Id.*   The court considers the following factors: "the relative strength of the plaintiffs' case on the merits," *id.* (quoting *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. at 315-16); weaknesses in the plaintiffs' case, including proof-related obstacles or particularly strong defenses; the cost of additional litigation; defendants' ability to pay a judgment; and any opposition to the settlement. *See id.*; *In re Lupron Mktg. & Sales Litig.*, 345 F. Supp. 2d at 137-38.

<u>ANALYSIS</u>

Based on the foregoing factors, this Court preliminarily approves the Settlements for the reasons stated below.

**A.  The Proposed Settlement Agreements Are Preliminarily Approved**

First, the procedure by which the parties reached the Settlements meets the fairness prong.  The Settlements are the product of good faith, arm's length bargaining that has taken place over more than three years of litigation.  During that time, the parties engaged in exhaustive, voluminous discovery, involving scores of depositions and millions of documents.  As to the posture of the case at the time of settlement, the last of the agreements in principle to settle was not reached until the very eve of trial; this Court held several hearings on motions concerning the admissibility of evidence just before the last settlement between Class Plaintiffs and Defendant Kronos.  This case was hard fought by experienced, highly qualified counsel on both sides.  Their negotiations certainly raise no suspicion of collusion.

Furthermore, weighing the likelihood of recovery against the amount offered at settlement, the Settlements meet the adequacy prong.  As to the strength of the Plaintiffs' case, the Plaintiffs survived Motions for Summary Judgment brought by Defendants Cristal and Kronos, which required overcoming a special evidentiary burden.  As discussed in the Memorandum Opinion Denying the Motions for Summary Judgment (ECF No. 498), the Plaintiffs presented significant evidence of parallel conduct, as well as "plus factors" that tended to exclude the inference that the Defendants were acting in a pro-competitive manner.  Still, the Plaintiffs' case was based entirely on circumstantial evidence—a verdict in

favor of the Plaintiffs was not assured by any means.  Against the uncertainty inherent in proceeding to a verdict, and the cost of a month long trial, the significant dollar value of the Settlements secured by the Class Plaintiffs militates strongly in favor of a finding that the Proposed Settlement Agreement is proportionate to the strength.

It is also noteworthy that all Defendants have agreed to settle with the class as defined in this Court's Order Granting the Motion to Certify the Class of August 28, 2012 (ECF No. 338).  The class definition was recently amended as a result of this Court's Memorandum Opinion and Order of August 26, 2013 (ECF Nos. 507 & 508).  Although Huntsman and DuPont settled before amendment of the class definition, *see* Stay Order, ECF No. 484, Defendants Cristal and Kronos had successfully precluded a large portion of the class from litigating against them.  Based on certain clauses contained in class members' contracts with Defendants, the number of class members was reduced from 537 to approximately 217.  Nevertheless, Defendants Cristal and Kronos have agreed to forego enforcement of the contractual provisions that resulted in the re-definition of the class, allowing all members of the original class to gain the benefit of the Settlements.[8]  In sum, for the reasons stated, the Settlements appear procedurally fair and substantively adequate.

---

[8] The class as defined as of August 28, 2012 has already been noticed of their right to opt out of this case.  The parties agree that no second opportunity to request exclusion is necessary.  Therefore, this Court concludes, in exercising its discretion, that no second opt-out period will be required in order to approve the Settlements.  Rule 23(e)(4) ("If the class action was previously certified under Rule 23(b)(3), the court *may* refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.") (emphasis added).

### B.  The Proposed Notice, Summary Notice, and Proof of Claim Are Approved

Having made a preliminary determination that the Settlements are fair and adequate, this Court finds that it is appropriate to issue notice to "all class members who would be bound by the proposal" pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure. Notice of a proposed settlement must inform class members of the following:  (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  *See* 4 Newburg on Class Actions § 8.32 (4th ed. 2002).  The form of notice is "adequate if it may be understood by the average class member."  *Id.* § 11.53.  Under Rule 23(c)(2)(B), this Court must "direct to class members the best notice practicable under the circumstances."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

The parties submitted a detailed proposed Notice, to be mailed individually to identifiable class members, which provides the required information as to all four Settlements in a clear manner.[9]  Likewise, the proposed Summary Notice that will be posted in the Internet and published in national periodicals is detailed and clear.  The proposed manner of publication of the Summary Notice constitutes a reasonable effort to provide notice to class members who cannot be individually identified.  Fed. R. Civ. P. 23(c)(2)(B); Manual for Complex Litigation (Fourth) § 21.311.  Furthermore, the proposed Proof of

---

[9] The proposed Notice also informs class members that Class Counsel intend to seek attorneys' fees equal to one third of the settlement fund, giving class members adequate notice and an opportunity to object.  *See* Notice, ECF No. 530-3 at 12.  On a preliminary basis, this Court notes that a one-third contingent fee arrangement is a standard practice in this country, and Class Counsel's intention to request that portion of the settlement fund as attorneys' fees does not shock the Court. Additionally, this Court finds that the proposed service awards to the named Plaintiffs, additional to any *pro rata* share of the settlement fund to which they may be entitled, are reasonable in light of the named Plaintiffs' participation in this case.

Claim form outlines a practicable procedure for class members to demonstrate their entitlement to a *pro rata* share of the settlement fund, either by providing information themselves, or by relying on Class Counsel to furnish the relevant data that has been compiled over the course of this litigation.[10]  In sum, the form and content of the Notice, Summary Notice, and Proof of Claim, as well as the proposed manner for their dissemination, is the best notice to the class that is practicable under the circumstances.

### C.  Gilardi & Company, LLC is Approved as the Settlement Administrator

To effectuate the dissemination of the Notice, Summary Notice, and Proof of Claim to the Class, the Plaintiffs request that this Court appoint Gilardi & Company, LLC ("Gilardi") as the Settlement Administrator.  This Court previously appointed Gilardi as the Claims Administrator in this case, for the purpose of providing notice of the litigation as a whole to the class.  The parties agree that Gilardi has experience in class actions in a variety of areas of the law and is competent to manage the administration of these Settlements. Gilardi will mail the Notice and Proof of Claim, publish the Summary Notice, continue to maintain the website www.tio2antitrustlitigation.com, and with the oversight of Class Counsel, audit the Proof of Claim forms that are timely returned.  For those reasons, Gilardi is approved as the Settlement Administrator.

---

[10] As to Defendants DuPont and Kronos, if any amount of their contributions to the settlement fund remains unclaimed after payment to class members who submit timely Proofs of Claim, such amount will revert back to the DuPont and Kronos.  As to Defendants Huntsman and Cristal, no *cy pres* amount is anticipated, however the parties will identify an appropriate non-party to whom any such amount will be paid.  This Court preliminarily finds these arrangements to be reasonable.

**D. The Proposed Schedule for the Final Fairness Hearing is Approved**

Finally, the Plaintiffs move this Court to schedule the final fairness hearing and set related deadlines.   As requested by the parties, the final fairness hearing as to all four Settlements will take place on Monday, November 25, 2013 at 10 a.m.   The related deadlines requested by the parties, as listed in this Court's Order Granting Preliminary Approval (ECF No. 533), shall govern the notice and objection procedure.   This Court concludes that the requested schedule is adequate to effectuate notice and allow time for filing of objections. As part of that procedure, any person who files a timely objection will be required to appear in court during the final fairness hearing.   In addition, all Defendants have already, or will by September 13, 2013, file the notices of the Settlements required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.   All litigation proceedings shall remain stayed until this Court finally approves the Settlements and enters a final judgment dismissing this case.

CONCLUSION

For the reasons stated on the record at the hearing on September 10, 2013, and for the additional reasons set forth in this Memorandum Opinion, this Court finds that the proposed Settlement Agreements and Releases (ECF Nos. 480-3, 496-3 & 530-2) appear to be within the range of fairness, adequacy, and reasonableness such that notice should be disseminated to the Class and a final fairness hearing scheduled.  Accordingly, the Motions for Preliminary Approval of Class Action Settlement Agreements (ECF Nos. 480, 496 & 529) have been GRANTED.

A separate implementing Order (ECF No. 533) has been entered.


Dated:  September 11, 2013                          _____/s/_____
                                                                      Richard D. Bennett
                                                                      United States District Judge