**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**(Northern Division)**

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | No. 10-CV-00318-RDB |
| This Document Relates To:<br>All Actions | |

**MEMORANDUM IN SUPPORT OF MOTION**
**TO INTERVENE AND UNSEAL DOCUMENTS**

Movants Los Gatos Mercantile, Inc. d/b/a Los Gatos Ace Hardware, Fred Swaim, Inc. d/b/a Quality Auto Parts; Ace Hardware of South Walton, Inc.; Lexington Home Center, LLC; R.F. Cole, Inc. d/b/a Brewers Paint Center; Cusimano Carstar, Inc.; and The Carpet Shoppe, Inc. ("Indirect Purchaser Plaintiffs" or IPPs) are the plaintiffs in *Los Gatos Mercantile, Inc., et al. v. E.I. DuPont de Nemours & Co., et al,* No. 3:13-cv-1180-WHO (hereinafter the "California Litigation"), a putative class action law suit pending in the Northern District of California. *See* Ex. A, Complaint for Damages, Equitable and Injunctive Relief ("Indirect Purchaser Complaint"). Indirect Purchaser Plaintiffs seek damages from manufacturers/producers of titanium dioxide who allegedly engaged in illegal anti-competitive conduct that has imposed economic harm on indirect purchasers of titanium dioxide in the United States and allege the same conspiracy that Plaintiffs Haley Paint Company; Isaac Industries, Inc.; and East Coast

Colorants LLC ("Direct Purchaser Plaintiffs" or DPPs) allege in the litigation before this Court.

On July 19, 2013, the Court in the California Litigation entered an order contemplating that Defendants E.I. DuPont de Nemours and Company; Huntsman International, LLC; Kronos Worldwide, Inc.; and Millennium Inorganic Chemicals, Inc. (now known as Cristal USA, Inc. ("Defendants") produce "all pleadings, motions, exhibits, and reports filed under seal or in redacted form in the Direct Purchaser Case for which no producing plaintiff or third party has raised an objection and sought appropriate relief."  *See* Ex. B, Order Regarding Production of Documents and Setting Case Management Conference.  Direct Purchaser Plaintiffs objected to this production and obtained a protective order from this Court on August 27, 2013.  *See* Order Granting Motion for a Protective Order (D.E. 512).  The Court's order provided that its ruling "shall be without prejudice to either side to address its reconsideration, no less than sixty (60) days from the date of this Order," in light of the impending trial.  *Id*. at 2.  The Court also noted at the hearing on August 26, 2013 that, "if this case suddenly . . . resolves itself in two days and not four weeks, certainly you can so notify me . . . , and I'll certainly be prepared to move my calendar up in terms of when I'll reconsider the matter."  Ex. C, Transcript of Proceedings at 12 (Aug. 26, 2013) ("Hearing Transcript").

As this Court is aware, DPPs have preliminarily settled all claims with Defendants.  The trial date was vacated, preliminary approval of all settlements was granted on September 10, 2013, and the case has been stayed except as to settlement proceedings.  Accordingly, IPPs now move this Court to intervene for the limited purpose of seeking access to the following:

- Memorandum in Support of the Motion for Class Certification and Appointment of Class Counsel (D.E. 247), response in opposition thereto (D.E. 293), reply (D.E. 306), and all accompanying exhibits;

- Memorandum in Support of Defendants' Motion to Amend the Class Definition (D.E. 352), the response in opposition thereto (D.E. 360), the reply (D.E. 362), and all accompanying exhibits;

- Memorandum in Support of Defendants' Joint Motion to Exclude Expert Testimony (D.E. 410), the response thereto (D.E. 413), the reply (D.E. 415), and all accompanying exhibits;

- Memorandum in Support of Defendants' Motion to Compel Arbitration Motion (D.E. 423-428, 485), the response thereto (D.E. 497), and all accompanying exhibits;

- Memoranda in Support of Defendants' Motions for Summary Judgment (D.E. 430, 433-36, 438, 440-41, 443), the response in opposition thereto (D.E. 451-52, 455), the reply (D.E. 456-60), and all accompanying exhibits; and

- Plaintiffs' Motion in Limine (D.E. 471), Defendants' Motions in Limine (D.E. 473, 477-79), the responses in opposition thereto (D.E. 487-94), and all accompanying exhibits.

In the alternative, IPPs ask this Court to, upon granting IPPs' motion to intervene, unseal the aforementioned documents, which are judicial records to which the public has a right of access under the First Amendment of the United States Constitution and the common law of the State of Maryland. *See In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (holding that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.") (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988)).

## ARGUMENT

### A. Under Rule 24(b), the Court Should Grant Indirect Purchaser Plaintiffs Leave to Intervene for the Limited Purpose of Seeking Modification to the Protective Order.

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Courts

routinely permit litigants in collateral actions to intervene for the limited purpose of seeking modification to a protective order so they may gain access to protected discovery materials for use in the collateral litigation.  *See*, *e.g.*, *Bryte v. Sunbeam Products, Inc.*, 118 Fed. Appx. 693 (4th Cir. 2004); *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr.* ("*EEOC*"), 146 F.3d. 1042, 1045 (D.C. Cir. 1998); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d. Cir. 1994); *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F. 2d 1424, 1427 (10th Cir. 1990), *cert. denied sub nom.*, Am. Special Risk Ins. Co. v. Rome & Haas Co.,* 498 U.S. 1073 (1991); *Meyer Goldberg v. Fisher Foods*, 823 F.2d 159, 162 (6th Cir. 1987); *In re: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 317 (D. Conn. 2009); *Phillips v. Goodyear Tire & Rubber Co.,* 2007 WL 3245015, *2 (S.D. Cal. October 31, 2007); *In re: Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333 (E.D. Pa 2004).

"The requirements for permissive intervention are: (1) an independent basis of subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  *In re: Linerboard Antitrust Litigation*, 333 F. Supp. at 338-39.  However, IPPs "need not demonstrate an independent basis of subject matter jurisdiction" because they are "not ask[ing] the district court to exercise jurisdiction over an additional claim on the merits."  *Id*. at 339. Moreover, the remaining requirements are "interpreted flexibly when a non-party seeks intervention for the limited purpose of modifying a protective order," and IPPs easily satisfy both.  *Id*.

### 1. Indirect Purchaser Plaintiffs' Motion is Timely.

The California Litigation is at an early stage, and the requested materials will advance the litigation.  DPPs' settlements with Defendants do not negate IPPs' timeliness as there is a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated."  *Id*. (citing *Pansy*, 23 F.3d at 778).  In any event, this Court

specifically ordered IPPs not to file a motion to intervene when DPPs first filed their Emergency Motion for Protective Order, noting that the Court had numerous pretrial motions on its record that took priority. Ex. C, Hearing Transcript at 14 ( stating that, "[i]n terms of a motion to intervene, that's probably the last thing I'd like for you to file" and "[t]here's no reason to intervene at this time").  IPPs respectfully observed the Court's request.  The Court's rulings on DPPs' motion for protective order, and IPPs' motion to intervene in this matter, are now ripe for consideration by this Court.

    **2.**    **The Indirect Purchaser Complaint Raises Common Issues of Law and Fact.**

Indirect Purchaser Plaintiffs also satisfy the commonality requirement. "Courts have regularly held this requirement satisfied if the movant raises a common question in a suit in another jurisdiction." *In re: Linerboard Antitrust Litigation*, 333 F. Supp. 2d at 339 (citing *EEOC*, 146 F. 3d. at 1047).  The Indirect Purchaser Complaint alleges the same anti-competitive conspiracy that is at the heart of this action.  IPPs further seek similar relief as DPPs under the Sherman Act as well as state antitrust and consumer protection laws.  Thus, this prong of Rule 24 is satisfied.

    **3.**    **Intervention Will Not Prejudice Direct Purchaser Plaintiffs or Defendants or Delay this Litigation.**

The mere grant of permissive intervention, by itself, will not cause any prejudice to DPPs or Defendants.  Should intervention be granted, they are free to argue that modification of the protective order or unsealing of court documents would be inappropriate. *See In re: EPDM*, 255 F.R.D. at 317 ("Because Stone Paradise has met the threshold criteria for a permissive intervention and the defendants have not shown that any undue delay or prejudice to the adjudication of their rights in the present case would result, Stone Paradise is permitted to intervene in this suit. Whether it will be permitted to modify the protective order, and to what extent, is a separate issue.")  In addition, DPPs have settled their claims, the trial date has been vacated, preliminary approval of the settlements has been granted, and the

final fairness hearing is over two months away. Thus, there is no danger of delay or disruption to this case that might prejudice the Parties, and IPPs thus meet the requirements for permissive intervention.

**B.     Upon Intervention, The Court Should Vacate Its Order Granting Direct Purchaser Plaintiffs' Emergency Motion for Protective Order and Modify the Protective Order Entered on September 21, 2011.**

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). "[T]he court's analysis is guided by Rule 60(b) but is not bound by its strictures," and this Court specifically held that its ruling was "without prejudice to either side to address its reconsideration."    *Mateti v. Activus Fin., LLC*, CIV.A. DKC 2008-0540, 2009 WL 3633339, *4 (D. Md. Oct. 27, 2009); Order Granting Motion for a Protective Order at 2. Thus, IPPs move this Court, pursuant to Rule 54(b), to reconsider its ruling on DPPs' Emergency Motion for Protective Order.

**1.     Production of the protected materials will promote the just, speedy, and inexpensive determination of the California Litigation.**

The Federal Rules of Civil Procedure provide that they "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding," and Rule 26 allows litigants to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 1, 26(b)(1). As other courts have recognized, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). "Sharing discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs against a national manufacturer of a

consumer product." *Deford v. Schmid Products Co., a Div. of Schmid Labs., Inc.*, 120 F.R.D. 648, 654 (D. Md. 1987). Moreover, "[w]here reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Foltz,* 331 F.3d at 1132. Such is the case here, as a nearly identical protective order has been entered in the California Litigation. *See* Ex. D, Stipulated Protective Order.

      The protected materials sought by IPPs here are relevant to the California Litigation, where IPPs allege the exact same anti-competitive conduct as DPPs and seek similar relief as DPPs under the Sherman Act as well as state antitrust and consumer protection laws. The arguments made by DPPs and Defendants in their class certification, summary judgment, arbitration, and evidentiary motions (as well as the oppositions and replies) cover many of the same issues that will be raised in the California Litigation, including but not limited to whether there is evidence showing a conspiracy among Defendants, whether the Northern District of California is the proper venue, whether Defendants may enforce any arbitration agreements signed by DPPs or other class members, and whether IPPs and Defendants may call certain experts and present certain evidence at trial. Denying IPPs access to these materials would (1) force them and the court in California to effectively "reinvent the wheel" in litigating this matter, (2) raise everyone's costs, and (3) give Defendants, who do have access to these materials, an unfair and prejudicial advantage over IPPs. These results would certainly frustrate the purposes of the Federal Rules of Civil Procedure and clearly necessitate production of the sealed documents to Indirect Purchaser Plaintiffs.

### 2.     The Stipulated Protective Order does not protect attorney work product.

DPPs' "emergency" motion requested a protective order preventing production of "confidential discovery materials[] and Class Counsel's work product" to IPPs.[1]  Memorandum in Support of Emergency Motion for a Protective Order at 4 (D.E. 503-1).  However, the Stipulated Protective Order entered in this matter does not apply to attorney work product, instead defining protected "Confidential Information" as "sensitive personal information, trade secrets or other current confidential research, development, or commercial information which is in fact confidential."  Stipulated Protective Order at 2 (D.E. 196-1).  "While umbrella orders provide a mechanism for the court to resolve discovery disputes concerning confidential designations without the need for document-by-document adjudication of all production, they do not relieve the parties of their burden to consider vigilantly the need for protection of each document."  *Minter v. Wells Fargo Bank*, N.A., CIV WMN-07-3442, 2010 WL 5418910, *3 (D. Md. Dec. 23, 2010).  DPPs' designation of attorney work product as "confidential" here or filing of the same under seal is improper as (1) the information was not covered by the order and (2)  the attorney work product privilege was clearly waived when the material was provided to Defendants and/or filed with this Court.

Work product is protected by Rule 26, which provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  FED. R. CIV. P. 26(b)(3).  However, "where a lawyer gives work product to an expert who considers it in forming opinions which he or she will be testifying to at trial,

---

[1]   DPPs did not specify what documents or information to which they claim attorney work product protections, as Rule 26 requires, so IPPs can only speculate as to what sealed information DPPs are attempting to assert privilege over.  *See* FED. R. CIV. P. 26(b)(5) (requiring parties asserting a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed-- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

**this information is no longer privileged and must be disclosed**." *Lamonds v. Gen. Motors Corp.*, 180 F.R.D. 302, 305 (W.D. Va. 1998) (emphasis added). In addition, "where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." *United States v. Nobles*, 422 U.S. 225, 240 n.14 (1975).

IPPs are not asking for the mental impressions, notes, or any other information that might be considered "opinion work product." Instead, IPPs are only seeking documents and information that were relied on by DPPs experts, produced by DPPs to Defendants, and filed by the Parties with the Court in support of various motions, oppositions, and replies. Such disclosure by DPPs to their adversaries is "testimonial use" and is therefore a waiver of the work product privilege. *See In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) (finding an implied waiver of the work product waiver where a party facing criminal charges and debarment disclosed certain information to the federal government). For these reasons, DPPs' assertion of privilege has no merit and is not a basis for the entry of a protective order preventing disclosure of the protected materials to IPPs.

**C.  In the alternative, Indirect Purchaser Plaintiffs ask that the Court unseal the aforementioned documents to facilitate public access thereto.**

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). This right of access "'is necessary in the long run so that the public can judge the product of the courts in a given case.'" *Id.* (quoting *Columbus–America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir.2000)). "Because lawsuits filed on behalf of a class potentially affect the rights of persons who are not parties to the case, transparency has

heightened value in class actions." *Cochran v. Volvo Grp. N. Am.*, LLC, 1:11-CV-927, 2013 WL 784502, *4 (M.D.N.C. Mar. 1, 2013)

The Fourth Circuit has determined that "'the more rigorous First Amendment standard should . . . apply to documents filed in connection with a summary judgment motion in a civil case.'" *Washington Post*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 253). This is because "summary judgment adjudicates substantive rights and serves as a substitute for a trial." *Rushford*, 846 F.2d at 252. "[O]nce the documents [a]re made part of a dispositive motion, they los[e] their status as being 'raw fruits of discovery." *Washington Post*, 386 F.3d at 576. Similarly, "class certification documents are judicial records subject to the common law right of access." *Cochran*, LLC, 2013 WL 784502 at *2 (citing *Harris v. Smithfield Packing Co.*, No. 4:09–CV–41–H, 2010 WL 4877144, *1 (E.D.N.C. Nov. 24, 2010) and *Mitchell v. Smithfield Packing Co.*, No. 4:08–CV–182–H, 2010 WL 4877054, *1 (E.D.N.C. Nov. 24, 2010)). "A motion for class certification is filed with the objective of seeking judicial action, and the question of class certification affects the parties' substantive rights." *Id*. This logic also extends to motions to arbitrate. *See Erichsen v. RBC Capital Markets, LLC*, 883 F. Supp. 2d 562, 574-75 (E.D.N.C. 2012) (refusing to seal exhibits attached to a motion to arbitrate that contained "confidential commercial information").

In order to balance the public's right of access and the need to protect certain information, the Fourth Circuit has established the following procedure for sealing judicial records:

> First, the district court must give the public adequate notice that the sealing of documents may be ordered. Second, the district court must provide interested persons "an opportunity to object to the request before the court ma[kes] its decision." Third, if the district court decides to close a hearing or seal documents, "it must state its reasons on the record, supported by specific findings." Finally, the court must state its reasons for rejecting alternatives to closure.

*Rushford*, 846 F.2d at 253-54 (citing *In re Knight Publishing Co.*, 743 F.2d 231, 234-35 (4th Cir. 1984)).

"[T]here must be a showing, in the first instance by the district court, that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Id*. at 253.

In the instant case, the parties have failed to "show specifically what about the documents renders them confidential and how public filing of the documents would hurt defendant or other parties.'" *Erichsen*, 883 F. Supp. at 574. In addition, access to these documents will enhance the public's, and the class members', understanding of this Court's rulings and assist Judge Orrick in overseeing the California litigation. Thus, there is "no factual basis on which the court [c]ould make specific factual findings justifying sealing and showing that alternatives to sealing would be insufficient, as is required by Fourth Circuit law," and the aforementioned documents should be unsealed and produced to IPPs. *Id*. at 575.

## CONCLUSION

The documents filed by DPPs and Defendants are not protected by the attorney work product privilege and are highly relevant to the California Litigation. Having been placed on the judicial record by the Parties, the documents should be provided, at a minimum, to all parties to the collateral litigation. Production to IPPs will promote "the just, speedy, and inexpensive determination" of the California Litigation and avoid unnecessary and duplicative proceedings therein. Moreover, as discussed above, the protective order entered in the California Litigation will protect the interests of all parties just as they are protected by the Stipulated Protective Order entered in this matter, and there is no equitable reason for preventing disclosure to IPPs at this juncture. Accordingly for the reasons stated herein, Indirect Purchaser Plaintiffs respectfully request that the Court (1) grant their motion to intervene and (2) modify the Stipulate Protective Order to permit Indirect Purchaser Plaintiffs access to the protected materials

filed by the parties in this litigation.  In the alternative, Indirect Purchaser Plaintiffs request that the aforementioned documents be unsealed to permit public access in accordance with the common law and the First Amendment of the United States Constitution.  Defendants do not object to producing the requested documents to IPPs, subject to the protective orders that are already in place, but will oppose their unsealing.  DPPs have not responded to IPPs' correspondence regarding the matter.

Dated: September 30, 2013                              Respectfully submitted,

                                                        CUNEO GILBERT & LADUCA LLP

                                                        */s/ Daniel Cohen*
Ben F. Pierce Gore                                      Daniel Cohen
PRATT & ASSOCIATES                                      Jonathan W. Cuneo
1871 The Alameda, Suite 425                             Joel Davidow
San Jose, California 95126                              Katherine Van Dyck
Telephone:   (408) 369-0800                             507 C Street, N.E.
Facsimile:    (408) 369-0752                            Washington, DC 20002
pgore@prattattorneys.com                                Telephone: (202) 789-3960
                                                        Facsimile:  (202) 789-1813
Don Barrett                                             dcohen@cuneolaw.com
Barrett Law Group, P.A.                                 jonc@cuneolaw.com
P.O. Box 927                                            joel@cuneolaw.com
404 Court Square                                        kvandyck@cuneolaw.com
Lexington, MS 39095                                     vicky@.com
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com

Charles F. Barrett                                      Sandra Cuneo
Charles Barrett, P.C.                                   CUNEO, GILBERT & LADUCA, LLP
6518 Highway 100, Suite 210                             11620 Wilshire Boulevard, Suite 900
Nashville, TN 37205                                     Los Angeles, CA 90025
Telephone:   (615) 515-3393                             Telephone: (310) 582-5939
Facsimile:    (615) 515-3395                            Facsimile:  (310) 582-5943
Email: charles@cfbfirm.com                              scuneo@cuneolaw.com

Thomas P. Thrash (admitted *pro hac vice*)              Dewitt Lovelace
Marcus N. Bozeman                                       Lovelace & Associates, P.A.

Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net
bozemanmarcus@sbcglobal.net

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone: (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Gerard V. Mantese
Mantese Honigman Rossman &
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
Facsimile:  (248) 457-9201
gmantese@manteselaw.com

12870 US Hwy 98 West, Ste. 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
dml@lovelacelaw.com

Shawn M. Raiter
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

*Attorneys for Plaintiffs and the Putative Class*