UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

---

**IN RE: TITANIUM DIOXIDE
ANTITRUST LITIGATION**

---

THIS DOCUMENT RELATES TO:
All Actions

Master Docket No. 10–CV–00318(RDB)

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENTS WITH
DEFENDANTS E. I. DU PONT DE NEMOURS AND
COMPANY, CRISTAL USA, INC., KRONOS WORLDWIDE, INC.,
AND HUNTSMAN INTERNATIONAL LLC, AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     CASE HISTORY ................................................................................................ 3

III.    SUMMARY OF SETTLEMENT TERMS ........................................................ 5

      A.      The Class.................................................................................................. 5

      B.      The Settlement Amount. ......................................................................... 6

      C.      Plan of Allocation, Proofs of Claim, and Attorneys' Fees and Costs. ................... 7

      D.      Release of All Claims ............................................................................. 7

IV.     THE PROPOSED SETTLEMENTS SHOULD BE APPROVED ..................... 8

      A.      The Standard for Court Approval of Class Action Settlements. ............................. 8

      B.      The Settlements Are Fair......................................................................... 9

            1.      The Posture of the Case Was Well Advanced When the Settlements Were Reached ......................................................................9

            2.      Under the Regular and Careful Supervision of the Court, the Parties Completed Extensive Discovery ...........................................11

            3.      The Circumstances of the Negotiations Demonstrate Good Faith and the Arm's Length Nature of the Settlement Proceedings ......................12

            4.      Class Counsel Are Highly Experienced .................................................14

      C.      The Settlements Are Adequate............................................................... 15

V.      THE NOTICE PROVIDED TO THE CLASS SATISFIES DUE PROCESS ................. 18

VI.     THE PLAN OF ALLOCATION SHOULD BE APPROVED......................... 20

VII.    CONCLUSION................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*
  521 U.S. 591 (1997) ................................................................................ 18

*Burlington Industries, Inc. v. Milliken & Co.*,
  690 F.2d 380 (4th Cir. 1982) .................................................................. 8

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................... 21

*Crandell v. United States*,
  703 F.2d 74 (4th Cir. 1983) .................................................................... 8

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ............................................................... 12

*In re Airline Ticket Comm'n Antitrust Litig.*,
  953 F. Supp. 280 (D. Minn. 1997) .................................................. 21-22

*In re Am. Capital S'holder Derivative Litig.*,
  No. PJM-11-2424, 2013 U.S. Dist. LEXIS 90973 (D. Md. June 28, 2013) ................ 8

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  No. 94-C-897, 1999 U.S. Dist. LEXIS 12936 (N.D. Ill. Aug. 17, 1999) ................... 21

*In re Computron Software, Inc. Sec. Litig.*,
  6 F. Supp. 2d 313 (D.N.J. 1998) ............................................................ 21

*In re Corrugated Container Antitrust Litig.*,
  556 F. Supp. 1117 (S.D. Tex. 1982), *aff'd* 687 F.2d 52 (5th Cir. 1982) ...................... 22

*In re Electrical Carbon Prods. Antitrust Litig.*,
  447 F. Supp. 2d 389 (D.N.J. 2006) ......................................................... 21

*In re Jiffy Lube Sec. Litig.*
  927 F.2d 155 (4th Cir. 1991) ......................................................... 8, 9, 11

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ..................................................... 21

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983) ............................................................ 9

*In re Montgomery Cnty. Real Estate Antitrust Litig.*,
  83 F.R.D. 305 (D. Md. 1979) ......................................................... 8, 9, 15

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec.
  13, 2011) ........................................................................................ 21

*In re Serzone Prods. Liab. Litig.*,
  231 F.R.D. 221 (S.D. W.Va. 2005) .......................................................... 11

*South Carolina Nat'l Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990) ............................................................ 8

eat
## TABLE OF AUTHORITIES

**Statutes, Rules and Regulations**

Federal Rule of Civil Procedure
  Rule 23 ................................................................................................ 20

Federal Rule of Civil Procedure
  Rule 23(e) ........................................................................................ 8, 18

Federal Rule of Civil Procedure
  Rule 23(e)(1) ........................................................................................ 18

Federal Rule of Civil Procedure
  Rule 23(f) .............................................................................................. 3

**Other Authorities**

4 *Newberg on Class Actions*, § 8.32 (4th ed. 2002) ................................... 18

*Manual for Complex Litigation* (Fourth) (2004) ......................... 8, 18, 20

I.      **INTRODUCTION**

By Order of September 10, 2013, this Court granted preliminary approval to the class action settlements that Plaintiffs Haley Paint Company, Isaac Industries, Inc., and East Coast Colorants LLC (d/b/a Breen Color Concentrates) (collectively, "Plaintiffs" or "Class Representatives"), on behalf of the certified Class they represent, reached with Defendants E. I. du Pont de Nemours and Company ("DuPont"), Cristal USA, Inc. ("Cristal USA")[1], Kronos Worldwide, Inc. ("Kronos"), and Huntsman International LLC ("Huntsman") (together, the "Defendants"). ECF No. 533. The notice plan, approved by this Court as part of that order, has been implemented. *See generally* Declaration of Markham Sherwood Regarding Dissemination of Notices to the Settlement Class and Status of Claims Administration ("Sherwood Decl."), filed herewith. After years of hard-fought litigation, extensive discovery, and trial preparation, Plaintiffs now seek final approval of these proposed Settlements that provide significant benefits in the form of cash payments to Class members in exchange for a release of the Class claims against Defendants. Plaintiffs respectfully submit that the Settlements are fair, adequate, reasonable, and in the best interests of the Class as a whole.

Upon final approval, the Settlement Agreements will create a combined fund of $163,500,000, to be allocated net of fees, service awards, costs and administrative expenses among all direct purchasers of titanium dioxide in the United States during the specified period (the "Class," defined in Section III.A., *infra*).[2]

---

[1]     Cristal USA was formerly known as Millennium Inorganic Chemicals, Inc.

[2]     The DuPont Settlement Agreement will create an all-cash fund of $72,000,000 (Seventy-Two Million Dollars) (the "DuPont Settlement Fund"); the Cristal USA Settlement Agreement will create an all-cash fund of $50,000,000 (Fifty Million Dollars) (the "Cristal USA Settlement Fund"); the Kronos Settlement Agreement will create an all-cash fund of $35,000,000 (Thirty-Five Million Dollars) (the "Kronos Settlement Fund");  and the Huntsman Settlement Agreement

By this motion, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlements with DuPont, Cristal USA, Kronos, and Huntsman; and (2) approve the Plan of Allocation proposed by Plaintiffs with regard to the Net Settlement Funds.[3]

Final approval is warranted here because the Settlements are fair, reasonable, and adequate. Plaintiffs and Defendants reached these agreements through hard-fought, arm's length negotiations after more than three years of litigation. This extensive litigation included the filing of a detailed complaint based on Class Counsel's investigatory work; denial of Defendants' motion to dismiss; extensive merits and expert discovery; the granting of a motion to certify a nationwide class of direct purchasers; the briefing, arguing and denial of Defendants' joint and individual summary judgment motions; the briefing, arguing, and granting of Cristal USA's and Kronos's motion to enforce arbitration agreements, forum selection clauses, class action waivers, and jury trial waivers; and rigorous trial preparation. The parties negotiated these Settlements on a thoroughly developed evidentiary and procedural record—providing a strong basis for counsel and the Court to evaluate the risks of ongoing litigation and the fairness of the Settlements. The all-cash payment of $163.5 million is an excellent result in light of the claims asserted and the risks and delay of further litigation. In short, the relevant factors regarding class action settlement approval weigh heavily in favor of final approval.

---

will create an all-cash fund of $6,500,000 (Six Million Five Hundred Thousand Dollars) (the "Huntsman Settlement Fund").

[3]   If the Settlements are approved, Plaintiffs will file a Motion for Distribution of the Settlement Funds in 2014 seeking an order of the Court to distribute the Settlement Funds (net of Court-approved attorneys' fees (including any interest thereon), expenses, service awards, and claims administration costs) to Authorized Claimants whose proofs of claims have been approved by the Claims Administrator.

## II.    CASE HISTORY

This antitrust class action was initiated by class representative Haley Paint Company on February 9, 2010, alleging a conspiracy to fix, raise, maintain and stabilize the price of titanium dioxide in the United States among Defendants and Tronox Inc. (formerly known as Kerr-McGee) ("Tronox") in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *See* Declaration of C. Andrew Dirksen in Support of Plaintiffs' Motion for Final Approval of Class Action Settlements with Defendants and Plan of Allocation and Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and for Service Awards for the Class Representatives ("Dirksen Decl.") at ¶24.[4] Plaintiffs' claims arise from an alleged illegal agreement entered into by and among the Defendants, to form a cartel and fix, raise, and stabilize prices for titanium dioxide, causing damages to Plaintiffs and the Class in the form of artificially-inflated prices and significant overcharges for nearly a decade. Defendants have continuously and strenuously denied those allegations and retained law firms—among the most experienced and well-regarded in the United States—to defend them. On April 12, 2010, plaintiffs Haley Paint and Isaac Industries filed a Consolidated Amended Complaint. ECF No. 51.

Following extensive briefing and a hearing before the Court, on March 29, 2011, the Court denied Defendants' Motion to Dismiss. ECF No. 104. Discovery commenced shortly thereafter, and formally closed on September 1, 2012. *See* Scheduling Order, ECF No. 330, dated August 17, 2012. On August 28, 2012, following additional extensive briefing and expert opinion and discovery and a full day hearing, the Court certified a class of persons and entities who purchased titanium dioxide directly from Defendants or Tronox during the Class Period.[5]

---

[4]    The Dirksen Declaration includes a detailed history of this case.

[5]    The Fourth Circuit denied Defendants' subsequent request for review of the class certification Order under Rule 23(f) of the Federal Rules of Civil Procedure. Dirksen Decl., ¶53.

ECF No. 338. On January 11, 2013, a Court-approved notice of the pendency of this litigation was disseminated to all Class members, who were given the right to exclude themselves by February 25, 2013. The opt-out period expired with only eleven entities excluding themselves from the Class. ECF No. 403.

On April 18, 2013, Defendants submitted motions seeking to compel arbitration and stay proceedings, dismiss for improper venue, strike jury trial demand, and amend the class definition. ECF Nos. 422-428. On April 19, 2013, Defendants submitted joint and individual Motions for Summary Judgment. ECF Nos. 429-430, 432-443. The Court heard oral argument on these motions on June 25, 2013. ECF No. 462.

On July 15, 2013, the Plaintiffs and Huntsman executed an agreement resolving all of the claims of Plaintiffs and the Class, as defined in the Court's August 28, 2012 Order. ECF No. 521; *See also* ECF No. 480-3.

On July 26, 2013, the Plaintiffs and DuPont entered into an agreement resolving all of the claims of Plaintiffs and the Class, as defined in the Court's August 28, 2012 Order. ECF No. 521. The agreement was executed on August 6, 2013. *See* ECF No. 496-3.

Subsequently, the Court denied the motions for summary judgment, and granted the motions of Cristal USA and Kronos to compel arbitration and related clauses. ECF Nos. 498, 507. The case continued to the trial, which had been set to begin on September 9, 2013, pursuant to the scheduling order issued by the Court on June 3, 2011. Dirksen Decl., ¶¶14, 92-94. All pretrial proceedings continued in earnest as well. *Id.* at ¶¶92-94.

On September 3, 2013, Plaintiffs and Cristal USA entered into an agreement resolving all of the claims of Plaintiffs and the Class, as defined in the Court's August 28, 2012 Order. ECF No. 521. The agreement was executed on September 8, 2013. *See* ECF No. 530-1.

On September 6, 2013, the last business day before trial, Plaintiffs and Kronos entered into an agreement resolving all of the claims of Plaintiffs and the Class, as defined in the Court's August 28, 2012 Order. ECF No. 521. The agreement was executed on September 9, 2013. *See* ECF No. 530-2.

On September 10, 2013, this Court entered an Order preliminarily approving the Settlement Agreements and the form and manner of notice to the Class. ECF No. 537. Plaintiffs have complied with the notice plan approved by this Court, described more fully in Section V, *infra*. *See generally* Sherwood Decl.

## III.   SUMMARY OF SETTLEMENT TERMS

Together, the Settlement Agreements resolve all claims of Plaintiffs and the Class, as defined in the Court's August 28, 2012 Order, against all Defendants. The details of these settlements are contained in the Settlement Agreements, which were previously submitted to the Court. *See* ECF Nos. 480-3, 496-3, 530-1, 530-2. A summary is provided below.

### A.   The Class.

As defined by the Court's August 28, 2012 Order, the Settlement Class includes all persons and entities who purchased titanium dioxide in the United States directly from one or more Defendants or Tronox, or from any predecessors, parents, subsidiaries, or affiliates thereof, between February 1, 2003 through January 11, 2013 (the date of the *Notice of Pendency of Class Action*), except for those who validly and timely exercised the right to exclude themselves from the certified Class (*see* ECF Nos. 338, 373, 403), and except for any Defendant, their alleged coconspirators, parent companies, predecessors, subsidiaries and affiliates, and all governmental

entities. DuPont ¶1.d; Cristal USA ¶1.d; Kronos ¶1.d; Huntsman Settlement Agreement,

Definition (c).[6]

## B.   The Settlement Amount.

The total value of the Settlement Agreements is $163,500,000.

If the Court finally approves the settlement between DuPont and the Plaintiffs, and it is

not terminated pursuant to its terms, then within ten (10) business days following the Effective

Date (DuPont ¶1.m), DuPont will pay $72,000,000 (the DuPont "Settlement Amount," DuPont

¶1.v.) into the Settlement Fund Bank Account (the bank account to be identified in and approved

by the Court as part of the Order of Final Approval). DuPont ¶¶6, 10.

Cristal USA will pay $50,000,000 into the Settlement Fund Bank Account under the same

conditions and ten-day timeline as in the DuPont Settlement. Cristal USA ¶¶1.m, 1.v., 6, 10.

Pursuant to the Huntsman Settlement, on September 20, 2013, Huntsman deposited

$6,500,000 into an escrow account. Dirksen Decl., ¶98.

If the Court finally approves the settlement between Kronos and the Plaintiffs, and it is

not terminated pursuant to its terms, then within five (5) business days following the Effective

Date, Kronos will pay $20,000,000 into the Settlement Fund Bank Account, and then an

additional $15,000,000 within 180 days of the Effective Date. Kronos, ¶10.

The settlement funds will be utilized in accordance with applicable orders of the Court

for cash payments to Class Members; reimbursement of notice and other claims administration

---

[6]   Unless otherwise stated, all references herein to "DuPont ¶__" are to the DuPont Settlement
Agreement, ECF No. 496-3; references to "Cristal USA ¶__" are to the Cristal USA Settlement
Agreement, ECF No. 530-1; references to "Kronos ¶__" are to the Kronos Settlement
Agreement, ECF No. 530-2; and references to "Huntsman ¶__" are to the Huntsman Settlement
Agreement, ECF No. 480-3.

costs; payment of attorneys' fees, and reimbursement of litigation expenses; and payment of Court-approved service awards to the Class Representatives.

> C.      **Plan of Allocation, Proofs of Claim, and Attorneys' Fees and Costs.**

The notice disseminated to the Class included the proposed Plan of Allocation of the settlement proceeds among Class members who make claims, as well as a form of Proof of Claim for Class members to use to submit their claims. The Court-appointed Claims Administrator, Gilardi & Co., LLC ("Gilardi"), will receive and process all Proofs of Claim in anticipation of a distribution of the settlement funds to Authorized Claimants following the occurrence of the Effective Dates of all Settlements and full funding by the Defendants.

The Settlement Agreements recognize that Class Counsel will seek attorneys' fees and reimbursement of expenses incurred in the prosecution of this litigation. DuPont ¶7.g; Cristal USA ¶7.g; Kronos ¶7.g; Huntsman ¶17. The notice so advised the Class, indicating that, in accordance with the Settlement Agreements, Plaintiffs will look solely to the Settlement Funds for satisfaction of such fees and costs. DuPont ¶23; Cristal USA ¶23; Kronos ¶23; Huntsman ¶17. Class Counsel's request for attorneys' fees and reimbursement of expenses (and request for payment of service awards to the class representatives) is being filed today in a separate motion.

> D.  **Release of All Claims.**

In exchange for Defendants' monetary consideration, upon entry of a final judgment approving the proposed Settlements and the occurrence of the Effective Dates, Plaintiffs and the Class will release each Defendant from any and all claims related to any of the alleged conduct giving rise to this litigation. DuPont ¶13; Cristal USA ¶13; Kronos ¶13; Huntsman ¶7.

IV.      THE PROPOSED SETTLEMENTS SHOULD BE APPROVED

A.      The Standard for Court Approval of Class Action Settlements.

The settlement of a class action lawsuit requires approval of the Court. Fed. R. Civ. P. 23(e). At the final approval stage, the "court assesses whether the proposed settlement is 'fair, reasonable, and adequate' for all class members." *In re Am. Capital S'holder Derivative Litig.*, No. PJM-11-2424, 2013 U.S. Dist. LEXIS 90973, at *8 (D. Md. June 28, 2013) (quoting Manual for Complex Litigation (Fourth) § 21.634 (2004)).  The purpose of court approval is to protect "class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

There is a strong public policy in favor of settlement. *See Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes."); *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citations omitted). Indeed, "there is an overriding public interest in favor of settlement" of "complex disputes often involved in class actions" because it "minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (internal citations omitted); *see also Burlington Industries, Inc. v. Milliken & Co.*, 690 F.2d 380, 394 n.9 (4th Cir. 1982) (settlement of antitrust cases is particularly favored).

In determining whether a proposed settlement is fair, adequate, and reasonable, the Fourth Circuit follows a bifurcated analysis—considering certain factors that relate to the "fairness" of the settlement separately from factors that concern its "adequacy." *See Jiffy Lube*, 927 F.2d at 158-59 (adopting standard articulated in *In re Montgomery Cnty. Real Estate*

*Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979)). As shown below, the Settlement Agreements here thoroughly satisfy all of the fairness and adequacy factors.

### B.     The Settlements Are Fair.

The purpose of the "fairness" inquiry is to protect against collusion among the parties and ensure that settlement was reached through arm's length negotiating. *Montgomery Cnty. Real Estate*, 83 F.R.D. at 315; *see also Jiffy Lube*, 927 F.2d at 159; *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983). Specifically, the court considers the posture of the case at the time the settlement is proposed; the extent of discovery that has been conducted; the circumstances surrounding the negotiations; and the experience of counsel. *Id.*

### 1.   The Posture of the Case Was Well Advanced When the Settlements Were Reached.

Plaintiffs reached each settlement at an advanced stage of the litigation—more than three years after the filing of the complaint, the completion of discovery, and the resolution of multiple dispositive motions.  *See, e.g.*, Dirksen Decl., ¶¶4, 18. Indeed, each settlement was reached during trial preparation, by which time the parties were well informed of the strengths and weaknesses of their claims and the risks of ongoing litigation.

The Huntsman and DuPont Settlements, entered into on July 15, 2013, and July 26, 2013, respectively, occurred within 60 days of the scheduled trial and while Defendants' motions for summary judgment and motion to enforce arbitration and other contractual clauses—fully briefed and argued—were still under submission. *Id.* at ¶¶97, 101. Prior to these Settlements, the Court had denied Defendants' motions to dismiss, granted Plaintiffs' motion for class certification, and ruled on Defendants' *Daubert* motion. *See* ECF Nos. 51, 337, 450. The parties had also completed discovery and were substantially advanced in their trial preparation.

The Cristal USA and Kronos Settlements were reached at an even later stage of the litigation—less than a week before trial and after the August 26, 2013 Pretrial Conference. Dirksen Decl., ¶¶103, 105. At the time of these Settlements, the Court had denied these Defendants' motions for summary judgment and granted their motions to enforce arbitration and other contractual clauses. Pursuant to the Scheduling Order and in light of the impending trial, the parties: exchanged witness lists, trial exhibit lists, deposition designations and counter-designations, and drafts of the Pretrial Order, *voir dire*, and jury questionnaire; and met and conferred frequently on motions *in limine*, witnesses (including trial subpoenas and timing of the attendance at trial of witnesses), the Pretrial Order, jury questionnaire, *voir dire*, trial exhibit admissibility issues, demonstratives, deposition designations, and other pretrial matters. *Id.* at ¶92. The Court had conducted a full day hearing on the motions *in limine* resolving many disputed issues regarding evidence at trial. The Cristal USA Settlement was reached on September 3, 2013, and finally signed on September 8, 2013. *Id.* at ¶103.

Trial preparations continued in earnest. The Court made itself available in person and by telephone for many hours with Plaintiffs and Kronos during the week before trial on September 3, 4, 5, and 6, 2013, primarily to resolve admissibility issues with respect to certain documents and testimony. *Id.* at ¶94. The Court's pretrial rulings impacted the risks of trial, and Plaintiffs and Kronos reached a settlement on September 6, 2013, the last business day before trial, and signed an agreement on September 9, 2013. *Id.* at ¶105.

Because each settlement was reached at an advanced stage of the litigation, this factor weighs strongly in favor of final approval.

**2.   Under the Regular and Careful Supervision of the Court, the Parties Completed Extensive Discovery.**

"[A] reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial." *Jiffy Lube*, 927 F.2d at 159. "[T]his factor is useful in evaluating whether the plaintiffs and their counsel have sufficiently developed the case to appreciate the merits of their claims." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244 (S.D. W.Va. 2005).

As noted above and in the Dirksen Declaration, the investigation of this case began in September 2008. Dirksen Decl., ¶¶13, 22. Since filing in February 2010, the case has been actively litigated by lawyers on each side with well-deserved national reputations for expertise in antitrust class action litigation. *Id.* at ¶¶4, 123. The parties completed extensive fact and expert discovery, which spanned approximately one and one-half years. *Id.* at ¶¶14, 55. All of the parties propounded and responded to extensive written discovery and document requests. *Id.* at ¶¶56-70. The parties engaged in extensive efforts to organize the production of electronically stored information. Over one million documents, totaling more than 14.4 million pages, were produced in total by parties and non-parties. *Id.* at ¶15. Organizing, reviewing and analyzing this mammoth factual record took an extraordinary effort by dozens of lawyers, paralegals and others working with the twelve firms comprising Plaintiffs' Counsel. *Id.* at ¶62. In addition, Plaintiffs conducted or participated in depositions of over ninety individuals over the course of nearly one hundred days, including more than one dozen expert depositions. *Id.* at ¶74. Plaintiffs retained four highly-credentialed experts, and worked closely with them to develop a keen understanding of the issues of liability and damages. *Id.* at ¶¶17, 77. Significantly, this Court took an active role in case management and supervision, convening regular hearings by telephone—and some in

Court—to ensure this case proceeded to trial on the merits expeditiously and efficiently. *See e.g., id.* at ¶38.

Each of the four Settlement Agreements was reached after the completion of these herculean efforts. "The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Indeed, Class Counsel, experienced in these types of cases, had the entire factual record available when they negotiated each settlement, and fully understood the strengths and weaknesses of their case. This factor also weighs strongly in favor of final approval.

### 3. The Circumstances of the Negotiations Demonstrate Good Faith and the Arm's Length Nature of the Settlement Proceedings.

Settlement negotiations with each Defendant were at all times conducted by Class Counsel and Defendants' counsel at arm's length and in good faith. Dirksen Decl., ¶95. The parties were well-versed in the evidentiary record, fully developed through the extensive discovery and law and motion practice and trial preparation described above.

Numerous settlement discussions between Plaintiffs and Huntsman took place, beginning in 2012, prior to class certification, and involved multiple in-person and telephonic meetings over more than a year. *Id.* at ¶96. The Huntsman Settlement was reached on July 15, 2013, shortly after the June 25, 2013 hearing on summary judgment and before the Court had entered the parties' final stipulated pretrial scheduling order. *Id.* at ¶97. The Plaintiffs faced several risks at this time—especially because Defendants' motions for summary judgment and to compel arbitration and amend the Class definition were still pending. *Id.* Many issues were thoroughly discussed and/or negotiated in connection with the Huntsman Settlement, including Huntsman's small market share and its status as the first Defendant to settle. *Id.*

The settlement negotiations with DuPont began in early July, shortly after the hearing on summary judgment. *Id.* at ¶99. The negotiations were hard-fought and extensive, involving many communications. *Id.* As in the Huntsman negotiations, Class Counsel and DuPont's counsel had the benefit of a full evidentiary record and discussed numerous issues concerning the merit of Plaintiffs' price-fixing claim and Defendants' defenses, as well as the risks of litigating the case through trial and appeals. *Id.* The parties reached a settlement in principle on July 26, 2013, and executed their agreement on August 6, 2013, prior to issuance of the Court's rulings on Defendants' motions for summary judgment and to compel arbitration and to amend the class definition. *Id.* at ¶101.

Settlement negotiations with Cristal USA began in earnest shortly after the pretrial conference on August 27, 2013, and the Court's rulings on the parties' motions *in limine*. *Id.* at ¶102. The settlement negotiations were intense as the trial date rapidly approached. In addition to the strengths and weaknesses of Plaintiffs' claims and the available defenses, Cristal USA's ability to pay a verdict of the magnitude sought by Plaintiffs factored into the negotiations. *Id.* On September 3, 2013, the parties agreed in principle to settle. *Id.* at ¶103. The agreement was executed on September 8, 2013. *Id.*

Although very brief settlement discussions occurred earlier this year between Class Counsel and Kronos's counsel, negotiations did not begin in earnest until after Plaintiffs' settlement in principle with Cristal USA was made public on September 3, 2013, and it was clear that Kronos was the last remaining Defendant. *Id.* at ¶104. Similar to Cristal USA, Class Counsel considered the financial implications as to this Defendant of a very large judgment potentially being entered against it if Plaintiffs were successful at trial, and this consideration was factored

into settlement discussions. *Id.* The Kronos Settlement was eventually reached on September 6, 2013, the last business day before trial, and executed on September 9, 2013. *Id.* at ¶105.

As detailed above, all four Settlement Agreements were reached at times of considerable risk for each side—demonstrating the strong incentives to settle, and hence, the good faith of the parties and the arm's length nature of the negotiations. In its Memorandum Opinion dated September 12, 2013, this Court stated, "This case was hard fought by experienced, highly qualified counsel on both sides. Their negotiations certainly raise no suspicion of collusion." ECF No. 534. Indeed, each agreement differs in certain key respects, demonstrating each was the product of arm's length negotiations between Class Counsel and counsel for the respective Defendant based on the totality of circumstances that existed as of the time each settlement was reached.

### 4. Class Counsel Are Highly Experienced.

Class Counsel's experience and success in similar class actions also weighs in favor of final approval. Class Counsel have prosecuted large, complex cases for decades. They each have extensive expertise and experience in complex, multi-party business litigation, especially in antitrust, securities fraud, consumer protection, and other class action cases. Dirksen Decl., ¶127. Class Counsel also possess a track record of success in similar cases, reaching settlements that have provided substantial benefits to numerous classes of consumers. Furthermore, Class Counsel received assistance from nine other highly qualified law firms and attorneys, which aided in the ultimate outcome of this case. *Id.*; *see also* Exs E through M of the Dirksen Decl. Drawing from these experiences, Class Counsel entered into each of the Settlement Agreements because they believe that they are a fair result and in the best interests of the Class.

### C.     The Settlements Are Adequate.

Under the "adequacy" prong, the court must "weigh the likelihood of the plaintiffs' recovery on the merits against the amount offered in settlement." *Montgomery Cnty. Real Estate*, 83 F.R.D. at 315-16 (internal citations omitted). Significantly, "It is not, of course, necessary or desirable to try the case to determine whether a settlement is adequate, since the very purpose of the settlement is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Id.* In making this determination, the court considers the following factors: the relative strength of the plaintiffs' case on the merits; the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; the anticipated duration and expense of additional litigation; the solvency of the defendants and the likelihood of recovering on a litigated judgment; and the degree of opposition to the settlement. *Id.* at 316 (citations omitted).

As established above, each of the four settlements was negotiated extensively by experienced counsel who have worked intimately on this case for more than three years and understand the risks and rewards of the litigation. These settlements totaling $163.5 million in cash are an excellent result in light of the claims asserted and the risks presented by further litigation. *See* ECF No. 534 ("Against the uncertainty inherent in proceeding to a verdict, and the cost of a month long trial, the significant dollar value of the Settlements secured by the Class Plaintiffs militates strongly in favor of a finding that the Proposed Settlement Agreement is proportionate to the strength.").

While Plaintiffs believe their claims are meritorious, Defendants each asserted many viable defenses, which could potentially result in Plaintiffs and the Class receiving no compensation whatsoever from any of the Defendants for the alleged wrongdoing.

First, as the Court noted in its Memorandum Opinion dated September 12, 2013, "Plaintiffs' case was based entirely on circumstantial evidence—a verdict in favor of the Plaintiffs was not assured by any means." ECF No. 534. Indeed, as Defendants emphasized in several motions, Plaintiffs lacked the "smoking gun" to establish Defendants' liability. While Plaintiffs believe they could have proved their case through circumstantial evidence, there was significant risk that the jury would not rule in Plaintiffs' favor.

Second, Plaintiffs would have had to prove liability primarily using their experts and adverse witnesses, who vociferously denied engaging in any unlawful conduct. Dirksen Decl., ¶107.

Third, even assuming Plaintiffs could have established liability at trial, there was the further risk that the jury would determine that Plaintiffs were entitled to recover far less than the estimated damages—or not recover at all. *Id.* Additionally, Plaintiffs could not be oblivious to the substantial financial risks posed to certain Defendants if the jury awarded all damages sought by Plaintiffs, and they were trebled by the Court as required by law. *Id.* at ¶109.

Fourth, Defendants had many available defenses, which they vigorously raised throughout the litigation and would have continued to put forth at trial and on appeal if judgments were entered in Plaintiffs' favor.

Fifth, the trial—anticipated to last a month—would have been extremely costly. Furthermore, a jury verdict in Plaintiffs' favor almost assuredly would have been appealed given the high stakes of this case as well as Defendants' strenuous denial of wrongdoing. There was a substantial risk that if Plaintiffs were able to succeed at trial, and survive post-trial motions, the Fourth Circuit Court of Appeals might have disagreed, resulting in a reversal or an order remanding for further proceedings, including a second trial. An appeal thus would have

presented the risk of reversal based on a host of issues, including class certification and expert

evidence, as well as evidentiary rulings. *Id.* at ¶¶107-109. Even if the Fourth Circuit affirmed a

judgment in Plaintiffs' favor, there would still be the further risk of an appeal to the United States

Supreme Court.  Regardless of the outcome, litigating this case through trial and any appeals

would have caused significant uncertainty, and invariably, delay. The Settlement Agreements, in

contrast, provide definite and immediate results for the Class. *Id.* at ¶108.

Yet, despite these risks, Plaintiffs and their counsel have obtained an excellent result for

the Class—both individually and in the aggregate. The Settlements provide that each Class

member who submits a timely and valid Claim Form will be eligible to receive a share of the

$163.5 million Settlement Fund based upon their actual purchases of titanium dioxide from

Defendants and Tronox. The results are even more remarkable when considered on a classwide

basis. Despite the many obstacles to recovery, the absence of any governmental investigation or

"smoking gun" evidence, Plaintiffs and their counsel achieved a total recovery of $163.5 million,

a significant amount by any measure.

Finally, the reaction of Class members to the Settlement has been positive, as many claim

forms have already been submitted and no objections have been received as of the date of this

filing.[7] Sherwood Decl., ¶¶15, 16; Dirksen Decl., ¶¶110-112.

Class Counsel do not take the above risks and challenges lightly. Considering the

procedural posture of the case, and the relative strengths and weaknesses of the claims and

defenses asserted, the proposed Settlements satisfy the adequacy requirement for final approval.

---

[7]   Class Counsel will update the Court regarding the response to the Settlement Agreements
prior to the November 25, 2013 final approval hearing. The objection deadline is November 4,
2013.

## V. THE NOTICE PROVIDED TO THE CLASS SATISFIES DUE PROCESS

Pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See* 4 *Newberg on Class Actions*, § 8.32 (4th ed. 2002). The form of notice is "adequate if it may be understood by the average class member." *Id.* § 11.53. Notice to the class must be "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Where individual names or addresses cannot be obtained through reasonable efforts, the court may approve alternative techniques—such as publication and/or internet notice—for providing the best practicable notice under the circumstances. *Manual for Complex Litigation* (Fourth) § 21.311 (2004).

On September 10, 2013, as part of its Preliminary Approval Order, this Court approved the form and manner of notice to the Class, and made the following findings:

> [T]he dissemination of those Settlement Notices in the manner and form set forth in Plaintiffs' Motions for Preliminary Approval fully satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

ECF No. 533; *see also* ECF No. 534.[8]

---

[8] As noted in the Preliminary Approval Order, this is the same method of notice previously and successfully used for notice of the litigation class.

- 18 -

The Court-approved notice plan has been executed. *See generally* Sherwood Decl. The

Court-approved notice provider, Gilardi, mailed the detailed notice form (Sherwood Decl., Ex.

B) via first-class regular U.S. mail directly to all Class members who were reasonably

identifiable from Defendants' records, on September 19, 2013. Sherwood Decl., ¶7. On

September 23, 2013, the Claims Administrator caused to be published a summary notice of the

settlements (Sherwood Decl., Ex. C) once in *The Wall Street Journal*; once in the October 2013

edition of  *PCI Magazine* (also known as Paint & Coatings Industry Magazine); and once in the

*ICIS Chemical Business* magazine on September 23, 2013. *Id.* at ¶10.  *PCI Magazine* and the

*ICIS Chemical Business* magazine are two of the leading trade journals among direct purchasers

of titanium dioxide products.

In addition, Gilardi established and continues to maintain a website that informs Class

members and the public about this case, www.tio2antitrustlitigation.com. *Id.* at ¶11. As part of

the notice plan, beginning on or about September 19, 2013, the website has provided notices

(both summary and detailed), answers to "Frequently Asked Questions," and other pertinent

information related to this litigation and the proposed Settlements. *Id.* at ¶12. The website

provides the additional benefit of allowing Class members to submit claims electronically. *Id.*

The notice provides all of the information due process requires: a brief explanation of the

case; the class definition; the terms of the proposed Settlements; the proposed plan of allocation;

the amount Class Counsel will seek for attorneys' fees and reimbursement of litigation expenses;

the amount of requested service awards for the Class Representatives; the date, time, and place

of the final approval hearing; and the procedures for Class members to follow in submitting

comments on and objections to the Settlements, and in arranging to appear at the final approval

hearing concerning the Settlements in order to state objections, if any. *See* Sherwood Decl., Ex.

B; *see also Manual for Complex Litigation* (Fourth) § 21.312 (2004). In addition, the Proof of

Claim form (Sherwood Decl., Ex. B) was mailed to all Class Members, requesting that they

submit it by January 31, 2014, to substantiate their claim.[9] Sherwood Decl., ¶7.

The notice is consistent with the forms of notice approved by other courts and fully

comports with Rule 23 of the Federal Rules of Civil Procedure and due process.

## VI.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

The Court earlier preliminarily approved the Plan of Allocation for the settlement funds.

ECF No. 533. The settlement notices—disseminated in accordance with the Preliminary

Approval Order—outlined for Class members the proposed plan for allocating the settlement

proceeds. The Plan of Allocation is designed to ensure that the settlement proceeds are fairly,

efficiently, and equitably distributed among the Class. According to the Plan of Allocation, Class

members who submit valid, timely Proof of Claim forms ("Authorized Claimants") will receive

*pro rata* shares of the Settlement Fund.

More specifically, under the Plan of Allocation, a claim will be calculated as follows: the

proceeds of the settlements, after deduction of any court-ordered attorneys' fees (including

interest thereon), reimbursement of litigation expenses, and service awards to the Class, and

expenses of providing notice to the Class and of administering and distributing the settlement

funds (including tax-related expenses) ("Net Settlement Funds"), will be distributed on a *pro*

*rata* basis among Authorized Claimants (Class members who timely submitted valid claims)

based on the total dollar amount of their direct purchases of titanium dioxide in the United States

---

[9]    Class members were not given a second opportunity to opt out of the Class because Class
members previously were given the opportunity to opt out of the litigation class earlier this year,
and the time to opt out (February 25, 2013) has only recently passed. In its Memorandum
Opinion dated September 12, 2013, this Court concluded that "no second opt-out period will be
required in order to approve the Settlements." ECF No. 534; *see also* ECF No. 533.

from all Defendants and Tronox during the period February 1, 2003 through January 11, 2013.

To enhance the accuracy of the claim process, Proof of Claim forms will be subject to audit and

other test procedures by the Claims Administrator, who is very experienced in validating claims

and other aspects of the administration of antitrust class action settlements. *See* Ex. A to the

Sherwood Decl. The Court retains the power to approve or reject, in full or partially, any

individual claim of a Class member based on equitable grounds.

If the Court approves the Plan of Allocation, Plaintiffs will file a motion to distribute the

Net Settlement Funds in 2014, only after the Claims Administrator completes the claims

administration process and approves the claims of Authorized Claimants for payment on a *pro*

*rata* basis. Dirksen Decl., ¶117.

To warrant final approval, a plan of allocation must also be fair, reasonable, and adequate.

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class*

*Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).  "In general, a plan of

allocation that reimburses class members based on the type and extent of their injuries is

reasonable." *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998).

Here, the distribution is proposed to be made on a *pro rata* basis. This type of distribution is

"eminently reasonable and fair to the class members." *In re Electrical Carbon Prods. Antitrust*

*Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006). Indeed, many other courts have approved *pro rata*

distributions in similar antitrust class actions. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case

No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) (approving *pro*

*rata* distribution in federal antitrust class action); *In re Brand Name Prescription Drugs Antitrust*

*Litig.*, No. 94-C-897, 1999 U.S. Dist. LEXIS 12936, at *9 (N.D. Ill. Aug. 17, 1999) (finding *pro*

*rata* method the most appropriate); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp.

280, 284-85 (D. Minn. 1997) (proposed *pro rata* distribution was "cost-effective, simple and

fundamentally fair."); *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1129 (S.D.

Tex. 1982) (approving *pro rata* distribution based upon valid claims of allowable purchases),

*aff'd*, 687 F.2d 52 (5th Cir. 1982).

In sum, the Plan of Allocation warrants final approval as it is fair, reasonable, and

adequate.

## VII.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court: (1) grant final

approval of the settlements with DuPont, Cristal USA, Kronos, and Huntsman; and (2) approve

the Plan of Allocation. A proposed form of order and final judgment will be submitted on or

before November 18, 2013, after its language is stipulated to by the parties.

Dated: October 18, 2013                          Respectfully submitted,

**JOSEPH SAVERI LAW FIRM INC.**

 /s/ Joseph R. Saveri
Joseph R. Saveri (*Pro hac vice*)
Lisa J. Leebove (*Pro hac vice*)
Kevin E. Rayhill (*Pro hac vice*)
Ryan J. McEwan (*Pro hac vice*)
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
lleebove@saverilawfirm.com
krayhill@saverilawfirm.com
rmcewan@saverilawfirm.com

**GOLD BENNETT CERA & SIDENER LLP**

 /s/ Solomon B. Cera
Solomon B. Cera *(Pro hac vice)*
C. Andrew Dirksen *(Pro hac vice)*
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230

scera@gbcslaw.com
cdirksen@gbcslaw.com
**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**

 /s/ Brendan P. Glackin
Eric B. Fastiff (*Pro hac vice*)
Brendan P. Glackin (*Pro hac vice*)
Daniel M. Hutchinson *(Pro hac vice)*
Lin Y. Chan (*Pro hac vice*)
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
efastiff@lchb.com
bglackin@lchb.com
dhutchinson@lchb.com
lchan@lchb.com

*Class Counsel*

**SHAPIRO SHER GUINOT & SANDLER**

 /s/ Paul M. Sandler
Paul M. Sandler – Bar No. 00145
Robert B. Levin – Bar No. 00695
36 South Charles Street
Charles Center South, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-0202
pms@shapirosher.com
rbl@shapirosher.com

*Plaintiffs' Liaison Counsel*